UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA WANDER,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>25 Cr. ___<br><br>25 CRIM 473 |

**COUNT ONE**

**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

1. From at least in or about 2021, up to and including in or about 2024, JOSHUA WANDER, the defendant, engaged in a scheme to defraud lenders and investors in 777 Partners LLC and its subsidiaries and affiliates (collectively, "777 Partners"). As part of the scheme, WANDER, and others acting at his direction, made false and misleading representations and fabricated financial documents to inflate 777 Partners' financial performance, to exaggerate its assets, and to conceal the firm's unsanctioned use of loans and investments. To obtain financing for the firm's operations, for example, WANDER pledged more than $350 million in assets as collateral to private lenders, knowing that 777 Partners either did not own the collateral or had already pledged the collateral to other lenders. To obtain more than $100 million from investors, for further example, WANDER sold preferred equity in 777 Partners based on misrepresentations regarding the financial condition of the business. As a result of the scheme, WANDER defrauded the firm's lenders and investors out of nearly $500 million.

## 777 Partners' Structured Settlements Business

2. JOSHUA WANDER, the defendant, was the cofounder of 777 Partners, a private investment firm headquartered in Miami, Florida. The firm's initial and primary focus was underwriting and financing structured settlements and other non-traditional investments. Structured settlements are financial arrangements whereby personal injury victims or lawsuit beneficiaries receive compensation through a series of periodic payments, rather than receiving one lump-sum payment. Using third-party originators, 777 Partners purchased future payment streams from structured settlement beneficiaries who needed immediate liquidity, paying them a discounted lump sum in exchange for the right to receive the full value of future payments. 777 Partners' business model was to fund the purchase of these structured settlements—as well as lottery winning payments, which are similarly structured—using debt financing collateralized by the future payments under the purchased settlements; combine a number of structured settlements into a trust; and then sell securities in the trust. 777 Partners became one of the largest buyers of structured settlements in the secondary market.

3. As part of its business, 777 Partners—acting through a set of subsidiary entities, namely SuttonPark Capital—financed the structured settlement purchases by using multiple credit facilities with private lenders. JOSHUA WANDER, the defendant, negotiated the terms of those credit facilities, including the firm's collateral obligations, directly with the private lenders. The credit facilities restricted 777 Partners' use of borrowed funds to the purchase of structured settlements. The lenders were satisfied with the arrangement in large part because 777 Partners collateralized the borrowing with the to-be-acquired and existing assets, as well as cash.

4. The credit facilities operated on a borrowing base structure, permitting 777 Partners to borrow funds up to credit limits determined by the value of its pledged collateral. For instance,

777 Partners had a credit facility with a particular private lender ("Lender-1") that permitted 777 Partners to borrow against its assets, provided the borrowing was fully collateralized with a sufficient borrowing base composed of eligible and unencumbered assets, as well as cash. In entering the credit facility with Lender-1, and in each subsequent draw down from the facility, 777 Partners was required to represent that it was the "legal and beneficial owner" of the collateral, and that the collateral was "free and clear" from any encumbrance. 777 Partners had similar credit facilities with two other private lenders ("Lender-2" and "Lender-3").

5. As JOSHUA WANDER, the defendant, knew, to ensure that its lenders were reasonably comfortable that they were fully secured, 777 Partners was required to provide the lenders with monthly compliance reports that calculated the current borrowing base, composed of pledged collateral and cash on hand. Additionally, when 777 Partners borrowed funds from the credit facilities, WANDER or another person acting at his direction was required to represent to the lenders that there was a sufficient borrowing base and that the funds sought would be used in compliance with the terms of the credit facility. The purpose of these requirements was to ensure that 777 Partners always had enough collateral to secure its borrowing. 777 Partners also made promises to its lenders about their rights in the event of a collateral deficiency. For example, under its credit facility with Lender-1, in the event that the principal value of the total debt exceeded the value of the borrowing base (known as a "borrowing base deficiency"), 777 Partners agreed that Lender-1 was entitled to collect the entire amount of the outstanding debt.

**WANDER's Spending on Business Acquisitions**

6. For years, 777 Partners consistently made profits by purchasing, aggregating, and then securitizing structured settlements. These profits provided additional collateral for loans and enabled 777 Partners to expand its business by borrowing more. Beginning in or around 2018,

JOSHUA WANDER, the defendant, ventured from the core businesses of 777 Partners and began investing capital from the structured settlements business into new sectors with significantly more complex and less certain cash-flow profiles, including insurance firms, streaming platforms, airlines, and sports teams. In 2018, 777 Partners acquired a minority stake in Sevilla FC (Spain), a professional football club. A year later, 777 Partners acquired the London Lions, a professional basketball team. In the second half of 2019 and into 2020, WANDER also directed 777 Partners to make investments in media, including in a film and TV production services company, and a streaming service.

7. By 2021, JOSHUA WANDER, the defendant, had directed significant spending on 777 Partners' increasingly expensive acquisitions. In or around March 2021, WANDER announced that 777 Partners had agreed to purchase twenty-four Boeing 737 MAX 8 aircraft with purchase rights for an additional sixty planes, and that it would deploy the planes with Flair Airlines in Canada, which WANDER had purchased in 2018, and Bonza, an Australian airline of which 777 Partners became a minority owner in 2021. Around this time, rising interest rates and increased competition in the structured settlements market diminished the profitability of 777 Partners' operations. As a result, 777 Partners' cash and borrowing capacity were reduced. Nevertheless, and despite warnings from his employees, WANDER authorized multiple expenditures on these new ventures for which the firm lacked sufficient funding, and for which it was unable to secure financing. The result was that by 2021, 777 Partners routinely lacked sufficient funds to pay its operating expenses, cover payroll, service credit facilities, or make the business acquisitions that WANDER had forecast to investors.

## WANDER Defrauds His Lenders

8. As 777 Partners' borrowing capacity and excess cash dried up, JOSHUA WANDER, the defendant, directed employees, including Damien Alfalla, the firm's Chief Financial Officer, to use restricted funds from the firm's structured settlements business to continue to finance its business expansion. Alfalla repeatedly apprised WANDER that these cash outlays overwhelmed the firm's minimal inflows, leaving the firm unable to meet its obligations. WANDER nevertheless directed Alfalla and others to use restricted funds from 777 Partners' lenders, including Lender-1, to cover the firm's acquisitions and expenses.

9. For example, in or around May 2021, after JOSHUA WANDER, the defendant, had placed the order for the twenty-four Boeing aircraft, WANDER owed Boeing approximately $10 million to secure the purchase of the planes. Because 777 Partners lacked the available capital, WANDER caused 777 Partners to use funds that had been drawn from Lender-1's credit facility. To obtain these funds, WANDER provided Lender-1 with a list of structured settlements that 777 Partners claimed to own, but did not in fact have title to. By falsely pledging these purported assets, WANDER artificially increased the borrowing base of the Lender-1 credit facility, enabling 777 Partners to obtain over $40 million in borrowed funds. At WANDER's direction, those fraudulently obtained funds were used to pay for the Boeing aircraft, as well as to cover millions of dollars in expenses associated with the London Lions and Sevilla FC, among other expenses not authorized by the credit facility with Lender-1.

10. Over the course of 2021, at the direction of JOSHUA WANDER, the defendant, 777 Partners repeatedly borrowed from the credit facilities with Lender-1, Lender-2, and Lender-3 and then used the funds for purposes other than those permitted under the credit facilities. When 777 Partners borrowed the funds, WANDER and others acting at his direction falsely represented

that the funds would be used only for purposes expressly contemplated in the agreements with the lenders, namely, to buy structured settlements that would serve as collateral for the borrowing. For example, in or around May 2021, 777 Partners impermissibly used funds from Lender-2's credit facility to cover expenses of the London Lions and Sevilla FC and to further finance the Boeing aircraft acquisition. Likewise, in or around October 2021, 777 Partners impermissibly used funds from the credit facilities of Lender-1, Lender-2, and Lender-3 to cover millions of dollars of expenses associated with Flair Airlines.

11. Throughout this period, 777 Partners experienced significant cash shortfalls and borrowing base deficiencies under its credit facility agreements. Rather than acknowledge the deficiencies, JOSHUA WANDER, the defendant, Alfalla, and others acting at their direction, concealed them. In or around August 2021, for example, to address the fact that Lender-1's credit facility was not sufficiently collateralized, WANDER engaged with a third-party originator to purchase a portfolio of structured settlements. That originator gave WANDER a list of structured settlements available for purchase. 777 Partners never purchased those assets, nor formalized an agreement to do so. Nevertheless, at WANDER's direction, 777 Partners recorded these structured settlements in the firm's books as assets collateralizing the firm's borrowing from Lender-1. 777 Partners also represented falsely to Lender-1 that it owned these assets and that they were collateral securing the firm's borrowing from the credit facility.

**WANDER Makes False Representations About 777 Partners' Borrowing Base**

12. By the second half of 2021, 777 Partners had a significant, undisclosed borrowing base deficiency in its credit facility with Lender-1. Yet JOSHUA WANDER, the defendant, continued to draw down funds from the credit facility, which he used to pay for 777 Partners' operating expenses, among other things. To conceal the deficiency from the lender, WANDER

directed 777 Partners employees to prepare false and misleading borrowing base compliance reports. For example, from May through November 2021, 777 Partners represented to Lender-1 that it had nearly $20 million in cash reserves in collection accounts that were part of the borrowing base for the credit facility. In fact, and contrary to those representations, 777 Partners' collection accounts often held less than $1 million in cash. Additionally, because WANDER had previously used restricted funds from the credit facility to acquire other businesses and cover expenses, rather than purchase structured settlements as it falsely represented, 777 Partners had to misrepresent the amount of pledged receivables in its borrowing base compliance reports to conceal its prior misrepresentations.

13. In or about December 2021, in an effort to generate cash and to conceal the borrowing base deficiency, JOSHUA WANDER, the defendant, negotiated with another structured settlement originator to purchase additional structured settlements. As part of that negotiation, WANDER obtained from the originator a portfolio of assets that the originator expected to be able to sell in the future. WANDER caused the assets in the portfolio to be falsely recorded in 777 Partners' books and records as assets that the firm had purchased. In fact, as WANDER knew, 777 Partners never purchased the structured settlements in the portfolio. Nevertheless, WANDER represented to Lender-1 that 777 Partners had acquired a portfolio of assets valued at more than $100 million and directed that the assets in the December 2021 portfolio be pledged to secure the credit facilities with Lender-1.

14. In addition to Lender-1, JOSHUA WANDER, the defendant, also borrowed money from other lenders based on false and fraudulent representations and pretenses. In early 2022, WANDER submitted a borrowing request to Lender-3 for nearly $30 million. Accompanying the borrowing request was a compliance report that identified more than 300 eligible receivables to

collateralize the loan. Of those receivables, more than 250 assets were double-pledged to Lender-1 and many were assets 777 Partners had never acquired. In the following months, WANDER, and others acting at his direction, continued to prepare and deliver to Lender-3 monthly compliance reports that included in the borrowing base assets that had never been acquired.

**WANDER Conceals the Borrowing Base Deficit From Lenders**

15. By in or about 2022, the undisclosed borrowing base deficiency with Lender-1 had grown to approximately $200 million. JOSHUA WANDER, the defendant, was informed of the amount of the deficiency by Alfalla and two 777 Partners financial analysts. WANDER instructed this small group of employees to keep the borrowing base deficit a secret.

16. Around that time, Lender-1 began requesting screenshots of 777 Partners' collection accounts to verify that 777 Partners did, in fact, have the cash reserves it was representing in its borrowing base compliance reports. In response to those requests, JOSHUA WANDER, the defendant, and Alfalla directed the two financial analysts to temporarily transfer funds from other 777 Partners accounts into the collection accounts, to take screenshots of those accounts, and to then return the transferred funds to their original accounts. At WANDER's direction, the two financial analysts transferred the funds, took the screenshots, and later transmitted the fraudulent account screenshots to Lender-1.

17. Later in 2022, 777 Partners lacked sufficient liquidity to move any funds into the collection accounts, even on a temporary basis, to capture a screenshot. To continue to conceal the collateral deficit, JOSHUA WANDER, the defendant, directed one of the financial analysts to digitally alter existing bank accounts records for 777 Partners so that the records appeared to prove 777 Partners maintained sufficient funds under the terms of the credit facility agreements with Lender-1. The analyst did as instructed, using the program Microsoft Paint to alter the files.

Thereafter, on multiple occasions, WANDER, and others acting at his direction, delivered the digitally altered bank statements to Lender-1. For instance, in or about 2022, WANDER, and others acting at his direction, transmitted to Lender-1 a monthly compliance report reflecting that the outstanding borrowing amount and borrowing base value were both approximately $350 million, and that 777 Partners had approximately $8 million cash on hand in its collection accounts. WANDER provided Lender-1 with a screenshot of the collection account balances purporting to reflect that they contained approximately $8 million in cash. The screenshot was a fake, prepared by the analyst using Microsoft Paint. In truth, and as WANDER knew, 777 Partners had less than $500,000 in cash on hand in these accounts at the time.

18. In or around November 2022, representatives of Lender-1 notified 777 Partners that it intended to visit the firm's office to conduct a diligence visit and verify that the credit facility was fully collateralized. In advance of the site visit, JOSHUA WANDER, the defendant, instructed the two financial analysts at 777 Partners to access an internal database at 777 Partners and reassign to Lender-1 millions of dollars of assets that had already been pledged to Lender-2. WANDER informed the analysts that after Lender-1's diligence visit, the analysts were to transfer the assets back to Lender-2.

**WANDER's Fraud is Exposed**

19. In or around March 2023, Lender-2 provided Lender-1 with a list of assets that 777 Partners had represented were pledged exclusively to Lender-2, and asked Lender-1 to verify that it had not been pledged any of the same assets. Lender-1 identified thousands of receivables that 777 Partners had allocated to both Lender-1 and Lender-2. On or about March 24, 2023, Lender-1 contacted JOSHUA WANDER, the defendant, to request documentation that the assets

constituting Lender-1's collateral were free and clear of any claims, as required by the lending facility agreements, and that the monthly reports and compliance reports were accurate.

20. On or about March 28, 2023, JOSHUA WANDER, the defendant, spoke by phone with representatives of Lender-1 about the double-pledged assets. During the call, which was recorded, WANDER falsely claimed that the double-pledging of assets was the result of a "screwup" caused by 777 Partners' "antiquated" computer system. WANDER further claimed that he was "hopeful" the problem would be fixed by substituting "replacement deals" that 777 Partners had found in its files for the double-pledged collateral.

21. A few days later, on or about April 3, 2023, JOSHUA WANDER, the defendant, participated in another recorded phone call with representatives of Lender-1. During the call, WANDER admitted that 777 Partners had double-pledged "around $100 million" in assets. WANDER claimed that the double-pledging had been a computer mistake; that he had not identified borrowing base deficiencies in any other credit facilities; and that he was committed to using available cash to reduce the shortfall with Lender-1. WANDER's statements to Lender-1 representatives were false and misleading: For months, as WANDER knew, 777 Partners had deliberately double-pledged assets, pledged non-existent assets, and had done so across multiple credit facilities.

22. After the April 2023 call with Lender-1, JOSHUA WANDER, the defendant, provided Lender-1 with a monthly report that, for the first time, disclosed a borrowing base deficiency of nearly $200 million. Thereafter, representatives of Lender-1 repeatedly met with WANDER, who promised that new assets and proceeds from deals involving 777 Partners would arrive to reduce the shortfall in collateral to Lender-1. Those deals never came to fruition.

23. 777 Partners' financial issues worsened in late 2023 and early 2024. In or around April 2024, the Australian airline Bonza, which was owned by 777 Partners and had received only sporadic funding, entered voluntary administration after aircraft lessors repossessed Bonza's entire fleet of Boeing 737 MAX 8 aircraft. Several other businesses in 777 Partners' portfolio failed over the course of 2024. The final collapse of 777 Partners came in or around October 2024 when the High Court in London issued a winding-up order, formally declaring 777 Partners bankrupt. 777 Partners still owes its lenders hundreds of millions of dollars.

**WANDER Defrauds Preferred Equity Investors**

24. Beginning in or around 2021, as 777 Partners faced increasing liquidity constraints, JOSHUA WANDER, the defendant, solicited outside investments in 777 Partners through the sale of cumulative preferred equity membership interests in 777 Partners LLC and 600 Partners LLC (the "Preferred Equity Offering") to several investors, including investors located in Manhattan, New York. WANDER, Alfalla, and others misrepresented the financial condition of 777 Partners in soliciting these investments. Among other things, in the pitch deck prepared for the Preferred Equity Offering, WANDER falsely claimed that 777 Partners had a projected consolidated net income for 2021 of more than $130 million, and that investors would receive a 10% dividend on $250 million of newly issued preferred equity.

25. JOSHUA WANDER, the defendant, knew that the projected financials and promised dividends for the Preferred Equity Offering were infeasible given significant cash deficits and collateral shortfalls the company faced in its credit facilities with various lenders. For example, on or about September 25, 2021, shortly after the first round of the Preferred Equity Offering had closed, Alfalla sent an email to WANDER noting that while "[l]ast week was obviously a good week[] for us. . . . we still have a $300m+ borrowing base deficiency that needs

to be addressed between now and 12/31/21. . . . [I]f we do not have a forbearance agreement, restructuring plan and/or have cured the deficits plus keep the lights on, then we will be forced to communicate issues to external auditors and lenders to avoid surprises that will surface in the audits."

26. In or about 2022, JOSHUA WANDER, the defendant, led a second fundraising round for the Preferred Equity Offering. Once again, WANDER, Alfalla, and others acted to deceive investors regarding the financial condition of 777 Partners. Among other things, in the subscription agreement for the Preferred Equity Offering, WANDER misrepresented that there had been "no material adverse change" to the financial condition of the company since the date of the most recent financial statements provided. WANDER knew this to be false because, among other things, 777 Partners had recently suffered a material adverse change resulting in a nearly $400-million loss to 777 Partners.

## Statutory Allegations

27. From at least in or about 2021, up to and including in or about 2024, in the Southern District of New York and elsewhere, JOSHUA WANDER, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28. It was a part and an object of the conspiracy that JOSHUA WANDER, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme

and artifice, in violation of Title 18, United States Code, Section 1343, to wit, WANDER agreed to engage in a scheme to obtain and maintain borrowed funds from various lenders by means of false and misleading statements about the financial condition and available collateral of 777 Partners LLC and its subsidiaries and affiliates, and sent and received, and caused others to send and receive, electronic funds transfers, e-mails, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

**(Wire Fraud)**

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

30. From at least in or about 2021, up to and including in or about 2024, in the Southern District of New York and elsewhere, JOSHUA WANDER, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WANDER engaged in a scheme to access and maintain borrowed funds from various lenders by means of false and misleading statements about 777 Partners' financial condition and available collateral, and sent and received, and caused others to send and receive,

electronic funds transfers, e-mails, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

## (Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

32. From at least in or about 2021, up to and including in or about 2022, in the Southern District of New York, and elsewhere, JOSHUA WANDER, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

33. It was a part and an object of the conspiracy that JOSH WANDER, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made,

not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, WANDER agreed to engage in a scheme to defraud purchasers of cumulative preferred equity units issued by 777 Partners LLC and 600 Partners LLC by providing false and misleading information to those investors regarding the financial condition of 777 Partners LLC and its subsidiaries and affiliates.

34. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a. In or about September 2021, JOSHUA WANDER, the defendant, provided a prospective investor located in Manhattan, New York with materially false information regarding the financial condition of 777 Partners LLC and its subsidiaries and affiliates in connection with the sale of cumulative preferred equity units in 777 Partners LLC and 600 Partners LLC.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**

**(Securities Fraud)**

The Grand Jury further charges:

35. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

36. From at least in or about 2021, up to and including in or about 2022, in the Southern District of New York and elsewhere, JOSHUA WANDER, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed,

in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WANDER engaged in a scheme to defraud by misleading prospective and current investors about the financial condition of 777 Partners LLC and its subsidiaries and affiliates in connection with the sale of cumulative preferred equity units in 777 Partners LLC and 600 Partners LLC.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

37. As a result of committing the offenses alleged in Counts One, Two, Three and Four of this Indictment, JOSHUA WANDER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

38. If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other

property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney