UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            *v.*<br><br>JOSHUA WANDER,<br><br>            *Defendant*. | **No. 25 Cr. 473 (JPO)** |

### DEFENDANT JOSHUA WANDER'S MOTION FOR DISCLOSURE
### <u>ON THE PROSECUTION'S FILTER PROCESS</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

      1.     Mr. Wander Is Entitled to Information About the Filter Process......................... 6

      2.     Mr. Love's Interviews Independently Warrant Disclosure. ............................... 8

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
259 F.R.D. 64 (S.D.N.Y. 2009) ................................................................................................7

*In re Grand Jury Subpoenas Dated March 24, 2003*,
265 F. Supp. 2d 321 (S.D.N.Y. 2003) ......................................................................................3

*In re Search Warrant Issued June 13, 2019*,
942 F.3d 159 (4th Cir. 2019) ...................................................................................................8

*United States v. Elbaz*,
396 F. Supp. 3d 583 (D. Md. 2019) ..........................................................................................7

*United States v. Ghavami*,
882 F. Supp. 2d 532 (S.D.N.Y. 2012) ......................................................................................7

*United States v. Ritchey*,
605 F. Supp. 3d 891 (S.D. Miss. 2022) ................................................................................7, 8

*United States v. Schwimmer*,
892 F.2d 237 (2d Cir. 1989) .....................................................................................................7

United States v. Elbaz, 18 Cr. 157 (TDC) (D. Md. Dec. 14, 2018), Dkt. No. 103……………………...…7

**PRELIMINARY STATEMENT**

The government has admitted that the filter review process in this case failed, and that it inadvertently produced to Mr. Wander potentially privileged documents that should have been withheld. But instead of providing more information about that process, so Mr. Wander can assess whether the government properly protected his privileged communications, the government has declined to supply further detail. Fairness requires more. The Court should order the government to disclose information about its filter process and produce notes of interviews it conducted with the attorney for the primary company at issue in the Indictment.

On April 24, 2026, Mr. Wander discovered that the government's productions contained documents covered by his attorney-client privilege, and at least 152 documents overall that were potentially privileged—including communications with outside counsel concerning legal strategy,

████████████████████████████████████████████

On top of that, there are over 20,000 documents involving in-house counsel in the production. These documents were mixed in with other discovery the government obtained from 777 Partners. Unlike other material the government produced, the cover letters accompanying these productions made no reference to the use of a filter team. Mr. Wander immediately contacted the government to raise his concerns about the presence of privileged documents. In response, on April 28, 2026, the government acknowledged for the first time that it had obtained potentially privileged materials from 777 Partners, and that it had "inadvertently" produced to Mr. Wander such materials. The government offered no explanation for how this failure had happened, and provided no information about the privilege process, including the filter team members or the list of attorneys, law firms, or search terms that had been used to segregate potentially privileged materials.

The government also refused to provide any information about steps it took to protect the attorney-client privilege in interviews with a lawyer for one of Mr. Wander's companies. The

government has disclosed to Mr. Wander that during its pre-indictment investigation, prosecutors interviewed Fred Love, the former general counsel for SuttonPark, twice, without company counsel for SuttonPark, 777 Partners, or 600 Partners present.  But the government declined to provide any information on what guardrails, if any, were in place to protect privileged information, or to provide the notes themselves.  Mr. Wander thus has no way to assess whether Mr. Love provided the government with privileged information as to Mr. Wander or his companies.

Mr. Wander asks only that this Court allow him to develop the record about what really happened with his privileged communications, by ordering the government to disclose the following:  (i) the filter team protocol and documentation regarding how the privilege review and document handling failed; (ii) information sufficient to show whether the process failed at any other point during the review; and (iii) notes from Mr. Love's interviews with the government. The integrity of the attorney-client privilege, and of this proceeding, depends on it.

## FACTUAL BACKGROUND

Before the indictment was issued, Mr. Wander and 777 Partners shared a common legal interest and were jointly named in multiple civil actions.  *See* Complaint, *Change Lending, LLC v. 777 Partners LLC*, No. 650118/2024 (N.Y. Sup. Ct. Jan. 9, 2024), Dkt. No. 1; Complaint, *Obra Cap. M*gmt*., LLC v. 777 Partners LLC*, No. 651220/2024 (N.Y. Sup. Ct. Mar. 7, 2024), Dkt. No. 2; Complaint, *Leadenhall Cap. Partners LLP v. Wander et al.*, No. 24-CV-3453 (JGK) (S.D.N.Y. May 3, 2024), Dkt. No. 1.  When the government issued its first subpoena to 777 Partners demanding broad categories of documents on February 8, 2024, Mr. Wander and 777 Partners continued the joint defense posture maintained in these civil litigations.  In response to the subpoena, 777 Partners, with assistance from outside counsel, made rolling productions to the prosecution starting on or about March 1, 2024.

2

After Mr. Wander was arrested in October 2025, the prosecution made four productions of document discovery, between November 5, 2025 and March 16, 2026, each accompanied by production letters. In its first production letter, the prosecution noted the use of filter teams during the review of Mr. Wander and Mr. Pasko's phones. *See* Estes Decl., Ex. A (November 5, 2025 Production Ltr.) at 2 n.2–3. The prosecution also noted that potentially privileged material on Mr. Pasko's phone had been segregated by the filter team and would not be produced to Mr. Wander. *Id.* at n.3. Later production letters, by contrast, did not mention the use of a filter team, acknowledge that the government had received potentially privileged materials from 777 Partners, or otherwise confirm any screening process used to prevent the prosecution team from reviewing privileged materials. *See* Estes Decl., Exs. B (November 24, 2025 Production Ltr.); C (January 12, 2026 Production Ltr.); and D (March 16, 2026 Production Ltr.). Additionally, in a letter dated February 4, 2026, the government informed Mr. Wander that it had interviewed Fred Love at least twice. *See* Estes Decl., Ex. E (February 4, 2026 Ltr.) at 6–7.

On or about April 24, 2026, Mr. Wander discovered privileged materials in the prosecution's productions from sources that did not originate from his or Mr. Pasko's phones, and instead came from document productions marked as having been produced to the government by 777 Partners. These included multiple strategic conversations between Mr. Wander and counsel,

████████████████████████████████████████████████████

██████████████████████████[1]:

---

[1] Mr. Wander is submitting these documents *ex parte* and *in camera* in order to protect the privilege. *E.g.*, *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 323 (S.D.N.Y. 2003) ("The Court initially required submission of the documents withheld by Firm on grounds of privilege for *in camera* inspection.").

3

-  *See* Estes Decl., Ex. G (USAO_REL_01_00115590) at -591 ██████████████████████

██████████████████████████

- Mr. Wander ████████████████████████ with counsel. *See* Estes Decl. Ex. G (USAO_REL_01_00115590) ████████████████████████████████████████.

- The communications also reflected strategic discussions between counsel and Mr. Wander ████████████████████. *See* Estes Decl., Ex. H (USAO_REL_01_00091696) at -696–97.

- The ████████████████████ Mr. Wander and among counsel. Consequently, ████████████████████████. *See, e.g., id.* at -696 ████████ ████████████████████

These are just the clearest examples of the privileged materials produced by the U.S. Attorney's Office.

After discovering these privileged materials, Mr. Wander immediately wrote to the government seeking two categories of information: the procedures used for handling privileged materials and details concerning the two interviews of Mr. Love. *See* Estes Decl., Ex. I (April 24, 2026 Ltr.).

In its response on April 28, 2026, the government acknowledged, for the first time, the following:

4

- A filter team had been in place to screen certain documents from 777 Partners, including at least one that Mr. Wander had claimed in his letter was privileged;

- The filter team had not made any final privilege determinations before the prosecution mass produced documents to Mr. Wander; and

- "[T]he filter team inadvertently produced to [Mr. Wander] materials subject to a potential claim of privilege by 777 Partners."

*See* Estes Decl., Ex. J (April 28, 2026 Ltr.).

While the government claimed that these materials had been screened from the prosecution team and were inaccessible to that team, it provided no bases for that statement. The government did not identify the members of its filter team. The government did not explain the filter process, including the lists of attorneys, law firms, and search terms used to screen documents they had obtained. And the government did not explain the inadvertent production, identify the protocols or failures thereof that led to its failure, or offer to undertake any remedial measures. Instead, it argued only that Mr. Wander could not make *any* privilege claims over any of the documents it had "inadvertently" produced because the privilege belonged to 777 Partners, and it encouraged Mr. Wander to return the materials to 777 Partners. *Id.* at 2 n.1.

The government also provided no additional detail about the interviews of Fred Love. All the letter stated was that Mr. Love had been interviewed twice, in the presence of his personal counsel and unspecified "employees" from the "U.S. Attorney's Office, the Federal Bureau of Investigation, Homeland Security Investigations, and the Securities and Exchange Commission." *See id.* at 2–3. The government did not state that counsel for 777 Partners or 600 Partners was present. The government did not specify whether any members of any filter team were present. The government identified no steps they had taken to prevent a disclosure of privileged

5

information to the prosecution team, or whether Mr. Love had in fact disclosed any privileged information to the prosecution team.

**ARGUMENT**

The law is clear that the government must provide information about its filter process when that process fails. That is all Mr. Wander asks for, and that is precisely what the government has refused to provide. The Court should order it to do so.

1.    **Mr. Wander Is Entitled to Information About the Filter Process.**

The government has refused to provide Mr. Wander with the most basic information about its filter process, even though such information is routinely provided to criminal defendants. *See* Opposition to Motion to Dismiss, *United States v. Milton*, 21 Cr. 478 (ER) (S.D.N.Y. Jan. 14, 2022), Dkt. No. 71 at 63–64 (stating that the government had provided to the defendant "an overview of the way the filter team works," including "the list of attorneys, law firms and search terms that it used to segregate the potentially privileged materials"). Here, that refusal requires judicial intervention. The government's filter process broke down the moment they produced materials that were supposed to be segregated to Mr. Wander, as the government itself admits. Yet the government has still refused to provide any information about who the members of the filter team are, how the process worked, and what caused the process to fail here. This Court should thus order the government to provide that information to him. *See, e.g.*, Affidavit AUSA Canick, *United States v. Leech*, 24 Cr. 658 (GHW) (S.D.N.Y. Jan. 21, 2026), Dkt. No. 78-1 and Affidavit AUSA Davis, *United States v. Leech*, 24 Cr. 658 (GHW) (S.D.N.Y. Jan. 21, 2026), Dkt. No. 78-2 (government providing specific factual affidavits about the filter team process after Judge Woods ordered the government to provide more detail in response to filter team failure); Order, *United States v. Elbaz*, 18 Cr. 157 (TDC) (D. Md. Dec. 14, 2018), Dkt. No. 103 (after revelation of

6

accidental disclosure of privileged material to investigative team, ordering government "to FILE its submission on the issue of the privileged information"); *United States v. Elbaz*, 396 F. Supp. 3d 583, 587 (D. Md. 2019) (referencing the Court's prior order that the prosecution "file[] affidavits from certain members of the Prosecution Team providing specific facts relevant to" a motion for disqualification based on disclosure of privileged materials); *accord United States v. Ritchey*, 605 F. Supp. 3d 891, 901 (S.D. Miss. 2022) (when government "unilaterally created a [filter] protocol and did not take steps to *fully* apprise [defendant] about this protocol," "the Court questions the adequacy of the filter team protocol.") (emphasis in original).

The government's stated reasoning in its letter for not providing this information was that "there is no legal basis for disclosure of information regarding matters that do not implicate a privilege held by Mr. Wander." Estes Decl., Ex. J (Apr. 28, 2026 Ltr.) at 2. But the materials subject to the filter team's failure do implicate Mr. Wander's personal attorney-client privilege and were in the possession of 777 Partners because they were joint defense communications with counsel for the company. *See, e.g.*, *United States v. Schwimmer*, 892 F.2d 237, 243–45 (2d Cir. 1989) (ordering evidentiary hearing where the government accessed materials protected under joint defense privilege). The materials appended to the Estes Declaration meet all the elements of a joint defense communication: the communications were substantive, between Mr. Wander and counsel for 777 Partners, in furtherance of a shared legal strategy in response to the government's investigation, with an expectation that they would remain confidential. *See United States v. Ghavami*, 882 F. Supp. 2d 532, 537–38 (S.D.N.Y. 2012); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (recognizing that privilege extends to communications between unrepresented potential subjects and the counsel of another party with a

shared legal interest when "all parties expected that the communications would remain confidential").

Because the filter process has failed with respect to communications in which Mr. Wander holds a personal privilege, the government is obviously incorrect that Mr. Wander has no interest in the integrity of that process. But even if Mr. Wander did not have a claim of privilege over the specific materials produced by 777 Partners, Mr. Wander still has an interest in the integrity of the filter process, because that same process was used to review his own personal materials, including his phone. *See* Estes Decl., Ex. A (November 5, 2025 Production Ltr.) at 2 n.2. Once the government's filter team has failed, the relevant interest is no longer limited to who holds the privilege in any single document—it is whether the government's privilege-review process has adequately protected Mr. Wander's rights, whether protected materials have crossed the wall to the prosecution team or shown to potential witnesses, and what safeguards are necessary to prevent further prejudice. *E.g.*, *Ritchey*, 605 F. Supp. 3d at 903–05 (granting injunction and vacating filter team protocol after finding it to be inadequate); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 176–81 (4th Cir. 2019) (rejecting a proposed filter protocol because of a prior filter team failure in a separate case within the same judicial district). Mr. Wander is entitled to information about the filter process so he can determine whether the process failed at any other point in the review in a manner that infringed on his rights.

### 2.    Mr. Love's Interviews Independently Warrant Disclosure.

The filter team's failed handling of documents also raises concerns about the prosecution's handling of Fred Love's interviews. Mr. Love was an attorney for a 777 Partners portfolio company, SuttonPark. He was interviewed twice by the prosecution team alongside agents from the FBI, Homeland Security Investigations, and the SEC, without counsel for 777 Partners present.

8

*See* Estes Decl., Ex. J (April 28, 2026 Ltr.) at 2–3.  No filter team was present at these interviews. The government's refusal to provide any information about how the attorney-client privilege for Mr. Wander or 777 Partners was protected during those interviews means Mr. Wander has no way to determine if those privileges were protected at all, or if once again, the government "inadvertently" failed.[2]  The Court should order production of the interview notes to Mr. Wander, or, at the very least, production of the steps the government took to protect privileged information, so Mr. Wander can assess the adequacy of that process.

---

[2]  This is particularly true in light of discovery that shows that 777 employees believed that Fred Love had potentially disclosed privileged and otherwise sensitive information outside of the Company.

**CONCLUSION**

For the foregoing reasons, this Court should order disclosure of the government's filter protocol and related documentation and order production of the notes from Mr. Love's interviews. Mr. Wander respectfully reserves the right to seek further relief, depending on the information the government is ordered to produce.

Dated: May 15, 2026                    Respectfully submitted,

                                        */s/ Jordan Estes*
                                        Jordan Estes
                                        Dani R. James
                                        Michael Martinez
                                        Samuel Raymond
                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        T: (212) 351-4000
                                        JEstes@gibsondunn.com
                                        DJames@gibsondunn.com
                                        MMartinez2@gibsondunn.com
                                        SRaymond@gibsondunn.com

                                        *Attorneys for Joshua Wander*

10

**CERTIFICATE OF COMPLIANCE**

1.        This document complies with the type-volume requirements of Local Civil Rule 7.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York because it is 2,632 words (exclusive of the table of contents and authorities); and

2.        This document complies with the typeface requirements of Local Civil Rule 7.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York  because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 12-point Times New Roman font, with footnotes that are at least 10-point font.

/s/ Jordan Estes
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY
10166
(212) 351-2315
JEstes@gibsondunn.com

11