

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 3, 2026

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Joshua Wander*, 25 Cr. 473 (JPO)

Dear Judge Oetken:

      The Government respectfully writes to seek modification of defendant Joshua Wander's conditions of pretrial release to impose two new conditions relating to his contact with prospective witnesses in this case. Specifically, the Government respectfully requests that the Court impose the following conditions: (1) the defendant shall not contact or communicate with current or former employees of 777 Partners (other than immediate family members) or any victims of the defendant's crimes, except in the presence of counsel, unless the Government or Court exempts an individual from this no-contact rule; and (2) the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal. For purposes of this motion, "777 Partners" is defined to include 777 Partners and all affiliated, subsidiary, and successor entities.

      On October 14, 2025, a grand jury in this District returned Indictment 25 Cr. 473 (JPO), charging the defendant in four counts in connection with his scheme to defraud the private lenders and investors of 777 Partners out of more than $500 million. (ECF No. 2). On October 16, 2025, the defendant was arrested and released on a bond. (ECF No. 10). The bond does not impose limitations on the defendant's ability to contact any prospective witnesses in the case. It has recently come to the Government's attention that the defendant has been in direct communication with a former 777 Partners analyst who may be a witness at trial ("Witness-1"), and who is represented by counsel. Specifically, beginning on or about October 24, 2025—approximately one week after he was arrested—the defendant began communicating with Witness-1 over the encrypted messaging application "Signal." The defendant further directed Witness-1 to enable the auto-deletion settings on Signal.

      Over the next several months, the defendant continued to contact Witness-1 using Signal, including as recently as May 29, 2026. During certain calls, the defendant raised matters related to his criminal case, including by falsely suggesting to Witness-1 that it was not the defendant, but another individual at 777 Partners, who directed the preparation of false bank statements, as alleged in the Indictment. (Ind. ¶¶ 16, 17). More recently, during a May 2026 call, the defendant

Hon. J. Paul Oetken
June 3, 2026

asked to have dinner with Witness-1 in New York. When Witness-1 refused the invitation, the defendant stated, in sum and substance, that Witness-1 would likely to have to testify at the defendant's upcoming trial and that the defendant's "livelihood" was "in [Witness-1's] hands." Moments later, the defendant sent Witness-1 a photograph of the defendant and his infant child looking directly into the camera. (Excerpt from Signal messages, attached as Ex. A).

The defendant's statement that his "livelihood" depended on Witness-1's testimony (*i.e.*, was in Witness-1's hands) indicates an effort to influence Witness-1's prospective testimony. The defendant's sending of a photograph of him and his infant child is likewise designed to appeal to Witness-1's sympathies and further influence his testimony. The defendant's outreach is particularly concerning in light of his prior statements to Witness-1, in which he attempted to shift blame for some of the most egregious conduct charged in the Indictment. The defendant is aware that Witness-1, who worked for the defendant for many years at 777 Partners and has firsthand knowledge of the defendant's crimes,[1] has information that would tend to inculpate the defendant. The defendant is also aware that the Government interviewed Witness-1, and that Witness-1 is represented by counsel.

The defendant's recent contact with Witness-1 alone warrants imposition of the proposed restrictions. The condition that a defendant "avoid all contact … with a potential witness who may testify concerning the offense" is a standard condition. 18 U.S.C. § 3142(c)(B)(v). Indeed, the no-contact condition is routinely imposed in cases in this District. "The no-contact condition set forth in the statute seeks to prevent a defendant from intimidating someone who, by nature of being a victim or a potential witness, is already in a difficult and delicate position." *United States v. Lillemoe*, No. 3:15 Cr. 25 (JCH), 2015 WL 9694385, at *3 (D. Conn. May 28, 2015) (citation and quotation marks omitted). The defendant's efforts to influence Witness-1's testimony by telling him that his "livelihood" depended on Witness-1 and sending a photograph of the defendant, together with his infant child, are probative of witness tampering. Even if the defendant has not directly attempted to tamper with witnesses, however, "[i]mproper contacts with prospective government witnesses inherently create a potential for overt threats or implied intimidation, the taint of which cannot easily be overcome." *United States v. Grisanti*, No. 91 Cr. 229A, 1992 WL 265932, at *6 (W.D.N.Y. Apr. 14, 1992). The defendant's contact with witnesses may intimidate them, making them less likely to come forward or be willing to testify.

Here, given the likelihood that many of 777 Partners' current and former employees, as well as the victims of the defendant's crimes, will be witnesses at trial, the proposed restriction on contact is appropriately tailored. *See United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), ECF No. 118 (Mar. 28, 2023) (prohibiting defendant from contacting or communicating with any current or former employees). To the extent the defendant continues to share a close personal relationship with particular former employees, the Government is amenable to exempting such individuals from the bail restriction. Moreover, this proposed restriction would not impair the defendant's ability to participate in the preparation of his defense, because he could still participate in interviews with prospective witnesses where his attorneys are present.

---

[1] Witness-1 also has significant firsthand knowledge of other criminal acts by the defendant, including the defendant's frequent drug use during the conduct charged in the Indictment.

2

Hon. J. Paul Oetken
June 3, 2026

The second proposed condition, to restrict the defendant's use of Signal and other encrypted and ephemeral call and messaging applications, is also necessary to prevent obstruction of justice. Using Signal to contact potential witnesses increases the likelihood that detection of any attempt to obstruct justice by influencing a witness will itself be obstructed—particularly if the defendant applies Signal's autodelete function before a message recipient has the opportunity to preserve a message from the defendant.  Here, the Government's investigation has revealed that the defendant began communicating with Witness-1 by Signal shortly after being charged in this case and instructed Witness-1 to configure his application settings to autodelete, with the result that the defendant's obstructive messages would be inaccessible to the Government.  As recently as last month, the defendant has used Signal to influence the testimony of Witness-1, including by sending Witness-1 a photograph of the defendant and his infant child and telling Witness-1 that the defendant's "livelihood" hinged on his testimony.

Together, the proposed bail conditions will more effectively prevent the defendant from obstructing justice. *See Bankman-Fried*, No. 22 Cr. 673 (LAK), ECF No. 118 (Mar. 28, 2023) (prohibiting defendant from using any encrypted or ephemeral call or messaging application, including but not limited to Signal, after the defendant attempted to influence witness testimony via Signal). At the same time, they will not inhibit the defendant's ability to communicate with others by text message, email, and conventional telephone calls.

Accordingly, the Government respectfully submits that the defendant's bond should be modified to add the conditions that he (1) not contact or communicate with current or former employees of 777 Partners (other than immediate family members) or any victims of the defendant's crimes, except in the presence of counsel, unless the Government or Court exempts an individual from this no-contact rule; and (2) not use any encrypted or ephemeral call or messaging application, including but not limited to Signal.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    Marguerite B. Colson
Sarah Mortazavi
Alexandra Rothman
Assistant United States Attorneys
(212) 637-2580

cc: Counsel of Record (by ECF)

3