GIBSON DUNN

Jordan Estes
Partner
T: +1 212.351.3906
jestes@gibsondunn.com

June 8, 2026

VIA ECF
Hon. J. Paul Oetken
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Wander*, Case No. 1:25-cr-00473 (S.D.N.Y.)

Dear Judge Oetken:

The prosecution's motion is a study in overreach. Seizing on ordinary personal communications between longtime friends and colleagues, it asks this Court to impose sweeping conditions that would bar Mr. Wander from contacting thousands of people—including those relevant to his own defense—and strip him of the communications tools that tens of millions of Americans use every day.

The Bail Reform Act forbids exactly this kind of blunderbuss approach. It requires the "least restrictive" conditions necessary, imposed on an individualized basis. The prosecution's proposed conditions satisfy neither requirement. Mr. Wander did not tamper with or attempt to influence anyone. Mr. Wander and Witness-1 have communicated back and forth for months, largely about business. Many of those communications were prompted by Witness-1 himself, and the vast majority of the conversations were totally unrelated to the case. The prosecution's proposed conditions, by contrast, are untethered from the actual facts and far exceed what the law permits. The prosecution's proposed no-contact provision, restricting Mr. Wander from communicating with *any* current or former 777 employees, is both unjustified under the Bail Reform Act and would infringe upon Mr. Wander's First Amendment right to free association and his Sixth Amendment right to prepare a defense. The prosecution's request to forbid Mr. Wander from accessing encrypted messaging tools used daily by tens of millions of Americans is equally indefensible. The Court should reject both conditions.

## I. The Prosecution Mischaracterizes Ordinary Personal Communications as Witness Tampering.

The prosecution's description of the communications between Witness-1 and Mr. Wander is so distorted that it is misleading. Mr. Wander has known Witness-1 for years and has been in regular and close contact with him long before Mr. Wander's arrest. For example, when Witness-1 learned that Mr. Wander's wife was pregnant in 2025, Witness-1 excitedly asked questions

about the pregnancy. Witness-1's expressed interest in Mr. Wander's family did not change with Mr. Wander's arrest. He has asked Mr. Wander to send baby pictures on numerous occasions. The prosecution is right that on October 24, 2025, Mr. Wander called Witness-1 via Signal. But as the government's June 3, 2026, production to Mr. Wander demonstrates, Witness-1 then immediately started a chat thread with Mr. Wander. Witness-1 called Mr. Wander back the next day. Ex. A.[1] The prosecution failed to inform the Court that according to its own production, in the months since his arrest, Witness-1 has sent 27 Signal messages to Mr. Wander and called Mr. Wander 63 times via Signal.

The full scope of their Signal communications underscores the legitimate nature of their personal and professional relationship. Many of those communications concern confidential business matters for which Witness-1 sought Mr. Wander's business advice. And the passing references to the upcoming trial do not support an intent to influence testimony. To be sure, Mr. Wander made no ask of Witness-1, no promise, no threat. The prosecution also faults Mr. Wander for disputing its theory of the case to Witness-1, but that is not obstruction—it is the position of a man who has pleaded not guilty and is entitled to the presumption of innocence. The prosecution's repeated use of "the defendant's crimes"—as though guilt were already established—is itself telling. The prosecution's choice to treat guilt as established fact, in a letter filed publicly on the docket, is prejudicial and inappropriate.

Moreover, the record contains nothing to support the prosecution's sweeping assertion that Mr. Wander's "contact with witnesses may intimidate them, making them less likely to come forward or be willing to testify." ECF No. 42 at 2. If anything, it is the government's contact with witnesses that risks influencing them and disrupting their ordinary communications with Mr. Wander.

## II. The Prosecution's Sweeping Conditions Violate the Bail Reform Act, Impair Mr. Wander's Right to Prepare a Defense and Infringe His Constitutional Rights.

The Bail Reform Act imposes a firm ceiling on what the government may seek: the court must select the "*least restrictive* further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added). "[C]onditions of release must be imposed on an individualized basis, and must not be broader than necessary in light of the circumstances of the individual defendant." *United States v. Lee*, 972 F. Supp. 2d 403, 408 (E.D.N.Y. 2013).

Even if, *arguendo*, Mr. Wander did attempt to influence Witness-1's testimony, the least restrictive condition would be to bar him from contacting Witness-1 outside the presence of counsel. Had the prosecution asked Mr. Wander's counsel if he would consent to such a

---

[1] The attached exhibits are documents produced by the prosecution to Mr. Wander on June 3, 2026. The exhibits are redacted to protect confidential proprietary business information unrelated to this case. Judge J. Paul Oetken, Individual Practices in Criminal Cases § 8(F).

condition, they would have agreed, and Mr. Wander has no objection now to the Court imposing that condition. But there is no basis to bar him from contacting all of the *thousands* of former and current employees of 777 Partners and its dozens of affiliated companies, most of whom had nothing to do with the alleged conduct at issue in this case. *See* Order at 4–5, *United States v. Bronfman*, No. 18-CR-204 (E.D.N.Y. Dec. 12, 2018), ECF. No. 240 (lifting blanket no-contact condition when the facts indicate that "many of the persons within the scope of the no-contact conditions may not be potential witnesses, alleged victims of the charged enterprise, or alleged co-conspirators"). Indeed, such a condition would infringe upon Mr. Wander's First Amendment right to associate with these individuals on topics totally unrelated to the criminal charges against him or his upcoming trial. *See, e.g., United States v. Arzberger*, 592 F. Supp. 2d 590, 603 (S.D.N.Y. 2008) ("[A]n order forbidding Mr. Arzberger from having contact with any witness . . . implicates the First Amendment right of association.").

The prosecution's proposed no-contact condition would also critically impair Mr. Wander's Sixth Amendment right to prepare a defense. By barring him from communicating with all current and former 777 Partners employees—the very people most likely to possess exculpatory information—the prosecution would force every interaction with a potential defense witness to occur only in the presence of counsel, at prohibitive expense and practical cost. This is not a tailored condition; it is an attempt to put the Court's thumb on the scale of the prosecution for trial preparation.

The prosecution's demand to bar Mr. Wander from using any encrypted messaging application is the most constitutionally troubling aspect of its motion. The prosecution would prohibit technologies that are the backbone of modern communication for tens of millions of Americans. Every FaceTime call is encrypted.[2] Every iMessage is encrypted.[3] Signal is used by journalists, lawyers, members of Congress, and ordinary citizens who value their privacy. It is also used at the highest levels of the United States government: members of the President's Cabinet have used Signal to conduct official business.[4] The prosecution cannot credibly argue that use of Signal is inherently suspect or indicative of wrongful intent when its own senior officials rely on it as a matter of course. The prosecution offers no principled basis to single out encryption as impermissible—it does so only because encryption makes their surveillance harder. That is not a legitimate basis for restricting a presumptively innocent defendant's communications. Mr. Wander uses encrypted applications all the time: every time he uses Apple's FaceTime application to make a video call; every time he sends an iMessage; every time he joins 70 million people who use Signal. This draconian prohibition, which includes no

[2] Apple, *FaceTime Security* (May 13, 2022), https://support.apple.com/guide/security/facetime-security-seca331c55cd/web.
[3] Apple, *iMessage Security Overview* (Dec. 19, 2024), https://support.apple.com/guide/security/imessage-security-overview-secd9764312f/web.
[4] Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/.

exceptions or reasonable accommodation, would cut Mr. Wander off from many means of modern communication.

The government cites precisely one case to support such an onerous condition: the prosecution of Sam Bankman-Fried. But the facts there were entirely different: Judge Kaplan barred Bankman-Fried from using encrypted or ephemeral applications after the prosecution proffered that during the offense conduct, Bankman-Fried had instructed FTX and Alameda employees to use Slack and Signal and to set the autodelete function for the specific reason that it would be "more difficult to build a legal case if information is not written down or preserved." Government's Letter Motion at 3, *United States v. Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. Jan. 27, 2023), ECF No. 50.[5] Here, there is no indication that Mr. Wander used such applications during the alleged conduct to obstruct future investigations; indeed, unlike in the Bankman-Fried case, the prosecution obtained (and has produced to Mr. Wander) many communications that were retained by 777 Partners and has made no claim that any documents relevant to the alleged offense were deleted or destroyed.

## III. Conclusion

As this Court knows well, the prosecution has consistently refused to communicate or confer with defense counsel in advance of motion practice before this Court. *See, e.g.*, ECF Nos. 25-39 (Mr. Wander's unanswered February 27, 2026 letter requesting information about the leak of grand jury material), 40 Ex. J (government's April 28, 2026 letter refusing to provide more information about its filter process), 28 (prosecution's heavily redacted response to Mr. Wander's motion related to grand jury leaks, filed on April 29, 2026 with no notice to defense counsel about the redactions), 33 (prosecution's May 13, 2026 request for a protective order, filed without conferring with Mr. Wander's counsel). It has done the same here: instead of contacting Mr. Wander's counsel to see if the parties could reach a mutually agreeable resolution that addresses the government's purported concerns, the prosecution waited months after its witness had been contacted by Mr. Wander, and then filed its requests for modification straight to the docket, filled with false information.[6]

---

[5] And even in *Bankman-Fried*, the government later consented to adjust the wholesale ban on encrypted or ephemeral applications, instead agreeing that "[t]he defendant shall be permitted to place voice calls, FaceTime calls, and Zoom audio and video calls, and use iMessage, SMS text message, email, and Facebook messenger. The defendant shall be permitted to use WhatsApp only if monitoring technology is installed on his cellphone that automatically logs and preserves all WhatsApp communications." Government's Letter Motion, No. 22 Cr. 673 (S.D.N.Y. Feb. 6, 2023), ECF No. 61.

[6] The prosecution appears to have filed its request unprompted so that it could highlight incendiary information about Mr. Wander that would be inadmissible at trial. Mr. Wander's alleged drug use, and Witness-1's purported knowledge of such use, have absolutely nothing to do with the request for bail modifications and are wholly irrelevant to the actual issues in this case. The Court should see the prosecution's reference to this alleged drug use for what it is: a seedy attempt to smear Mr. Wander's name.

This refusal is inconsistent with its own practice: as briefing in the *Bankman-Fried* matter shows, the prosecution usually notifies counsel about proposed modifications before filing anything to the docket. The prosecution's conduct here—waiting months and then filing an inflammatory letter to the docket without conferring with defense counsel—makes clear that this motion is not about protecting a witness: it is about burdening Mr. Wander's defense. The Court should reject the conditions the prosecution proposes.[7]

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond

cc: All counsel of record (*via* ECF)

---

[7] As mentioned above, Mr. Wander has no objection to a modification individualized to these facts, restricting contact with Witness-1 outside the presence of counsel.