

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 17, 2026

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>    Re:    *United States v. Joshua Wander,* **S1 25 Cr. 473 (JPO)**

Dear Judge Oetken:

The Government strongly opposes any adjournment of the trial scheduled to begin October 19, 2026. Defendant Joshua Wander's motion to adjourn trial from that date until January 2027 or later offers no legitimate basis for delay, only pretexts that collapse under scrutiny. Granting an adjournment would impose real and needless costs on the Government, delay recovery for victims, complicate related civil proceedings, and be against the public interest in the timely and efficient prosecution and resolution of criminal cases.

Wander claims the Superseding Indictment, the volume and timing of discovery productions, and the review of potentially privileged materials justifies a multi-month delay. It does not. Whether considered alone or taken together, the defendant's reasons to postpone his trial are meritless and, at times, manufactured:

- *First*, Wander is wrong that the Superseding Indictment "reframes" and "upends" the Government's case. The Superseding Indictment re-alleges all the same facts as the prior Indictment—indeed, seventeen of the twenty-one pages of the Superseding Indictment repeat the Indictment's allegations verbatim—but includes two additional counts, neither of which requires the production of additional discovery, and one of which is already the subject of motion practice.

- *Second*, Wander greatly exaggerates the burden of discovery. Wander and his counsel have had access to much of the discovery material since November 2025 and substantially all of it since January 2026. The volume of discovery is not "extraordinary," but commensurate with modern fraud cases and highly accessible as some of the largest files are Wander's own messages and virtually all the materials are text-searchable and amenable to computerized review.

- *Third*, Wander cannot in fairness use his own failure to make timely assertions of privilege to justify delay. Wander has been aware since at least October 2025, if not earlier, that 777 Partners had produced his phone extraction to the Government. He now seeks delay because his counsel, with the resources of one of the world's largest law firms, has yet to prepare a privilege log identifying the materials he claims must be withheld from the prosecution team. His position is all the more remarkable given that he earlier moved for a hearing claiming—before identifying any privileged material—that the prosecution team had improperly accessed his communications with counsel.

Not the Government's theory of the case, nor the burden of discovery, nor issues of privilege have changed since this prosecution began. The core allegations of the case remain as they were when the defense first engaged with the Government more than 18 months ago. But two things have changed: First, after being indicted, the defendant secretly and improperly has been trying to influence the testimony of a likely witness, and he got caught. Second, the Superseding Indictment describes—with quotations—Wander's efforts to falsify bank account statements to defraud a lender. These detailed allegations obviously undermine the narrative advanced by Wander in court and in the press that charges should not have been brought, but they do not pose any obstacle to holding trial months from now, particularly when the discovery materials supporting the allegations have already been produced. Wander has hired sophisticated, experienced counsel at one of the most well-resourced firms in the country. If he cannot prepare for trial by October, it would be by choice.

The defendant's motion is also devoid of reasons justifying the lengthy delay that he seeks. Courts routinely deny adjournments sought simply because a superseding indictment was filed, or because discovery continues to be produced. And in those cases where a charge is added or new discovery could be grounds for an adjournment—circumstances absent here—the prevailing practice in this District is to grant a short, limited adjournment to give defense counsel an extra week or two before trial. But here, we are still months from trial, and the defendant's motion lacks particulars as to why the existing time is insufficient. Also absent is an articulation of why three or more months, as opposed to one or two weeks, is the appropriate length of an adjournment. The length of the requested adjournment, untethered to a specific justification for that amount of time, is indicative of the fact that the defendant's request is designed to delay, and is not for necessary preparations.

While there are no persuasive reasons to delay trial, there are compelling reasons to maintain the trial date. The public and the victims have a legitimate interest in a speedy trial, because accountability, restitution, and forfeiture await the jury's verdict. Wander's commercial partners and creditors have a specific interest in a speedy trial, too, because civil litigation has been stayed pending resolution of this criminal case, freezing hundreds of millions in disputed assets and liabilities. For its part, the Government has a practical interest in proceeding as planned, as two of the three Government attorneys preparing to try this case, including one who was involved in the underlying investigation, have pre-existing trial commitments that would prevent them from participating in the trial if adjourned until January 2027.

2

Because the defense's proffered reasons to adjourn are hollow, and the prejudice to the Government would be significant, the defendant's motion to adjourn trial should be denied and trial should proceed on the current schedule.

## I.        Relevant Background

On October 16, 2025, a grand jury returned an indictment charging the defendant in four counts with orchestrating a massive fraud scheme at 777 Partners. On January 8, 2026, the parties appeared before the Court for a pretrial conference. At the request of the defense, the Court scheduled trial to commence on October 19, 2026. (Jan. 8, 2026 Tr. 3).

Shortly after the Indictment was returned, the Government began producing Rule 16 discovery to the defense. Between November 11, 2025, and June 30, 2026, the Government made six discovery productions, with many files deriving from Wander's own cellphone and email inbox. By January 2026, discovery was nearly complete, with approximately 96% of all discovery materials having been produced by that time. The three discovery productions since January 2026 constitute less than 4% of the total materials produced.

On June 3, 2026, the Government moved to modify the defendant's bail conditions after learning the defendant had been attempting to influence the testimony of a likely trial witness. (Dkt. 42). The defendant opposed the Government's request. (Dkt. 43).

On June 16, 2026, the parties jointly submitted to the Court a proposed schedule of pretrial deadlines, which the Court approved. (Dkts. 46, 51).

On June 30, 2026, a grand jury returned a six-count Superseding Indictment against the defendant. (Dkt. 50). The Superseding Indictment added charges for wire fraud and witness tampering but otherwise left the remaining allegations against the defendant unchanged.

## II.       The Motion to Adjourn Trial Should Be Denied

### A. The Superseding Indictment Does Not Justify an Adjournment

The defense cites the Superseding Indictment as the principal reason to delay trial. (Dkt. 54 at 1-2). But the Superseding Indictment does not justify an adjournment. Nearly four months before trial, a grand jury returned a Superseding Indictment adding two counts, wire fraud and witness tampering. The two new counts stem from discrete incidents—a $20 million loan in 2022 for which the defendant provided doctored bank account statements to Lender-4, and the defendant's recent witness tampering of a likely trial witness. The new allegations are sufficiently detailed to enable efficient defense preparation: the Superseding Indictment identifies the relevant individuals and entities, the time frame of the conduct, and quotes the communications themselves that prove the charged conduct. (Dkt. 49 ¶¶ 27-30, 44-45). But the defendant was on notice of the relevant conduct even before the Superseding Indictment was returned, based on the Government's Rule 16 discovery productions (which include the defendant's messages) and, more recently, the

3

Government's June 3, 2026 letter seeking to modify the defendant's bail conditions (describing his efforts at witness tampering). (Dkt. 42). All that is clear from the fact that the Superseding Indictment resulted in no new Rule 16 discovery, something defense counsel's motion ignores.

The defense also claims that the Superseding Indictment "substantially reframes" the Government's theory of the case and "change[s] gears." (Dkt. 54 at 1). This tact is bizarre. The Superseding Indictment repeats every allegation of the Indictment verbatim and merely adds a few pages of additional pleadings. The defense contrives their change-in-strategy argument from the baseless premise that the Government, in referencing civil litigation brought by Lender-1 and Lender-3, adopted those lender-victims' characterization of Lender-4, and that Wander was somehow entitled to rely on those characterizations in framing his defense. The Government, of course, is not Lender-1 or Lender-3, and defense counsel cannot credibly claim to have relied on Lender-1's and Lender-3's description of Lender-4 to develop his trial strategy. This is especially true given that the new count regarding Lender-4 rests, in part, on Wander's own messages, which the Government produced back to him months ago.

To the extent the Superseding Indictment changes anything, it is to illustrate—at times with verbatim quotations—that the defendant personally and knowingly participated in the fraudulent schemes at 777 Partners. As is his right, the defendant has signaled an intent to put the Government to its proof. And in court and in other public remarks, the defense has insisted on the defendant's presumed innocence. The defendant's direct involvement in doctored bank statements reveals those claims to be inconsistent with the evidence, as has the defendant's efforts to shape the testimony of a likely trial witness. No doubt these are challenging developments for the defendant as he considers how to frame his conduct for the jury. But three months is more than enough time for the defendant to tweak his messaging,[1] and the defense fails to cite a single case saying otherwise.

To be sure, *United States v. Gloss*, No. 08 Cr. 823 (HB), 2009 WL 161063, at *3 (S.D.N.Y. Jan. 21, 2009), involved the court granting a continuance following a superseding indictment. (Dkt. 54 at 2). But the defendant does not mention that the superseding indictment in *Gloss* was filed fifteen days before trial. Here, the superseding indictment was filed more than fifteen weeks before trial. Worse, the defendant entirely ignores the other cases analyzed in *Gloss*, including *United States v. Montoya-Echeverria*, 896 F. Supp. 148, 151 (S.D.N.Y. 1995), in which Judge Kaplan denied a trial continuance after the grand jury returned a superseding indictment 26 days before trial, which increased the period of the alleged drug conspiracy from six to nineteen weeks and alleged a second narcotics transaction in addition to that originally charged. In denying defense counsel's request for a continuance, Judge Kaplan noted that the defendant was aware at the time the original indictment was returned that the government possessed information about the second drug transaction. *Id.* The same is true here. Wander fares no better relying on *United States v.*

---

[1] Indeed, Wander substantively responded to the Government's witness tampering allegations days after the Government filed its motion to modify Wander's bail conditions, suggesting he already has command of the relevant facts. (Dkt. 43).

*Rojas-Contreras*, 474 U.S. 231, 240–41 (1985), which involved a superseding indictment returned four days before trial, and the Supreme Court affirmed the denial of a continuance.  If anything, *Gloss* and *Rojas-Contreras* make clear that the defendant's request for an adjournment should be denied.

### B.  The Defense's Characterization of Discovery Is Misleading and Does Not Justify an Adjournment

The defense's second proffered reason for an adjournment—the timing and volume of discovery productions—fares no better. The Government has made six discovery productions, including a production on June 30, 2026. The total volume of discovery produced consists of slightly more than three terabytes of data, meaningful portions of which constitute Wander's cellphone and inbox. Neither the volume nor the nature of the discovery is "extraordinary" for a fraud case, particularly given the time afforded defense counsel to review that discovery before trial. Notably, the defense has been in possession of substantially all of the Rule 16 discovery since January 2026, affording the defense ample time to review these materials in advance of the scheduled trial date.

With monthslong access to the vast majority of Rule 16 discovery, the defense can raise only the fact that the Government made its most recent discovery production on June 30, 2026, the same day that it filed its Superseding Indictment. But, as noted above, the two additional charges in the Superseding Indictment did not generate new discovery. Moreover, the Government's June 30, 2026 production consisted of fewer than ten new documents along with non-privileged text messages from the defendant's cellphone, which had been produced to the defendant in a different form in November 2025. Rather than confront the actual composition of the Government's discovery productions, the defense resorts to hyperbole, citing the number of documents (1.6 million) or number of pages (7 million). (Dkt. 54 at 2). Again, those figures are not eye-popping in a white-collar case of this magnitude, and, more important, they capture material that Wander's defense team has been reviewing for months. To characterize the Government's Rule 16 productions as a "new development[]" is at once inaccurate and disingenuous.[2]

The defense's reliance on *United States v. Chu*, No. 25 Cr. 579 (PKC) (S.D.N.Y.), is likewise misleading. (Dkt. 54 at 2). In *Chu*, the defendant argued that an adjournment was required because the Government had continued to produce voluminous discovery in conjunction with a superseding indictment that "rest[ed] on an entirely new and distinct body of evidence." (*Id.* Dkt.

---

[2] There are other holes in the defense's attempts to paint discovery as "extraordinary" and "enormous." (Dkt. 54 at 1, 2). For instance, the Government produced to the defense nearly 300,000 documents obtained from the Securities and Exchange Commission, but more than 200,000 of these documents are duplicative of materials that appear elsewhere in the Government's production.

84 at 2).[3] No similar claim can be levied here; the Superseding Indictment does not involve additional discovery, and the Government has not continued to produce voluminous discovery in the lead up to trial. In any event, Judge Castel did not ratify the defense's complaints, finding that "the status of discovery by the government is more than adequate to permit a fair trial to proceed as scheduled," even while granting the adjournment request.

## C. The Defendant's Obligation to Claim Privilege, If He Intends to Do So, Does Not Justify an Adjournment

The defense also seeks an adjournment based on the Government's request that the defendant support his sweeping claims of personal privilege reasonably in advance of trial. Black-letter law places the burden to establish the existence of a privilege on the party asserting it, which Wander has not done despite his awareness that the Government has long had access to his communications and notwithstanding the fact Wander has already moved for a hearing based on his view that his privilege had been invaded by the Government. Wander's failures to advance timely claims of privilege do not justify still further delay, especially when Wander has the resources of a major law firm at his disposal to complete the task.

As described in the Government's opposition to the defendant's pretrial motions, (Dkt. 44), the defense first asserted the defendant's personal privilege over records produced in this case in its May 15, 2026 motion seeking details regarding the Government's filter review process. (Dkt. 39). The defendant neither substantiated the scope of his privilege assertions with competent evidence [4] nor numerated the documents over which he claimed privilege. Thereafter, the Government has repeatedly requested that defense counsel timely produce a privilege log to identify which documents, if any, implicate his personal privilege.[5] The defense has yet to do so.

---

[3] In seeking an adjournment, the defense in *Chu* alleged, "In the last two weeks alone, the government obtained its superseding indictment, turned Goodgame into a cooperator, and produced 104 gigabytes of unprocessed data and more than 400,000 other documents." (Dkt. 84 at 4). There are few if any parallels between that allegation and the facts of this case.

[4] The defendant's Reply appended the declaration of one attorney who claimed to have been in a joint defense agreement with 777 Partners as to the Government's criminal investigation. (Dkt. 47). That assertion was beside the point; the defense's motion never cited this joint defense agreement in support of its invocation, rather, the defendant cited three civil matters in which his personal privilege was purportedly implicated. (Dkt. 39 (citing (citing *Change Lending, LLC v. 777 Partners LLC*, No. 650118/2024 (N.Y. Sup. Ct. Jan. 9, 2024); *Obra Cap. Mgmt., LLC v. 777 Partners LLC*, No. 651220/2024 (N.Y. Sup. Ct. Mar. 7, 2024); and *Leadenhall Cap. Partners LLP v. Wander et al.*)). As to these matters, the defendant has not proffered any reliable proof that a joint defense agreement existed.

[5] The Government requested that the defense produce a privilege log on June 12, 24, 29, and most recently on July 14, 2026. To assist the defense in doing so, the Government produced an Excel listing the Bates numbers of documents from Wander's email account that had been segregated from the prosecution team as potentially privileged; the entire contents of the defendant's

Defense counsel's warped characterization of this supposedly "unjustified" and "new demand" for a privilege log disregards the catalyst for the Government's request: the defense's May 2026 invocation of a personal privilege, which the defendant never before sought to assert or protect. The defense seems to suggest that it should have fallen to the Government to both identify and safeguard the defendant's personal privilege because the Government produced these materials to the defendant. (Dkt. 54 at 3). With this argument, the defense turns on its head the longstanding precedent requiring the privilege holder (that is, Wander) to "establish the essential elements of the privilege," *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996), and produce an adequate privilege log to support a privilege claim, *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 474 (2d Cir. 1996) (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474 (2d Cir. 1993) (internal quotation marks omitted)). In short, if the defendant intends to invoke his personal privilege over materials, it is incumbent on him to do something about it and not just use this obligation to delay the start of trial.

Separately, defense counsel's recitation of the burden involved in conducting a privilege review are overblown. (Dkt. 54 at 3). The defense team consists of three partners and one counsel (along with, presumably, a team of associates) at Gibson Dunn, a global law firm employing over 2,200 attorneys. These attorneys are capable of screening discovery for potentially privileged documents and preparing an accompanying privilege log in short order, particularly if they have been "reviewing discovery continuously" since November 2025 as they claim. (Dkt. 54 at 2). Devising and running search terms and search parameters over voluminous discovery and conducting secondary reviews of individual documents is, and has long been, standard fare for white collar defense firms. It is baffling to suggest it is "impossible" for Gibson Dunn to conduct this review in the three months remaining before trial, particularly considering that the defense has had access to these materials as early as November 2025, and was expressly asked to engage in this review over one month prior. (Dkt. 54 at 4).[6]

Defense counsel's reliance on *United States v. James*, *et al.*, No. 26 Cr. 29 (AT) (S.D.N.Y.), is also disingenuous. (Dkt. 54 at 4). In *James*, the defense's adjournment request was almost entirely dedicated to a recitation of the perceived state of Rule 16 discovery, with only brief

---

cellphone; a separate set of the non-privileged contents of the defendant's cellphone; and—in response to the defense's recent demand—a set of potentially privileged communications from the defendant's cellphone that were segregated from the prosecution team. The defense has failed to produce a privilege log for any of these materials.

[6] The defense faults the Government for "not commit[ing]" to produce potentially privileged materials from the defendant's cellphone on July 10. (Dkt. 54 at 4). That is misleading. The parties spoke at 5:00 p.m. on Friday, July 10. During the call, the defense first asked the Government to produce a set of potentially privileged materials from Wander's cellphone. As the Government informed the defense then, it first needed to confer with its filter team to understand what could be produced. The Government did that on Monday, July 13, and learned it could produce, in the first instance, 280 text message threads that had been segregated by the filter team as potentially privileged. On July 15, the filter team produced those materials to the defense.

mention of the defense's ongoing privilege review. (*See id.* Dkt. 44). It is not comparable to the posture in this case, where the Superseding Indictment has resulted in no new discovery. Moreover, the defendant's selective quotation of the defendant's adjournment request obscures the most salient detail: the defendant in *James* produced a privilege log covering 100,000 potentially privileged documents in less than two weeks, and by the deadline the Government imposed. *Id.* ("The government gave counsel for Mr. James less than two weeks to review [100,000 potentially privileged documents] for privilege, and Mr. James submitted a privilege log related to those materials on April 10, as requested by the Government."). This fact, which defense counsel excised from their motion, underscores the irrationality of defense counsel's claim that it is "impossible" to prepare a privilege log that the Government requested over a month ago, with more than three months remaining until the commencement of trial. The suggestion that a firm of Gibson Dunn's resources and experience is incapable of preparing a privilege log—or even committing to a timeline by which they will prepare a privilege log—is not credible.

### D.  There Is No Justification for a Lengthy Adjournment

Even if some adjournment were warranted, and it is not, the defendant has utterly failed to justify the length of the adjournment he seeks. Nowhere in the defendant's motion does he explain why a delay of three or more months is necessary. The motion identifies no specific tasks that require three, four, or more months to complete; it offers no timeline for reviewing the Superseding Indictment, no proposed schedule for producing a privilege log, and no estimate of how long any additional discovery review would take; and it does not explain in any particular detail why the three months until trial are insufficient time to complete those tasks. This silence is telling. A request for an open-ended, monthslong continuance—untethered to any concrete showing of what work remains or how long it will actually take—is precisely the kind of unsubstantiated request courts routinely reject. The defense's failure to tie its requested adjournment length to any specific, articulable need is reason enough to deny the motion outright, or at minimum to reject the extraordinary length of delay the defense proposes in favor of, at most, a brief and clearly justified extension.

### E.  An Adjournment Will Prejudice the Public and Reward the Defendant's Gamesmanship

The public has a significant interest in the prompt resolution of this matter. By October 19, 2026, charges against the defendant will have been pending for over a year, and the underlying conduct dates back further still. During that time, related civil cases have been stayed and corporate assets dissipated, leaving victims and creditors unable to pursue recovery. Unless and until the criminal matter is concluded, victims of the defendant's fraud, parties to the bankruptcy and related civil litigation, as well as the public at large will remain without recourse or restitution. A further adjournment, particularly one stretching into January 2027 or beyond, would extend that harm by months, with no corresponding benefit to the truth-seeking process.

Separate from injuring the interest of the public in a speedy trial, the Government will be prejudiced if trial is adjourned, in at least two respects. First, any adjournment would afford the defendant further opportunity to conduct improper witness outreach with the aim of corrupting the Government's proof. This is not a speculative concern: the defendant has already engaged in witness tampering of a likely trial witness during the pendency of this case, which prompted the Government's motion to modify his bail conditions in June. Granting the defendant additional months of pretrial liberty, on the heels of that conduct, would only compound the risk that the integrity of the Government's evidence is further undermined before the jury hears it.

Second, an adjournment would inflict unnecessary costs on the Government. Two of the three Government attorneys who are preparing to try this case, including one attorney who was part of the team responsible for the underlying investigation, have pre-existing trial commitments scheduled for December 2026 and February 2027, respectively. Moving this trial to January 2027, or even the following few months, would conflict with those other trials and make it impossible for the attorneys to continue with this case. The result would not be a brief pause but a meaningful restaffing of the prosecution team, forcing new attorneys to absorb years of investigative history, voluminous discovery, and the substantive and procedural posture of the case in a compressed timeframe. There are benefits to maintaining the continuity of trial counsel. Likewise, there are risks and burdens associated with restaffing trial teams shortly before trial, risks that fall not on the Government alone but on the orderly administration of justice itself. This factor weighs against adjourning the trial, particularly where none of the proffered bases to adjourn support the relief the defense now seeks.

* * *

For the reasons set forth above, the Court should deny outright the defendant's request to adjourn trial. Should the Court be inclined to grant any adjournment, the Government respectfully requests that trial commence no later than November 2, 2026, in light of the difficulties in securing juror availability during the holidays and scheduling conflicts for two of the Government attorneys assigned to this matter.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  _____

Marguerite B. Colson
Ryan B. Finkel
Sarah Mortazavi
Alexandra N. Rothman
Assistant United States Attorneys
Southern District of New York
(212) 637-2587/-6612/-2520/-2580

9