UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

- v. - :

S1 25 Cr. 473 (JPO)

:

JOSHUA WANDER,

:

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

JAMES M. MCDONALD
United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Thomas S. Burnett
Marguerite B. Colson
Alexandra N. Rothman
Assistant United States Attorneys
- *Of Counsel* -

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... ii

PRELIMINARY STATEMENT .................... 1

BACKGROUND .................... 1

ARGUMENT .................... 3

I. The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial or Misleading .................... 3

A. The Court Should Preclude Evidence or Arguments of Selective Prosecution .................... 4

B. The Court Should Not Permit the Defendant to Blame His Victims .................... 7

C. The Court Should Exclude Certain Defense Arguments That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in 777's Preferred Equity Offering Materials .................... 9

D. The Court Should Exclude Evidence and Argument That the Defendant Believed His Victims Would Be Made Whole Or That Factors Outside His Control Caused 777's Collapse .................... 11

E. The Court Should Preclude Argument About Advice or Presence of Attorneys .................... 14

F. The Court Should Exclude Evidence of the Defendant's Personal Circumstances and Potential Punishment .................... 19

II. Statements of the Defendant's Coconspirators and Agents Are Not Barred by the Rule Against Hearsay .................... 20

A. Applicable Law .................... 20

B. Discussion .................... 23

III. Certain Evidence Is Admissible as Direct Evidence or Pursuant to Rule 404(b) .................... 29

A. Applicable Law .................... 29

B. Discussion .................... 32

IV. The Court Should Preclude Cross Examination on Topics That Do Not Bear on Credibility or Are Highly Prejudicial .................... 36

CONCLUSION .................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) .......... 22, 23, 25

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) .......... 22

*Farganis v. Montgomery*, 397 F. App'x 666 (2d Cir. 2010) .......... 38, 39

*Feis v. United States*, 394 F. App'x 797 (2d Cir. 2010) .......... 22

*George v. Celotex Corp.*, 914 F.2d 26 (2d Cir. 1990) .......... 21

*ING Cap. LLC v 777 Partners*, No. 2025-1552-CA-01 (Fla. 11th Cir. Ct.) .......... 7

*Kousisis v. United States*, 605 U.S. 114 (2025) .......... 11, 12, 13

*Leadenhall v. Wander*, No. 24 Cr. 3453 (JGK) (S.D.N.Y.) .......... 7

*Neder v. United States*, 527 U.S. 1 (1999) .......... 11

*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534 (2d Cir. 1992) .......... 22, 27

*Rogers v. United States*, 422 U.S. 35 (1975) .......... 20

*S.E.C. v. AT&T, Inc.*, 626 F. Supp. 3d 703 (S.D.N.Y. 2022) .......... 24

*S.E.C. v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC),
2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) .......... 17

*S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) .......... 17

*S.E.C. v. Wander*, 25 Civ. 8565 (VM) (S.D.N.Y.) .......... 7

*Shannon v. United States*, 512 U.S. 573 (1994) .......... 20

*United States v. Adelekan*, 567 F. Supp. 3d 459 (S.D.N.Y. 2021) .......... 8

*United States v. Adelglass*,
No. 23-6248, 2024 WL 5087519 (2d Cir. Dec. 12, 2024) .......... 36

*United States v. Amato*, 15 F.3d 230 (2d Cir. 1994) .......... 23

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007) .......... 8

*United States v. Aponte*, 31 F.3d 86 (2d Cir. 1994) .......... 24

*United States v. Armstrong*, 517 U.S. 456 (1996) .......... 5

*United States v. Bailey*, 444 U.S. 394 (1980) .......... 4

*United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir. 1990) .......... 4

*United States v. Bankman-Fried*, 179 F.4th 104 (2d Cir. 2026) .......... 11, 18

*United States v. Bankman-Fried*,
No. 22 Cr. 673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sept. 26, 2023) .......... 8

*United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ..... 20

*United States v. Berger*, 188 F. Supp. 2d 307 (S.D.N.Y. 2002) ..... 12, 13

*United States v. Buckley*, Nos. 95-1469, 95-1505, 101 F.3d 685, 1996 WL 282140 (2d Cir. 1996) ..... 12, 13, 15

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) ..... 30, 34

*United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ..... 9

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) ..... 16

*United States v. Connolly*, No. 16 Cr. 370 (CM), 2019 WL 2125044 (S.D.N.Y. May 2, 2019) ..... 6

*United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991) ..... 30

*United States v. Crowley*, 318 F.3d 401 (2d Cir. 2003) ..... 37

*United States v. Daly*, 842 F.2d 1380 (2d Cir. 1988) ..... 30

*United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2010 WL 4967878 (S.D.N.Y. Nov. 22, 2010) ..... 34, 35

*United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004) ..... 5

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999) ..... 30, 31, 35

*United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013) ..... 21

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017) ..... 31

*United States v. Edwards*, 101 F.3d 17 (2d Cir. 1996) ..... 6

*United States v. Estrada*, 430 F.3d 606 (2d Cir. 2005) ..... 37

*United States v. Evangelista*, 122 F.3d 112 (2d Cir. 1997) ..... 16

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ..... 32

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ..... 32

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) ..... 22

*United States v. Godwin*, 272 F.3d 659 (4th Cir. 2001) ..... 12

*United States v. Gole*, 21 F. Supp. 2d 161 (E.D.N.Y. 1997) ..... 12

*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ..... 29, 30, 34

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) ..... 22

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007) ..... 20

*United States v. Hild*, No. 19 Cr. 602 (RA) (S.D.N.Y.) ..... 18

*United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012) ..... 30

*United States v. James*, 712 F.3d 79 (2d Cir. 2013) ..... 23, 26

*United States v. Jefferson*, 215 F.3d 820 (8th Cir. 2000)........................................................ 23, 29

*United States v. Jergensen*, 797 F. App'x 4 (2d Cir. 2019)........................................................ 26

*United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010)................................................................ 31

*United States v. Korogodsky*, 4 F. Supp. 2d 262 (S.D.N.Y. 1998)................................................ 9

*United States v. Kwong*, 69 F.3d 663 (2d Cir. 1995)................................................................... 4

*United States v. Lange*, 834 F.3d 58 (2d Cir. 2016)................................................................. 12

*United States v. Males*, 459 F.3d 154 (2d Cir. 2006)................................................................ 12

*United States v. Mendlowitz*, No. 17 Cr. 248 (VSB),
2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019)................................................................................ 6

*United States v. Miller*, 626 F.3d 682 (2d Cir. 2010)................................................................... 4

*United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. 2022)............................................... 9, 36

*United States v. Nelson*, 365 F. Supp. 2d 381 (S.D.N.Y. 2005)................................................ 37

*United States v. Okun*, No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009)........................ 12

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991)........................................................... 20

*United States v. Padilla*, 203 F.3d 156 (2d Cir. 2000)................................................................ 23

*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997)..................................................................... 4

*United States v. Pipola,* 83 F.3d 556 (2d Cir. 1996)................................................................. 35

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007)............................................................ 30

*United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987)......................................................... 23, 28, 29

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990)............................................................. 31

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013).................................................... 5

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997)................................................................ 5

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007).................................................................. 31

*United States v. Rivera*, 22 F.3d 430 (2d Cir. 1994)............................................................. 23, 26

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990)................................................... 32

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993)..................................................................... 35

*United States v. Rosado*, 728 F.2d 89 (2d Cir. 1984)................................................................... 7

*United States v. Rubin*, 609 F.2d 51 (2d Cir. 1979).................................................................... 26

*United States v. Saneaux*, 392 F. Supp. 2d 506 (S.D.N.Y. 2005)................................................ 25

*United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990)...................................................... 38

*United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) . 37

*United States v. Schulte*, No. 17 Cr. 548 (PAC), 2020 WL 133620 (S.D.N.Y. Jan. 13, 2020) .... 17

*United States v. Scully*, 877 F.3d 464 (2d Cir. 2017)........................................................ 16
*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991)........................................................ 23
*United States v. Snype*, 441 F.3d 119 (2d Cir. 2006)........................................................ 32
*United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .... 5
*United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y.) ........................................................ 18
*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988)........................................................ 23
*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994)........................................................ 30
*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997)........................................................ 5
*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004)........................................................ 9
*United States v. Thomas*, 581 F. App'x 100 (2d Cir. 2014) ........................................................ 12, 13
*United States v. Tracy*, 12 F.3d 1186 (2d Cir. 1993)........................................................ 25
*United States v. Tussa*, 816 F.2d 58 (2d Cir. 1987)........................................................ 32
*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013)........................................................ 8
*United States v. Watson*, No. 23 Cr. 82 (EK), 2024 WL 3471303 (E.D.N.Y. July 19, 2024)........ 8
*United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017)........................................................ 8, 10, 11
*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993)........................................................ 31
*Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431 (2d Cir. 1993)........................................................ 38, 39

**Rules**

Fed. R. Evid. 402 ........................................................ 3
Fed. R. Evid. 403 ........................................................ 4, 32
Fed. R. Evid. 404(b)........................................................ 31
Fed. R. Evid. 608(b)........................................................ 37
Fed. R. Evid. 609 ........................................................ 38, 39
Fed. R. Evid. 801(c)........................................................ 21
Fed. R. Evid. 802 ........................................................ 21

## PRELIMINARY STATEMENT

The Government respectfully submits these motions *in limine* in advance of the trial of defendant Joshua Wander scheduled to begin on October 19, 2026. The Government seeks rulings in advance of trial to:

- Preclude evidence or argument that the defendant's fraudulent activity was industry practice or should be resolved in a civil forum;
- Preclude evidence or argument that the victims of the defendant's fraud were negligent or failed to conduct sufficient due diligence;
- Preclude evidence or argument that the defendant's misrepresentations were immaterial due to disclaimers in documents provided to investors;
- Preclude evidence or argument that the defendant believed his victims would be made whole or that factors outside of his control caused 777's collapse;
- Preclude evidence or argument that in defrauding lenders and investors the defendant relied on the involvement or presence of counsel;
- Prelude evidence or argument regarding the defendant's personal circumstances and potential punishment;
- Admit statements of the defendant's co-conspirators and agents made in furtherance of the conspiracy;
- Admit evidence of the defendant's drug conviction and drug use;
- Admit evidence of the defendant's substantial personal spending; and
- Preclude the defendant from questioning a witness on irrelevant and prejudicial topics.

## BACKGROUND

On June 30, 2026, a Grand Jury in this District returned a six-count Superseding Indictment charging the defendant with two counts of wire fraud, securities fraud, conspiracy to commit wire fraud, conspiracy to commit securities fraud, and witness tampering. *See* Dkt. 50 (the "Indictment"). The charges arise out of the defendant's scheme, beginning in or around 2021, to defraud the lenders and investors of 777 Partners and its subsidiaries and affiliates ("777") by

making false and misleading statements regarding the firm's assets and financial condition. Principally, the defendant hid significant deficiencies on lending facilities, giving lenders and investors the false impression that those facilities were fully collateralized, when they were not. The defendant accomplished that fraud primarily by pledging assets that 777 had never purchased, or had pledged to other lenders, to extract hundreds of millions of dollars from his lenders, and then used that money for other purposes, including to buy airplanes and professional sports teams abroad; to place risky bets on interest rates movement; and for his own personal spending, including to pay for a private jet.

Wander's scheme sent 777 into a downward spiral. As 777 borrowed more from its lenders using double-pledged or unowned assets, 777 needed more assets to make up for the collateral deficiencies in its credit facilities. But because the defendant had spent the money elsewhere, he lacked the funds to purchase the assets 777 needed. And so the defendant kept pledging greater numbers of assets that he had never purchased, or that were already pledged elsewhere. In 2021 and 2022, to try and plug the cash shortfall, the defendant raised more than $200 million from investors through a preferred equity offering, without disclosing the significant collateral shortfalls and cashflow problems that plagued 777.

In early 2023, when one of Wander's victims discovered that its assets had been double-pledged, the defendant lied, blaming the double-pledging of assets on a glitch in 777's computer system. For months thereafter, the defendant tried to conceal the full extent of the collateral deficiencies—and to hide the fact that those deficiencies were a result of fraud, instead of an accident—hoping to stave off civil litigation and the public exposure of his crimes. By 2024, however, the fraud at 777 became public, and Wander resigned as CEO, leaving 777's victims with hundreds of millions in losses.

The Government expects that three of the defendant's co-conspirators, Damien Alfalla, Nicholas Bennett, and Alexander Adnani, will testify at trial about how they assisted the defendant in committing fraud. Alfalla served as 777's CFO, and has pleaded guilty pursuant to a cooperation agreement for his participation in the defendant's scheme. Bennett and Adnani were financial analysts at 777, and will testify pursuant to non-prosecution agreements. Together, these witnesses are expected to testify that, at the defendant's direction, they pledged assets that 777 had never purchased; double-pledged assets to multiple lenders; doctored bank statements and provided them to lenders; prepared false compliance reports and provided them to lenders; and routinely made misrepresentations and omissions regarding 777's financial conditions and assets to lenders and investors.

The Government further expects to call at trial, among other witnesses, victims of the defendant's crimes, former employees of 777, and an expert witness whose financial analysis will show the double-pledging of assets, and pledging of assets not purchased, as well as the defendant's use of funds. The Government also intends to introduce documentary evidence of the defendant's crimes, including email communications, text messages, compliance reports, recordings of the defendant's lies, and financial records.

## ARGUMENT

### I. The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial or Misleading

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence," Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689-90 (2d Cir. 2010).

A defendant is entitled to present a defense only if it has a foundation in the evidence, *see United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). If the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, to the jury. *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

Under the above standard, and for the reasons set forth in detail below, the defense should be precluded from arguing or presenting evidence at trial: (A) that the defendant is being selectively prosecuted, whether because the charged conduct was "industry standard" or because it should be resolved in a civil forum; (B) that the victims of the fraudulent scheme were negligent or failed to conduct sufficient due diligence; (C) that the defendant's misrepresentations were immaterial based on disclaimers in the preferred equity offering materials; (D) that the defendant believed his victims would be made whole or that factors outside of his control caused 777's collapse; (E) that in defrauding his lenders or investors, the defendant relied on the involvement or presence of counsel; and (F) that the defendant's personal circumstances or potential punishment merit leniency or sympathy.

**A. The Court Should Preclude Evidence or Arguments of Selective Prosecution**

The Court should preclude the defense from introducing any evidence or argument that the defendant is being selectively prosecuted, whether because the charged conduct was "industry standard" or because this case should be litigated in a civil forum. Arguments and evidence regarding the reach of criminal statutes or the Government's decision to prosecute are "ultimately

separate from the issue of [the defendant's] factual guilt" and, thus, properly excluded from trial. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also id.* ("[The] selective prosecution defense is an issue for the court rather than the jury."); *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the Government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (noting that the defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant).

The basis for this settled rule is fundamental. A claim of improper prosecutorial motive, whatever its ground, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Such a claim is self-evidently "unrelated to factual innocence of the crime charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve it. *Regan*, 103 F.3d at 1082; *see also United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court. . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (internal quotation marks and citation omitted)).

Within the rubric of selective-prosecution claims is any argument that defendant has been unfairly singled out for conduct—*i.e.* double pledging assets and pledging fictitious assets—that

was standard industry practice. For one thing, "'everyone is doing it,' is not a defense to the crime of wire fraud or conspiracy to commit wire fraud; just as 'everyone speeds' is not a defense if your car happens to get picked up on the radar.'" *United States v. Connolly*, No. 16 Cr. 370 (CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019). That answer to the charges is no defense at all because it has no probative value as to whether the defendants in this case are guilty of the charged crimes. *See United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019) ("[T]he fact that certain conduct may be common or general practice in an industry was not relevant to the jury's consideration of the conduct of [the defendant], and is not a defense to wire fraud."). Indeed, courts regularly instruct jurors to consider only the conduct of the individuals on trial.

Even assuming evidence of industry practice had some probative value, any such value would be substantially outweighed by the significant likelihood that injecting such argument or evidence at trial would lead to unfair prejudice, undue delay, confusion of the issues and misleading the jury. Fed. R. Evid. 403. Refuting the argument that "everyone does it" or "it's common practice" would require the government to introduce its own evidence of contrary industry norms, necessitating a protracted mini-trial on the standards governing lending against structured-settlements.

Relatedly, the Court should preclude any argument that Wander had to partake in fraudulent conduct, so that 777 could stay competitive in the private credit industry and deliver dividends to its investors. A defendant's "good" motive to commit a crime does not negate his criminal intent and is not otherwise a defense. *See United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) (affirming trial court's decision not to adjourn trial to allow defendant additional time to prepare defense because the "defense was rooted in 'the erroneous assumption that good motive

for committing a crime is inconsistent with criminal intent'") (quoting *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984)). Rather, any evidence of purported good motive or explanation is designed to garner jury sympathy or confuse the jury and should be precluded.

The Court should additionally preclude any argument or evidence that the conduct charged in this case should be resolved as a civil regulatory matter. As this Court is aware, civil litigation ensued as 777 was collapsing. In May 2024, Leadenhall filed a civil complaint against Wander, 777, and others in this District. *See Leadenhall v. Wander*, No. 24 Cr. 3453 (JGK) (S.D.N.Y.), Dkt. 187. A few months later, in October 2024, ING filed a civil complaint against Wander, 777, and others, first in this District and then in Florida state court. *See ING Cap. LLC v. 777 Partners*, No. 2025-1552-CA-01 (Fla. 11th Cir. Ct.), DIN 59. And in October 16, 2025, the U.S. Securities and Exchange Commission brought a parallel civil action against the defendant. *S.E.C. v. Wander*, No. 25 Civ. 8565 (VM) (S.D.N.Y.). Any argument that the disputes between 777 and its victims can and should be handled in a civil forum—including a characterization that the case is a "civil dispute" or "civil matter"—is irrelevant and unduly prejudicial. It is no defense to the crimes charged that civil and regulatory remedies are available to the victims and, incidentally, ignores the public's interest in enforcement of federal criminal laws. Any argument to that end would be improper, designed to persuade the jury that it would be unfair and unduly harsh to make the defendant answer to federal criminal laws—together with their harsh penalties—when civil and regulatory remedies are adequate and available.

**B. The Court Should Not Permit the Defendant to Blame His Victims**

The defendant should be precluded from arguing or adducing evidence that 777's lenders and investors were negligent, gullible or insufficiently diligent. "Such evidence routinely is excluded from trials on wire [] fraud charges because 'reliance is not an element of criminal fraud,'

and 'the unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent.'" *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023) (quoting *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017)). Indeed, "[t]he Court of Appeals routinely has rejected a gullible victim defense for wire-fraud charges." *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (citing *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007), and *Weaver*, 860 F.3d at 96)).

Similarly, for securities fraud, the Government does not need to establish that anyone actually relied on the defendant's misrepresentations. *See United States v. Vilar*, 729 F.3d 62, 88-89 (2d Cir. 2013) ("the long-established law of our Circuit … is that, when the government … brings a civil or criminal action under Section 10(b) and Rule 10b–5, it need only prove … materiality, meaning a substantial likelihood that a reasonable investor would find the omission or misrepresentation important in making an investment decision, and not actual reliance"); *United States v. Watson*, No. 23 Cr. 82 (EK), 2024 WL 3471303, at *2 (E.D.N.Y. July 19, 2024) (that "investors would (or should) have done their own diligence and analysis and thereby recognized the misstatements as such … is not a valid defense").

Applied here, the defendant should be precluded from arguing, or introducing evidence, that 777's victim-lenders or investors engaged in inherently risky conduct by advancing money to 777, that they were careless or not sufficiently focused on their loans or equity investments, or that they were otherwise to blame for a lack of diligence. Doing so has no probative value, and it would risk misleading the jury by shifting the focus of the case away from the defendant's conduct and to the sufficiency of the victims' due-diligence processes. This would also waste considerable time because it would require the Government to introduce evidence about the victims' diligence and

how their practices compared to industry standards in a complicated corner of the financial world, about which the jury will have little familiarity.

Because a defendant may not assert a victim's negligent failure to discover the fraud, *see United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004), the defendant also should not be permitted to cross-examine victim witnesses in a manner that implies that their due diligence was inadequate or that they were otherwise negligent. *See United States v. Korogodsky*, 4 F. Supp. 2d 262, 265-66 (S.D.N.Y. 1998) ("It is no defense that the victims of the fraud may have been engaged in some misconduct" and therefore "possible misconduct of the victim [is] not relevant . . . ."). Such a line of questioning only serves as an improper invitation for the jury to blame the victims for the crimes of the defendant. *See United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *4, *6 (S.D.N.Y. Oct. 19, 2018) (evidence that victim hedge fund did not exercise sufficient oversight of its investment was inadmissible; "[w]hether the Hedge Fund performed due diligence or is a sophisticated investor in the ticket market is wholly irrelevant to these charges, and is merely a facile attempt to blame the victim—which is an impermissible strategy in a fraud case"); *United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. Oct. 4, 2022), Tr. 2850 ("To say that a reasonable investor is required to have read the SEC filings before he or she can complain about having been defrauded is not, cannot be, the law.").

### C. The Court Should Exclude Certain Defense Arguments That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in 777's Preferred Equity Offering Materials

The defendant should be precluded from making arguments or cross-examining witnesses about contractual disclaimers or similar provisions in 777's preferred equity offering materials. The offering documents contain several boilerplate disclaimers, including that:

> The offering materials contain "forward-looking statements" that are subject to change based on "[s]uch known and unknown risks, uncertainties and other factors that could cause the actual results to different materially from the statements" in the offering materials;
>
> Any "forward-looking statement made herein speaks only as of the date of this presentation. Factors or events that could cause our actual results to differ may emerge from time to time, and it is not possible for us to predict all of them. We undertake no obligation to publicly update any forward-looking statement, whether as a result of new information, future developments, or otherwise."

In addition, 777's financial statements, which were unaudited and distributed to investors in 2021 and 2022, included the following disclaimer:

> **DISCLAIMER**: The below draft financials are estimated, unaudited and still under review by management. Valuation updates in the Aviation and Insurance verticals are still pending finalization. Therefore, information is subject to change.

Witnesses are expected to testify that they received written and oral representations from Wander and others at 777 regarding the financial condition of 777, and based on those representations, invested millions of dollars in the preferred equity offering. That the defendant also included boilerplate disclaimer language in certain of these materials is legally insignificant. As noted above, reliance is not an element of criminal securities fraud. *Weaver*, 860 F.3d at 95 (the "common-law requirements of justifiable reliance and damages plainly have no place in the federal fraud statutes.") (citing *Neder v. United States*, 527 U.S. 1, 24-25 (1999)). And because "a disclaimer of reliance on certain representations" does not "mean that the oral representations were immaterial or without tendency to influence," *Weaver*, 860 F.3d at 95, they have no relevant purpose at trial. Indeed, it would undermine the purposes of the fraud laws to permit "[f]raudsters [to] … escape criminal liability for lies told to induce gullible victims … to sign a contract containing disclaimers of reliance." *Id.* at 96. The disclaimers therefore do not bear on the question whether Wander otherwise made material misstatements to investors regarding the financial

condition of 777. Any argument or cross-examination regarding the offering materials would be designed to improperly imply the opposite. In addition to being irrelevant, such evidence would be confusing to jurors and should be excluded under Rule 403.

### D. The Court Should Exclude Evidence and Argument That the Defendant Believed His Victims Would Be Made Whole Or That Factors Outside His Control Caused 777's Collapse

The defendant should also be precluded from offering evidence or argument that he believed that his victims would be made whole, or that factors outside of his control caused 777's collapse. Both arguments are legally irrelevant, designed to mislead and confuse the jury, and should be precluded.

It is no defense to wire or securities fraud that a defendant intended to repay victims or that his victims might have been made whole but for external factors. The fraud is "complete when the defendant has induced the deprivation of money or property under materially false pretenses." *Kousisis v. United States*, 605 U.S. 114 (2025); *see United States v. Bankman-Fried*, 179 F.4th 104, 114-15 (2d Cir. 2026) ("any contention that Bankman-Fried lacked an intent to defraud because he intended to eventually repay his customers was legally misleading and prejudicial because the wire fraud statute encompasses temporary misappropriation of money or property"). Nor is there a requirement that the defendant inflict economic loss, *Kousisis*, 605 U.S. at 127, much less that he "intended to permanently deprive the victim's money or property," *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (holding that jury instruction for wire fraud charge that "the requirement of contemplated harm or injury does not require that [defendant] intended to permanently de[p]rive the victim's money or property" was "an accurate statement of the applicable law"). Thus, "an intent to return money or property is not a defense." *United States v.*

*Thomas*, 581 F. App'x 100, 102 n.3 (2d Cir. 2014) (citing *United States v. Buckley*, Nos. 95-1469, 95-1505, 101 F.3d 685, 1996 WL 282140, at *2 (2d Cir. 1996)).

Similarly, it is no defense to wire or securities fraud that a defendant believed his business venture would ultimately prove profitable. *See, e.g.*, *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016) (where defendant and co-conspirators "intended to immediately deprive investors of their capital through fraud," their belief, even if truly held, "that in the long-term [their companies] would ultimately succeed," is not a defense to securities fraud or wire fraud); *see also United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) ("Were a jury to find that [the defendant] intentionally caused others to issue materially false or misleading statements of the [company's] value to its investors . . . he properly would be found guilty, even if he 'firmly believed' that, in the end, his strategy would 'work out.'"). That is because such a belief—sincere or not—has no bearing on the veracity of a defendant's misrepresentations at the time they were made. *United States v. Okun*, No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) (The "well-intentioned belief that a business venture in which a defendant was involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true.") (citing *United States v. Godwin*, 272 F.3d 659, 666-67 (4th Cir. 2001)); *United States v. Gole*, 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997) ("The definition of good faith addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan.") (citing 1A Sand, *Modern Federal Jury Instructions*, ¶ 44.01)); *United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) (finding that a guilty verdict on securities fraud charges based on the fact that the defendant intentionally caused others to issue false or misleading statements to investors would be proper

regardless of evidence of the defendant's belief that his investment strategy would be successful financially).

The defendant should be precluded from offering evidence or argument that he lacked intent to defraud because he intended to return, repay or otherwise recoup lenders and investors' funds notwithstanding his false representations. The defendant's crimes were complete at the time of the "deception-induced deprivation of property," *Kousisis*, 605 U.S. at 127, *i.e.* the moment the defendant obtained victims' money by double-pledging assets, pledging fictitious assets or making false representations in connection with the preferred equity offering. The defendant's belief, even if honestly held, that the victims of his false statements would recoup their economic loss is irrelevant to whether he believed that his misrepresentations were true when made. *See, e.g.*, *Thomas*, 581 F. App'x at 102 n.3 (citing *Buckley*, 1996 WL 282140, at *2) ("[A]n intent to return money or property is not a defense to the charge of embezzlement."). Any argument on the former would be designed solely to engender sympathy and should be precluded under Rules 401 and 403.

For the same reason, the defendant should be precluded from offering any evidence or argument that 777, together with its lenders and investors, would have profited but for external factors. The defendant has already advanced, and the Court has rejected, the meritless claims that his bid to acquire Everton F.C, his efforts "to reach an appropriate arrangement with its lender Leadenhall," and an "imminent transaction involving 777 Partners' affiliate TAMI, which would have produced profits of tens of millions of dollars" all were derailed by the Government's supposed leak of grand jury material. *See* Dkts. 104 at 10 (Def. Mot.), 48 (Mem. and Order denying Mot.). In court filings, the defendant has also recited Leadenhall's description of A-CAP as a "puppeteer" of 777 Partners, Dkt. 54, suggesting an argument that A-CAP, rather than the

defendant, was to blame for lender and investor losses. These arguments are irrelevant distractions, designed to force the jury's attention onto potential wrongdoing by anyone other than the defendant.

Indeed, such arguments are particularly irrelevant in cases, like this one, that involve loans because even if lenders had been fully repaid, they would have suffered harm because they took on more risk than they believed, and likely would have demanded a higher interest rate had they known of the actual risks. What is more, even if there were some marginal probative value, introducing evidence or argument about would-be transactions that promised huge profits or about A-CAP's control over negotiations with Leadenhall would invite several mini-trials that will lengthen the trial, confuse the jury, and require the jury to engage in complicated *ex post* valuation exercises, none of which is relevant to the defendant's guilt. Both Rules 401 and 403 preclude evidence on those topics.

**E. The Court Should Preclude Argument About Advice or Presence of Attorneys**

The defendant should also be precluded from offering evidence regarding the presence or involvement of lawyers in events related to his scheme to defraud. That evidence has no probative value because the defendant does not intend to present a traditional advice-of-counsel defense. Yet the evidence poses a grave risk of misleading the jury by raising the inference that the defendant acted in good faith because he believed lawyers were supervising his actions. And it is unfairly prejudicial because, without a privilege waiver, the Government cannot combat that inference by presenting evidence of what the defendant told lawyers, or what they advised him.

1. <u>Relevant Facts</u>

On August 7, 2026, the defendant informed the Government that he did "not intend to assert a formal advice-of-counsel defense at trial." Ex. A. The defendant, however, went on to

write that he may "offer evidence, elicit testimony on direct or cross-examination, and present argument concerning the presence, involvement, or role of counsel in matters relevant to the charges," explaining that such evidence was relevant to his "state of mind, good faith, and the absence of fraudulent intent." *Id.* The defendant stated that he was not "waiv[ing] the attorney-client privilege or any other applicable privileges or protections." *Id.*

In response to questions from the Government about the evidence he intended to introduce, the defendant sent a supplemental letter on September 21, 2026. Ex. B. That letter did not identify specific evidence, but instead listed ten topics about which the defendant may present evidence, or make arguments, "concerning the presence, involvement, or role of attorneys." *Id.* That list of topics included the roles and responsibilities of Fred Love, who had dual roles running the day-to-day operations of, and acting as general counsel for, 777's subsidiary SuttonPark Capital, as well as the involvement of unspecified attorneys in the relationship between 777 and its lenders; in setting up credit facilities, managing audits, and handling the pledging of assets; and in handling several transactions that are likely to come up at trial. *Id.* The defendant reiterated that he did not intend to waive "any privilege." *Id.*

2. <u>Discussion</u>

The defendant should be precluded from offering the evidence, or making arguments, described in his September 21 letter. The defendant is attempting to have the benefits of mounting an advice-of-counsel defense, without complying with the safeguards that are in place to make such a defense reliable and pursued in a fair manner.

"In a fraud case . . . the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true," but rather "is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government

has proved the required element of the offense that the defendant had an 'unlawful intent.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). "That said, defendants are entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense." *Id.* (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). Specifically, "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *Id.* (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).

The evidence that the defendant intends to introduce has little probative value, and is highly likely to mislead the jury, because the defendant is attempting to circumvent these time-tested safeguards. Presenting evidence that there were lawyers involved at critical steps of the scheme will create the impression that the defendant was obtaining and relying on advice from those attorneys or, at a minimum, was relying in good faith on the assumption that lawyers would stop him from doing something unlawful. But there is no way to know whether that inference is proper. The defendant is stopping short of a traditional advice-of-counsel defense, so he does not intend to show that he sought the advice of counsel, honestly disclosed all relevant facts, and relied on the lawyer's advice. This creates a substantial risk that the natural inference—that lawyers were around, so the defendant was relying on them in good faith—is false, whether because the lawyers were never asked for their opinions, the defendant gave lawyers false information, or the defendant ignored his lawyers' advice. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) ("[A] jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction."); *S.E.C. v.*

*Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) (excluding "references to counsel's communications" under Rule 403).

This risk is compounded by the fact that the defendant's refusal to raise an advice-of-counsel defense prevents the Government from accessing critical information to meet the defendant's evidence. Invoking an advice-of-counsel defense typically entails "waiv[ing] the attorney-client privilege," allowing discovery into the attorney-client communications. *United States v. Schulte*, No. 17 Cr. 548 (PAC), 2020 WL 133620, at *1 (S.D.N.Y. Jan. 13, 2020). The defendant, however, has repeatedly stated that, because he is only presenting evidence about the *presence* of counsel, not the *advice* of counsel, he does not intend to waive any privileges. That prevents the Government from accessing discovery that could shed light on whether the defendant sought the advice of lawyers, gave the lawyers truthful information, and relied on their advice.

The danger of misleading the jury and unfairly prejudicing the Government is particularly acute in this case. While the Government does not have information about legal advice that attorneys gave the defendant, the Government has identified evidence that some of the defendant's co-conspirators discussed giving misleading information to attorneys in connection with an investigation related to one of 777's audits. The Government has also identified evidence that one of the lawyers identified in the defendant's letter expressed concerns to some of the victim lenders about the activities of the defendant and his co-conspirators. Both of those facts suggest that there is a meaningful possibility that the defendant and his co-conspirators tried to mislead lawyers or ignored their advice and concerns. But by presenting evidence that attorneys were involved, the defendant would be able to create the misimpression that he relied in good faith on those professionals, while concealing a more incriminating truth.

The Second Circuit raised these same concerns in affirming the exclusion of evidence about the presence of counsel in *United States v. Bankman-Fried*, 179 F.4th 104 (2d Cir. 2026). There, the defendant sought to introduce evidence that attorneys were involved in certain matters relevant to his criminal scheme. *Id.* at 119. After holding a hearing, the District Court excluded much of the evidence, and the Second Circuit affirmed. *Id.* The Circuit explained that "lawyers were not informed of all the relevant facts" and did not think their work would be used in the manner the defendant used it, so the evidence was not "relevant to [the defendant's] good faith" but would "creat[e] a substantial risk of jury confusion" by "suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspects of events." *Id.* at 119-20.

The Second Circuit's decision controls the outcome here, even though some courts in this District, in cases pre-dating *Bankman-Fried*, admitted evidence related to the presence of attorneys. *See United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. June 24, 2014), Trial Tr. at 84-85 (allowing the defendant to "argue that attorneys who drafted or reviewed documents related to the charged transactions did not inform him of the illegality . . . and that the defendant took comfort in the attorney silence"). But those cases involved limited evidence or testimony, on discrete topics, with extensive pretrial disclosures and policing from the court. *See id.* (noting that the defendant needed to produce documents to the government, particularly in light of his untimely waiver decision); *United States v. Hild*, No. 19 Cr. 602 (RA) (S.D.N.Y. Apr. 15, 2021), Trial Tr. at 215 (noting risk that presence of counsel arguments in the absence of a waiver risks "misleading the jury" by suggesting that "counsel was there for the entirety of the time looking at the relevant issue, which suggests that they gave their blessing without knowing what information they provided").

Here, by contrast, the defendant intends to offer evidence about the involvement of attorneys in a broad set of events that cover years and relate to a significant number of transactions. He has not provided any details about the specific evidence he intends to offer, or the inference he intends to ask the jury to draw from that evidence. He has not identified the lawyers he plans to say were involved in the various events and transactions he lists, much left the role they served and work they performed. And the defendant has not even described how, specifically, he relied on the involvement of attorneys to gain comfort that he was acting appropriately on matters that are relevant to guilt or innocence. On these facts, this Court should follow the Second Circuit's reasoning in *Bankman-Fried* and exclude the evidence and arguments proposed in the defendant's September 21 letter.[1]

### F. The Court Should Exclude Evidence of the Defendant's Personal Circumstances and Potential Punishment

The defendant should be precluded from offering evidence or argument concerning his family background, health, age, or any other similar factors, or from mentioning such subjects in his opening statement, absent a showing that such a factor bears on his guilt.[2] *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United*

---

[1] In the alternative, the Court should order a hearing under Federal Rule of Evidence 104 to consider the admissibility of the defendant's proffered evidence. At that hearing, the defendant should be required to offer evidence in the form of testimony or documents regarding his supposed defense, and the Court may consider whether there first must be a waiver of privilege before any such evidence can be presented to the jury.

[2] In order to prove Count Six, the witness tampering charge, the Government intends to admit the fact of the defendant's minor child, and the photograph of the minor child the defendant sent to Bennett in May 2026. The Court should preclude the defense from using this evidence to improperly garner sympathy with the jury.

*States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Such arguments are sometimes presented to jurors by telling them the defendant's "life is in their hands," a defendant's "liberty is at stake" or the defendant "does not deserve to go to prison." Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id*

## II. Statements of the Defendant's Coconspirators and Agents Are Not Barred by the Rule Against Hearsay

At trial, the Government will seek to introduce out-of-court statements by Adnani, Alfalla, and Bennett, as well as other employees of 777. Such statements, including categories of statements described below, are not barred by the rule against hearsay.

### A. Applicable Law

1. <u>The Rule Against Hearsay</u>

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid.

801(c). Hearsay is admissible only if it falls within an enumerated exception. Fed. R. Evid. 802. However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay. *Id.*; *see also United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice."); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay.").

2. <u>Rule 801(d)(2)(D)</u>

Federal Rule of Evidence 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). An agency relationship requires "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (superseded by statute on other grounds) (quoting *Restatement (Second) of Agency* § 1, cmt. b (1958)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are

usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.

3. Rule 801(d)(2)(E)

Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course of, and in furtherance of, that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). "Although Rule 801(d)(2)(E) requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is made also be a member." *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013).

To be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a coconspirator statement is admissible if it

"can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).

Statements between coconspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy," further the conspiracy, *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991), as do statements "that apprise a co-conspirator of the progress of the conspiracy," *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987); *see also United States v. Amato*, 15 F.3d 230, 234 (2d Cir. 1994) (statement apprising coconspirator in loansharking conspiracy of status of loan was made in furtherance of the conspiracy). This principle is not limited to statements regarding ongoing events or future conduct. "Statements that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current developments and problems facing the group." *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (internal quotations omitted).

**B. Discussion**

1. Compliance Reports, Financial Reports, and Other Contemporaneous Documentation Are Not Hearsay

The Government intends to offer into evidence certain documents—including compliance and financial reports—that Adnani, Bennett, and Alfalla made and sent to investors and lenders during the conspiracy. These materials are not precluded by the rule against hearsay.

As an initial matter, these reports are not being offered for their truth and therefore are not hearsay. These documents falsely represented that 777's credit facilities were fully collateralized, and that 777 had purchased certain assets and exclusively pledged them to a particular credit facility when, in truth, many of the assets had never been purchased while others had been double-

pledged. Because these reports contain false information, they are not hearsay. *See United States v. Aponte*, 31 F.3d 86, 88 (2d Cir. 1994) ('Quiles' fabricated statement and false descriptions were not offered for the truth of the matter asserted and therefore were not hearsay."); *S.E.C. v. AT&T, Inc.*, 626 F. Supp. 3d 703, 737 (S.D.N.Y. 2022) ("the SEC contends that certain statements attributed to analysts were false. These statements—independent of being by a party opponent—may separately qualify as non-hearsay insofar as, to be hearsay, a statement, must be offered for the truth of the matter asserted").

To the extent these reports are being offered for their truth, they are not precluded by the rule against hearsay because these documents furthered the charged conspiracies and were made within the scope of Adnani, Bennett, and Alfalla's agent relationship with their superior, the defendant.

The evidence at trial will show by a preponderance that the defendant conspired with Alfalla, Adnani, and Bennett, among others at 777. Alfalla has pleaded guilty to conspiracies that involved the defendant, while Adnani and Bennett will testify pursuant to non-prosecution agreements as a result of their participation in the fraud scheme. The Court can make a preliminary ruling that these statements are admissible, subject to the introduction of trial evidence (including the statements themselves) that is sufficient to show the existence of a conspiracy. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) ("[S]tatements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed.). The Court may also consider a sworn plea allocution and witness proffer statements to support a finding that a conspiracy with the defendant existed. *See United States v. Saneaux*, 392 F. Supp. 2d 506, 513-14 & n.10 (S.D.N.Y. 2005) (while proffer statements and plea allocutions are generally not admissible

at trial, the court may consider them in determining that there was a conspiracy and that co-conspirator statements made in furtherance of the conspiracy may be admitted); *Bourjaily*, 483 U.S. at 178 ("Rule [104] on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.").

The Government will also establish these coconspirators made statements during the course of, and in furtherance, of these conspiracies, including in the form of compliance reports and financial reports that they shared with 777's lenders and investors.

With respect to the compliance reports, the Government intends to offer evidence at trial that Adnani and Bennett prepared these reports at Wander's direction, and that the reports falsely represented that the credit facilities were compliant with the terms of the credit agreements because, among other things, there was sufficient collateral pledged to the facilities. In truth, and as Adnani and Bennett will testify, certain of the facilities were severely undercollateralized. These compliance reports were prepared and sent to 777's victims during the course of the conspiracy in order to mislead, extract more money, and, in turn, "promote or facilitate achievement of the goals of th[e] conspiracy." *Rivera*, 22 F.3d at 436; *see James*, 712 F.3d at 106 (holding there is "no requirement that the person to whom the statement is made also be a member" of the conspiracy).

The Government further seeks to admit "revised" compliance reports that Adnani and Bennett sent Leadenhall in late 2023 and early 2024—several months after Leadenhall discovered that the defendant had pledged unowned and double-pledge assets to Leadenhall's credit facilities. These "revised" reports attempted to remove assets from the compliance reports that 777 had double-pledged or never purchased. At trial, the Government anticipates that Adnani and Bennett will testify that they prepared these revised reports to lull Leadenhall into believing that any double-pledging had been accidental (and not the result of deliberate fraud) and that the problems

at 777 had been contained. Because these "revised" reports were designed to "lull" 777's victim, they are also admissible as co-conspirator statements under Rule 801(d)(2)(E). *See United States v. Rubin*, 609 F.2d 51, 64 (2d Cir. 1979) (holding that statements made by co-conspirators where "one objective of which was to lull Bankers Trust into the belief that Tri-State was in good financial condition and would pay its obligation to the bank" were admissible as coconspirator statements); *see also United States v. Jergensen*, 797 F. App'x 4, 6 (2d Cir. 2019) (holding that "'[l]ulling' communications—those that are 'designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no [such communication] had taken place'" are acts in furtherance of a conspiracy because they allow conspirators to "'reap . . . and keep . . . economic gains from their conspiracy.'")

The Government will also offer into evidence certain financial reports that Alfalla prepared and distributed to investors. Like the compliance reports, these numbers were falsely inflated and failed to disclose the collateral deficiencies at the credit facilities. Because these reports were made by a coconspirator during the course of the conspiracy and in furtherance of the goals of the conspiracy, these reports are also admissible as coconspirator statements under Rule 801(d)(2)(E).

For many of the same reasons, these materials are also statements of the defendant's agents under Rule 801(d)(2)(D). As alleged in the Indictment and as the proof at trial will demonstrate, each of Adnani, Bennett, and Alfalla were employees and agents of the defendant, and the defendant not only directed the operations of 777 but in particular directed the business activities of Adnani, Bennett, and Alfalla. Moreover, as is apparent from the nature of the documents

described above, these materials were created within the scope of those agency relationships, and are therefore not hearsay pursuant to Rule 801(d)(2)(D). *See, e.g.*, *Pappas*, 963 F.2d at 537.[3]

2. Employee Statements Discussing Double-Pledged and Unowned Assets Are Not Hearsay

The Government also seeks to admit statements, other than those in the compliance and financial reports, by Adnani, Bennett and Alfalla in furtherance of the charged conspiracies, and made during the course of their employment, that are therefore not hearsay under Rules 801(d)(2)(D) and 801(d)(2)(E).

At trial, the Government expects the evidence to show that Adnani, Bennett, and Alfalla routinely spoke among each other, and often with Wander, about the crimes they were committing at Wander's direction. For instance, in November 2022, in advance of a Leadenhall site visit, Adnani, at Wander's direction, worked into the early morning hours to move collateral in 777's database, known as MPFin, to make it appear that Leadenhall's facility had sufficient collateral. Later, Adnani apprised Bennett of his progress, texting,

> I was able to update 1/3 last night and then upload for update the second set but then there's now another error. I was going back and forth with Noah at midnight but he said he hadn't slept was off an all nighter and had already fixed one so I just waited and messaged him this morning…So I have like 3 more bulks to do and then another subset I [m]ay have to crank out manually idk.

Those statements, among others, are admissible under Rule 801(d)(2)(E) because they are designed to "apprise a co-conspirator of the progress of the conspiracy." *Rahme*, 813 F.2d at 36. For similar reasons, they are also admissible under Rule 801(d)(2)(D).

[3] Certain of these materials may well also be covered by the so-called business records exception to the hearsay rule embodied in Federal Rule of Evidence 803(6).

Likewise, in November 2023, after Leadenhall became alerted to the fact that certain of their assets had been double-pledged but before the fraud was publicly exposed, Adnani and Bennett exchanged several messages trying to reconstruct how they had double-pledged assets. An excerpt from their exchange is below:

> **Bennett**: Are you able to look back to see what we actually borrowed at the time of pledging WMS, JGW, and the Credigy refi?
>
> **Adnani**: This is a nightmare web of lies lol…
>
> **Adnani**: There were multiple pledges to Credigy in 2021 where assets were not removed from splcss where I distinctly recall flow of funds initially having payoffs but then Damien/Josh cut it out….
>
> **Adnani**: And then never were released ~500 deals LCP noted.
>
> **Adnani**: And then there's the flip side where we pledged assets from Credigy line to lcp to consolidate the splcss issue but never released from Credigy.
>
> **Adnani**: Which are the other 1100 receivables.
>
> **Adnani**: Where we removed JG assets in 2022 I believe.
>
> **Adnani**: But before that all of that WMS was pledged and then Na[l]a.
>
> **Adnani**: Then Nala swapped with JG...
>
> **Adnani**: It's charlotte's web of deceit.

These statements, like the earlier ones, are admissible as coconspirator statements under Rule 801(d)(2)(E), because they are designed to "apprise a co-conspirator of the progress of the conspiracy." *Rahme*, 813 F.2d at 36.[4] Adnani may be relaying "past events" of double-pledging to Bennett, but he is doing so to "keep" Bennett "abreast of current developments and problems facing the group"—namely, a lender aware that certain assets were double-pledged. *See Jefferson*,

[4] To the extent the defense attacks Adnani or Bennett's credibility in his opening statement or on cross examination, these statements are admissible as prior consistent statements under Rule 801(d)(1)(B) and therefore not hearsay.

215 F.3d at 824 (holding that statements about "past events" may be admissible under Rule 801(d)(2)(E)). And for similar reasons as above, these statements are also admissible under Rule 801(d)(2)(D).

## III. Certain Evidence Is Admissible as Direct Evidence or Pursuant to Rule 404(b)

At trial, the Government will also seek to introduce (1) evidence of the defendant's prior drug conviction and drug use during the conspiracy, and (2) evidence of the defendant's substantial personal spending. This evidence is relevant and admissible at trial, whether as direct proof of the charges or pursuant to Federal Rule of Evidence 404(b).

### A. Applicable Law

#### 1. Direct Evidence

Direct evidence is "not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*; *accord United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). The Second Circuit has repeatedly held that actions and statements are admissible as direct evidence of the crimes charged, and are "not considered other crimes evidence under" Federal Rule of Evidence 404(b), if (a) they "arose out of the same transaction or series of transactions as the charged offense," (b) they are "inextricably intertwined with the evidence regarding the charged offense," or (c) they are "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007).

Thus, where, as here, an indictment contains a conspiracy charge, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy" is considered "part of the very act

charged." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999); *see United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (explaining that "uncharged acts may be admissible as direct evidence of the conspiracy itself"). Moreover, evidence of uncharged acts is properly admitted to provide background for the existence of a charged conspiracy, or the motive and intent for a charged crime. *Coonan*, 938 F.2d at 1561. In particular, "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.), *cert. denied*, 488 U.S. 821 (1988)).

The Second Circuit has repeatedly affirmed the admissibility of evidence fitting one or more of these descriptions, whether it relates to conduct during the period of the charged crime or before it. *See, e.g.*, *United States v. Hsu*, 669 F.3d 112, 118-19 (2d Cir. 2012) (following conviction after trial on campaign finance related charges, affirming district court's admission, as direct evidence, of testimony that defendant had engaged in a Ponzi scheme contemporaneously with, and arguably related to, the campaign finance violations); *United States v. Kaiser*, 609 F.3d 556, 570-71 (2d Cir. 2010) (in securities fraud case, holding that bad acts predating the conspiracy were admissible as direct evidence, without regard to Rule 404(b), because they had "carry-over effects" during the conspiracy); *United States v. Rigas*, 490 F.3d 208, 238-39 (2d Cir. 2007) (affirming district court's decision to permit Government to adduce evidence of uncharged fraudulent acts predating the charged conspiracy as direct proof of charged accounting fraud conspiracy because the evidence was "'inextricably intertwined with'" the proof of the charged conspiracy and "'necessary to complete the story of the crime on trial'").

2. Rule 404(b)

Evidence of a defendant's prior crimes, wrongs, or acts are admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit follows an "inclusionary approach" under which "prior act evidence is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Such evidence is admissible if (1) advanced for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) admitted subject to a limiting instruction, if such an instruction is requested. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990). Other act evidence is routinely admitted "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Dupree*, 870 F.3d at 76 (citing *Diaz*, 176 F.3d at 79).

3. Rule 403

Whether evidence is admitted as direct evidence or under Rule 404(b), the probative value of such evidence must not be "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The touchstone of the prejudice analysis under Rule 403 is whether the proffered evidence of uncharged acts does "not involve conduct any more sensational or disturbing than the crimes with which [the defendant is] charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*,

618 F.2d 934, 943 (2d Cir. 1980)). To the extent that there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice); *see generally United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

**B. Discussion**

1. <u>Evidence of the Defendant's Prior Conviction and Drug Use Is Admissible</u>

At trial, the Government will seek to introduce (1) evidence of the defendant's drug conviction that predates the charged conspiracies, and (2) evidence of the defendant's drug use during the charged conspiracies. Both are admissible as direct evidence of the charges.

*First*, the Government will seek to admit evidence of the defendant's 2004 narcotics conviction, for which he was sentenced to 15 years' probation.[5] This conviction is relevant and admissible under Rules 401 and 402 because it explains the reason that Wander did not serve as the signatory on bank accounts associated with SuttonPark Capital, instead leaving those responsibilities to his co-founder and partner, Steven Pasko, and likewise did not sign the fraudulent compliance reports.

The evidence at trial will show that, prior to the charged conspiracy, Wells Fargo threatened to halt 777's banking relationship upon learning of Wander's narcotics conviction.

[5] On February 6, 2024, the defendant entered a plea of *nolo contendere* to three counts arising from a narcotics arrest. Pursuant to the defendant's plea, the court withheld the adjudication of guilt on one count of attempted trafficking of cocaine, and placed the defendant under supervision of the Department of Corrections for 15 years. The court separately adjudicated Wander guilty of possession of drug paraphernalia. Ex. C.

Wander and Pasko, in turn, created an affiliate, 600 Partners, to manage SuttonPark Capital, and designated Pasko (and not Wander) as the signatory on the bank accounts. Wander's name did not appear on the 600 Partners' documents—even though Wander was intimately involved with its operation—and Pasko, not Wander, signed the compliance reports. The jury should be permitted to learn the reason that Wander's signature does not appear on these compliance reports. If this evidence were excluded, the jury would be left with the misimpression that Wander was uninvolved in preparing these reports when, in truth, he directed the lies and double-pledging contained within them. Evidence of the defendant's prior conviction "adds context" to the Government's proof at trial, *Gonzalez*, 110 F.3d at 941, and is necessary to "complete the story of the crime on trial." *Carboni*, 204 F.3d at 44.

The probative value of this evidence also substantially outweighs any risk of unfair prejudice to the defendant under Rule 403. As described above, evidence of Wander's conviction is highly probative of Wander's involvement in the charged offenses because it explains the reason his name does not appear on the compliance reports. The risk of unfair prejudice to Wander is minimal at best. More than twenty years have passed since Wander's conviction. There is no reason to think a jury would infer Wander is more likely to commit securities or wire fraud based on a twenty-year-old drug conviction. Moreover, any concerns about unfair prejudice can be addressed in a limiting instruction. *See, e.g.*, *United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2010 WL 4967878, at *2 (S.D.N.Y. Nov. 22, 2010) (holding that "a limiting instruction to the jury is the most appropriate safeguard against potential prejudice").

*Second*, the Government will seek to introduce evidence that Wander used recreational drugs, including cocaine and Adderall, with Adnani and Bennett, during the charged conspiracies. The evidence at trial will show that Adnani was prescribed Adderall to treat his ADHD, and that

he routinely shared his Adderall pills with Wander and Bennett. The evidence will also show that Bennett used cocaine with Wander, often at Wander's urging, and that on at least one occasion, Bennett purchased cocaine for Wander, again at Wander's direction.[6]

This evidence is admissible to provide the jury with the relevant background on the charged conspiracies and the relationship of trust between the defendant and his coconspirators. *See, e.g.*, *Diaz*, 176 F.3d at 52; *United States v. Pipola,* 83 F.3d 556, 566 (2d Cir. 1996) ("The evidence of prior illicit activities involving Pipola and his co-conspirators explained to the jury how the relationship between Pipola and his underlings evolved."); *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("[T]he evidence of Rosa's prior dealings with Melendez was properly admitted to explain how the illegal relationship between the two had developed and to explain why Melendez had appointed Rosa to a leading position in the Organization.").

The probative value of this evidence is not substantially outweighed by any risk of unfair prejudice. The Government is not seeking to offer evidence of the defendant's drug use to prove that he is a drug user. Instead, the evidence is admissible to prove the relationship of trust among the coconspirators, and to explain the reasons that Adnani and Bennett agreed to engage in other criminal activity at Wander's direction. As before, any concerns about prejudice can be addressed with a limiting instruction. *See, e.g.*, *Daugerdas*, 2010 WL 4967878, at *2.

2. Evidence of Wander's Elaborate Spending Is Admissible

At trial, the Government intends to offer evidence of the defendant's elaborate personal spending, both during the charged conspiracies and in the years before the scheme began. Among

[6] The Court should allow the Government to introduce evidence of Wander's drug use. If the Courts excludes this evidence, however, the defense should be precluded from cross-examining Adnani or Bennett on their personal drug use.

other things, Wander purchased a multi-million dollar private jet, a multi-million dollar luxury Miami apartment, drove expensive cars, traveled extensively, and spent millions of dollars trading in his brokerage accounts. Meanwhile, 777 suffered cash shortfalls and often had difficulties making payroll. The evidence of Wander's spending is admissible for several reasons:

*First*, Wander's spending during the charged conspiracies is direct evidence of the fraud scheme. At trial, the evidence will show that Wander used monies, including funds improperly drawn from 777's credit facilities, to fund his extravagant lifestyle. This evidence is therefore direct proof of the charged fraud scheme and plainly admissible at trial.

*Second*, Wander's spending is also admissible under Rule 404(b) as proof of motive and intent. To the extent the defendant engaged in spending that was not paid directly out of victims funds, but was made possible through the defendant's operation of the scheme, that too is admissible as proof of motive. *See United States v. Adelglass*, No. 23-6248, 2024 WL 5087519, at *2 (2d Cir. Dec. 12, 2024) (Rule 404(b) permitted Government to introduce evidence of the defendant's "lavish spending," which was "probative of his motive."); *Milton*, No. 21 Cr. 478 (ER) (Sept. 8, 2022), Tr. at 47 (admitting evidence of "money coming in" and how the defendant "spen[t] the money" as "garden-variety proof in fraud cases" that is "very relevant to the motive of pecuniary gain").

*Third*, Wander's elaborate spending prior to the charged conspiracies is also admissible under Rule 404(b) as proof of Wander's intent and motive to commit the charged crimes. At trial, a witness is expected to testify that, even before Wander's tenure at 777, while he was employed at its predecessor, Pennant Park, Wander routinely attempted to charge non-business expenses to the company, and further boasted about vacationing with celebrity athletes, traveling to Las Vegas, and hiring bodyguard to give the appearance that he was important. This evidence provides proof

of Wander's motive to commit the charged offenses, whereby he later incurred hundreds of millions of dollars in debt in part to maintain the appearance of having an extravagant lifestyle.

## IV. The Court Should Preclude Cross Examination on Topics That Do Not Bear on Credibility or Are Highly Prejudicial

The Court should preclude Wander from cross-examining [redacted] on conduct that is irrelevant to the witness's truthfulness or otherwise designed to embarrass, harass and intimidate the witness.

### A. Applicable Law

Rule 608(b) of the Federal Rules of Evidence limits cross-examination regarding "specific instances of a witness's conduct" to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Conversely, Rule 608(b) "'does not authorize inquiry on cross-examination into instances of conduct that do *not* actually indicate a lack of truthfulness.'" *United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (emphasis added) (quoting *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). Moreover, "Fed. R. Evid. 608(b) prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility' unless that conduct was the subject of a criminal conviction." *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting Fed. R. Evid. 608(b)). And "under [Federal Rule of Evidence] 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (internal quotation marks and citations omitted).

Subject to a ten-year time limitation, Rule 609(a)(1) provides that evidence of a witness's prior felony conviction "must be admitted, subject to Rule 403." *See United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) ("Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."). And evidence of any conviction, regardless of whether it is a felony, is admissible if it involved a crime of dishonesty or false statement. *See* Fed. R. Evid. 609(a)(2) (evidence of a prior conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement"). If more than ten years have elapsed since a witness' conviction or release from prison, however, Rule 609 permits evidence of the conviction to be admitted "only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Second Circuit "ha[s] repeatedly 'recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Farganis v. Montgomery*, 397 F. App'x 666, 669 (2d Cir. 2010) (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)).

Finally, Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." It is well settled that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (internal quotation marks omitted).

### B. The Court Should Preclude Cross-Examination About [redacted] Years' Old Instances of Misconduct

As disclosed to defense counsel, [redacted] incurred arrests during high school, college, and shortly thereafter for forgery, larceny, operating a vehicle while impaired, public intoxication, possession of a fake ID while underage, speeding, and drug possession. None of these incidents should be inquired of at trial.

As an initial matter, only two of the arrests resulted in convictions: [redacted] arrest for operating a vehicle while impaired resulted in a 2011 misdemeanor conviction for which [redacted] received unsupervised probation and a suspended license, and [redacted] arrest for drug possession resulted in a 2013 felony conviction. These convictions occurred more than a decade ago, and only one involved a felony. Neither offense required proving—or [redacted] admitting—a dishonest act or false statement.[7] Accordingly, under Rule 609 and Second Circuit law, evidence of [redacted] convictions are admissible only "in exceptional circumstances." *Farganis v. Montgomery*, 397 F. App'x 666, 669 (2d Cir. 2010) (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)). Those circumstances are absent when, as here, the convictions concern years' old conduct that is unrelated to the crimes charged. Moreover, the defense will otherwise have the

---

[7] When arrested for driving while impaired, [redacted] falsely denied that the marijuana found in his car belonged to him. Under Rule 609, [redacted] conviction remains inadmissible, regardless of whether [redacted] "acted deceitfully in the course of committing the crime." Fed. R. Evid. 609 Advisory Committee's Note to Rule 609. ("The amendment provides that Rule 609(a)(2) mandates the admission of evidence of a conviction only when the conviction required the proof of (or in the case of a guilty plea, the admission of) an act of dishonesty or false statement. Evidence of all other convictions is inadmissible under this subsection, irrespective of whether the witness exhibited dishonesty or made a false statement in the process of the commission of the crime of conviction."). Nor should counsel be permitted to question [redacted] about the false denial under Rule 608. The impeachment value of such inquiry is negligible, given the passage of time and [redacted] age when the incident took place. On the other hand, the risk of prejudice is significant, as the false denial is inextricably intertwined with facts of [redacted] law enforcement encounter after driving under the influence of drugs.

opportunity to cross-examine [redacted] [redacted].

As for the remaining arrests, they appear to have little to no bearing on [redacted] credibility, and any inquiry into them would only be designed to harass or embarrass the witness. For example, [redacted] 2009 arrest for forgery and larceny stemmed from an episode—when [redacted] was 16-years-old—in which [redacted] and a friend created counterfeit twenty-dollar bills and were caught after the friend tried to pass off a bill in their school cafeteria. When confronted by law enforcement, [redacted] fully admitted his conduct, including that he had spent $40 of counterfeit money. [redacted] served community service for his conduct, after which the arrest was expunged from his record and sealed. Later, in 2013, while in college, [redacted] was arrested for public intoxication and admitted to possessing an associate's ID. It is tenuous at best to claim that either [redacted] possession of a fake ID as a college student or his creation of counterfeit bills as a high-schooler affects his credibility, and there is otherwise no relevance of those episodes to the charged conduct. On the other hand, the risk of undue prejudice is significant. Cross-examination about a teenage indiscretion or an intoxicated college episode would be designed to embarrass [redacted] and distract the jury from the issues on trial. These lines of cross-examination should be precluded.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant its motions *in limine*.

Dated: New York, New York
September 25, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: ______________________________
Thomas S. Burnett
Marguerite B. Colson
Alexandra N. Rothman
Assistant United States Attorneys
Tel.: (212) 637-1064/-2587/-2580