UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*v.*

JOSHUA WANDER,

*Defendant*.

**No. S1 25 Cr. 473 (JPO)**

**DEFENDANT JOSHUA WANDER'S MOTIONS *IN LIMINE***

## TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. The Court Should Preclude the Government from Asking Leading Questions and Eliciting from Its Cooperating Witnesses Testimony Without Foundation and With Legal Conclusions. ..... 2

II. The Court Should Permit Mr. Wander To Introduce Evidence of the Relevant Conduct of Lenders. ..... 4

III. The Court Should Permit Mr. Wander To Introduce Evidence Probative of the A-CAP-Related Allegations and A-CAP's Credibility. ..... 8

IV. The Court Should Preclude Exhibits 10A and 10B of the Government's Expert Report, Which Have Minimal Probative Value and Present a Substantial Risk of Unfair Prejudice. ..... 10

V. The Court Should Preclude Two Categories of Uncharged "Other Acts" Evidence Described in the Government's September 11, 2026, Notice. ..... 11

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....6

Brief for the United States, *Kousisis v. United States*,
605 U.S. 114 (2025) (No. 23-909), 2024 WL 4405280 (U.S.)....6, 8

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010)....3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....11

*Huddleston v. United States*,
485 U.S. 681 (1988)....12

*King v. Wang*,
14 Civ. 7694 (LJL), 2021 WL 5232454 (S.D.N.Y. Nov. 9, 2021)....13

*Neder v. United States*,
527 U.S. 1 (1999)....6

*Old Chief v. United States*,
519 U.S. 172 (1997)....13

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)....11

*In re Sentinel Sec. Life Ins. Co.*,
No. 250902339 (Utah 3d Dist. Ct. filed Mar. 21, 2025) (petition dismissed May 23, 2025)....8

*United States v. Akhavan*,
20 Cr. 188 (JSR), 2021 WL 2776648 (S.D.N.Y. July 2, 2021)....7

*United States v. Aminy*,
15 F.3d 258 (2d Cir. 1994)....12

*United States v. Autuori*,
212 F.3d 105 (2d Cir. 2000)....5

*United States v. Curley*,
639 F.3d 50 (2d Cir. 2011)....12

*United States v. Delvecchio*,
816 F.2d 859 (2d Cir. 1987)....12

*United States v. Garcia*,
413 F.3d 201 (2d Cir. 2005)....................3

*United States v. Guo*,
23 Cr. 118 (AT), 2024 WL 1939221 (S.D.N.Y. May 2, 2024) ....................6, 7

*United States v. Hatfield*,
685 F. Supp. 2d 320 (E.D.N.Y. 2010) ....................11, 13

*United States v. Johnson*,
529 F.3d 493 (2d Cir. 2008)....................3

*United States v. Kallen-Zury*,
629 F. App'x 894 (11th Cir. 2015) ....................3

*United States v. Litvak*,
808 F.3d 160 (2d Cir. 2015)....................5

*United States v. Litvak*,
889 F.3d 56 (2d Cir. 2018)....................7

*United States v. McCallum*,
584 F.3d 471 (2d Cir. 2009)....................12

*United States v. Stahl*,
616 F.2d 30 (2d Cir. 1980)....................13

*United States v. Thomas*,
377 F.3d 232 (2d Cir. 2004)....................7

*United States v. Weaver*,
860 F.3d 90 (2d Cir. 2017)....................7

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016)....................7

*Wise v. Atlantic Coast Life Ins. Co.*,
No. 2026-CP-40-06602 (S.C. Ct. Com. Pl. filed Sept. 15, 2026)....................9

**Statutes**

18 U.S.C. § 1343....................8

**Other Authorities**

Leading Question, Black's Law Dictionary (12th ed. 2024)....................3

Tr. of Conf., *United States v. Hwang*, 22 Cr. 240 (AKH) (S.D.N.Y. Apr. 22, 2024), ECF No. 181 ....................7

Trial Tr., *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 5, 2023), ECF No. 356 ....................2

Trial Tr., *United States v. Hwang*, 22 Cr. 240 (AKH) (S.D.N.Y. May 20, 2024), ECF No. 265 ....... 2

**Rules**

Fed. R. Evid. 608(b) ....... 10

Fed. R. Evid. 611(c) ....... 3

Fed. R. Evid. 702 ....... 11

## PRELIMINARY STATEMENT

Defendant Joshua Wander respectfully submits this memorandum in support of his motions *in limine* in advance of trial.

*First*, the Court should preclude the government from asking leading questions of its cooperating witnesses and eliciting testimony that lacks a foundation and provides legal conclusions.

*Second*, the Court should allow Mr. Wander to introduce evidence of the course of dealing between lenders to 777 Partners and Mr. Wander and his businesses. Because the government must prove that Mr. Wander acted knowingly and willfully, and that the charged representations were material to sophisticated counterparties, that record is directly probative of elements in dispute.

*Third*, the Court should permit Mr. Wander to introduce probative evidence that Lender-4 lent money to 777 affiliates, including in March 2022, for reasons unrelated to any representation made by Mr. Wander, and of Lender-4's submissions to the Utah and South Carolina insurance regulators.

*Fourth*, the Court should preclude Exhibits 10A and 10B of the government's expert report, because those exhibits are irrelevant and overly prejudicial under Rule 403.

*Fifth*, the Court should preclude irrelevant evidence, identified in the government's 404(b) notice, regarding Mr. Wander's spending habits. This uncharged conduct is only offered to malign Mr. Wander's character, and its prejudicial effect substantially outweighs any probative value.

## ARGUMENT

### I. The Court Should Preclude the Government from Asking Leading Questions and Eliciting from Its Cooperating Witnesses Testimony Without Foundation and With Legal Conclusions.

The U.S. Attorney's Office has made a practice of asking cooperating witnesses a series of leading questions which elicit testimony that these witnesses committed crimes, and that they did so with others, leading to an in-court identification of the defendant as one of the co-conspirators, before any predicate is laid. In particular, the government routinely asks, at the outset of the witness's testimony, whether the witness "commit[ted] crimes" in connection with their employment; what those crimes were; whether the witness committed the crimes with others; and then concluding the series with the question, is there "anyone in the courtroom with whom you committed crimes"—all designed to prompt a dramatic in-court accusation of the defendant. *See, e.g.*, Trial Tr. 802:13–803:24, *United States v. Hwang*, 22 Cr. 240 (AKH) (S.D.N.Y. May 20, 2024), ECF No. 265 ("Q. Did you commit crimes in connection with your work at Archegos? A. Yes, I did. Q. What crimes did you commit? A. Racketeering conspiracy, securities fraud, and wire fraud. Q. What did you do to commit these crimes? A. I lied to banks to induce them to make loans to Archegos so it could pursue its trading. Q. Mr. Becker, did you commit these crimes alone? A. I did not. Q: Do you see any of the individuals with whom you committed these crimes in the courtroom today? A: Yes, I do. Q: Who do you see? A: I see Mr. Hwang and Mr. Halligan." (referring to the defendants in that case)); Trial Tr. 303:17–304:7, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 5, 2023), ECF No. 356 ("Q. Did you commit financial crimes while working at FTX? A. Yes. Q. What types of crimes did you commit? A. Wire fraud, securities fraud, and commodities fraud. Q. Did you commit these crimes by yourself or with other people? A. With other people. Q. Who were the main people you committed these crimes with? A. Sam Bankman-Fried, Nishad Singh, and

Caroline Ellison. Q. Mr. Wang, do you see any of the people you committed those crimes with in the courtroom today? You can stand up if you need to. MR. COHEN: Stipulated, your Honor. A. Yes. Q. Who do you see? A. Sam Bankman-Fried."). While such fireworks may be appropriate for an episode of *Law & Order*, that formulation is unacceptable in federal court.

Rule 611 presumptively prohibits the use of leading questions on direct examination. Fed. R. Evid. 611(c) ("Leading questions should not be used on direct examination except as necessary to develop the witness's testimony."). Leading questions are those where the question suggests the answer. Leading Question, Black's Law Dictionary (12th ed. 2024). It is also well settled that witnesses may not "present testimony in the form of legal conclusions." *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (citation omitted). In criminal cases, that means a witness may not provide "lay opinion testimony" about a defendant's "role in the charged conspiracy." *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005). The Second Circuit has thus repeatedly criticized the government when it elicits testimony from a witness that the witness believes the defendant is guilty. *United States v. Johnson*, 529 F.3d 493, 499 (2d Cir. 2008) (holding that it is "improper" for a witness to "assert[] his own belief that the defendant was guilty").

The government's longstanding form of questioning is both leading and elicits improper legal conclusions. The question "did you commit crimes," when asked of a cooperating witness, suggests just one answer. And whether a cooperating witness sees an individual with whom he or she committed a crime requires the witness to provide improper legal-conclusion testimony, which "undertakes to tell the jury what result to reach, and thus attempts to substitute the witness's judgment for the jury's." *Cameron*, 598 F.3d at 62 (citation modified); *United States v. Kallen-Zury*, 629 F. App'x 894, 908 (11th Cir. 2015) (the government "should not solicit

testimony that expresses the legal conclusion that a defendant was guilty," including when prosecutors ask a cooperating witness "who he 'committed these crimes with.'"). Whether any cooperator in fact committed a crime, and whether Mr. Wander committed crimes with a cooperating witness, are the very issues the jury must decide after hearing all the evidence. A witness may testify to facts within his personal knowledge. He is not permitted to characterize Mr. Wander as someone with whom he "committed crimes," thereby conveying his conclusion about Mr. Wander's criminal culpability instead of describing the underlying conduct.

Consistent with this law and pursuant to its authority under Rule 611 to control the examination of witnesses, the Court should restrict the government's attempts to elicit a dramatic accusatory courtroom identification at the outset of their testimony. Identification is not in dispute—the cooperating witnesses worked alongside Mr. Wander for years—and Mr. Wander is prepared to stipulate to identification, which eliminates any legitimate need for the question. The Court should rule that the government may only ask a witness for whom a proper foundation has been laid whether he recognizes Mr. Wander, how he knows Mr. Wander, or what events involving Mr. Wander he claims to have observed, instead of asking leading questions about whether the witness committed crimes, and then eliciting testimony that offers the legal conclusion to the jury that he committed a crime with the man he recognizes as Mr. Wander. These modest limitations cost the government nothing but inappropriate theater.

## II. The Court Should Permit Mr. Wander To Introduce Evidence of the Relevant Conduct of Lenders.

During the course of 777's relationships with its lenders, the lenders were aware that 777 periodically experienced shortfalls in the value of collateral pledged in support of their loans and often permitted 777 to use funds in ways that were technically inconsistent with their agreements with 777. Indeed, on some occasions the lenders requested that Mr. Wander not document their

consent in writing. For example, on January 17, 2019, Mr. Wander texted a senior employee at Lender-1 asking whether the employee would consent to 777's use of funds, including a "few other things," that were outside the parameters of the lending agreement. Estes Decl., Ex. 1. On April 10, 2019, another senior employee at Lender-1 likewise consented when Mr. Wander asked to use loan proceeds to make payroll. Estes Decl., Ex. 2. On May 10, 2019, the same employee agreed to Mr. Wander's request to "use and replace" funds when told that 777 "need[ed] cash today," though he asked that Mr. Wander not tell another employee at Lender-1. Estes Decl., Ex. 3. That employee consented again in June 2019 when Mr. Wander asked to use money 777 had borrowed from Lender-1 "to fund deals in the interim," but warned Mr. Wander not to "put the ask in the email / Or on any email." Estes Decl., Ex. 4. This course of dealing continued into and throughout the charged period.

These messages, and the plethora of similar evidence concerning the course of dealing with each lender, are probative of whether Mr. Wander possessed the requisite intent to commit fraud. The evidence is also relevant to whether any 777 representations to the lenders about the borrowing base or use of funds were immaterial.

*First*, in order to prove its wire fraud charges, the government must prove that Mr. Wander acted "knowingly and willfully," and in bad faith. *See United States v. Autuori*, 212 F.3d 105, 116 (2d Cir. 2000) (defendant must have a "conscious knowing intent to defraud" and "contemplated or intended some harm to the property rights of the victim.") (citation omitted). Evidence of a course of dealing that negates those elements is clearly probative of his scienter. *E.g.*, *United States v. Litvak* [*Litvak I*], 808 F.3d 160, 189–90 (2d Cir. 2015) (concluding that evidence showing that the alleged misconduct was approved by the defendant's supervisors was admissible, as it supported the defendant's claim that "he held an honest belief

that his conduct was not improper or unlawful"). Evidence of a course of dealing in which lenders routinely excused borrowing base deficiencies because 777 Partners had a history of curing them is similarly relevant. *See, e.g.*, Superseding Indictment ¶ 11. Such evidence is admissible because it corroborates Mr. Wander's good-faith belief this conduct was permitted.

Evidence of the lenders' conduct also bears on the credibility of certain anticipated trial testimony. For example, should a lender claim that it would have stopped lending to 777 Partners had it known about a borrowing base deficiency, the double-pledging of collateral, the alleged misuse of loan proceeds, or the alleged falsity of bank account statements, Mr. Wander is entitled to test the credibility of this assertion by questioning whether the lender had in fact known that any of the foregoing breaches existed. *See United States v. Guo*, 23 Cr. 118 (AT), 2024 WL 1939221, at *8 (S.D.N.Y. May 2, 2024) (permitting the defendant to ask about "what alleged victims knew or understood" about the defendant as relevant to the total mix of information available to the victims).

*Second*, lenders' conduct in response to information provided by Mr. Wander is probative of the materiality of his alleged misrepresentations. Materiality is a "demanding" requirement that "substantially narrows the universe of actionable misrepresentations." *Kousisis v. United States*, 605 U.S. 114, 135 (2025); Brief for the United States at 43–45, *Kousisis v. United States*, 605 U.S. 114 (2025) (No. 23-909), 2024 WL 4405280, at *17 (U.S.) (urging that a misrepresentation is material only if it goes to the "very essence of the bargain"); *accord Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that materiality is an element that the government must satisfy in any federal wire-fraud prosecution); *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) ("[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

investor as having significantly altered the 'total mix' of information made available." (internal quotation marks and citation omitted)). The Second Circuit has recognized that, although a victim's "actual reliance" on a representation is not required, evidence of a victim's response to the representation may be admissible as proof of materiality. *See United States v. Litvak* [*Litvak II*], 889 F.3d 56, 65 (2d Cir. 2018) (recognizing that the testimony of victims about materiality is permissible "so long as the testimony about the significance of the content of a defendant's misstatements and each trader's 'own point of view' is shown to be within the parameters of the thinking of reasonable investors in the particular market at issue"); *see also United States v. Akhavan*, 20 Cr. 188 (JSR), 2021 WL 2776648, at *3–4 (S.D.N.Y. July 2, 2021) (explaining that the court allowed the defendants to argue and introduce evidence that "even after the indictment in this case, U.S. issuing banks and credit unions continued to authorize tens of millions of dollars of marijuana transactions" to show that their misrepresentations were not material).[1]

For example, the fact that a victim knew that a representation was allegedly false but did not regard it as important is circumstantial proof that the representation was not material. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016) ("[I]f the Government regularly pays a particular type of claim in full despite actual knowledge that

[1] This evidence is not barred by the settled rule that a victim's negligence or gullibility is no defense to fraud. *See United States v. Weaver*, 860 F.3d 90, 94–96 (2d Cir. 2017); *United States v. Thomas*, 377 F.3d 232, 243–44 (2d Cir. 2004). Those cases answer a different question: whether a defendant may excuse a completed fraud by blaming the victim for failing to catch it. Mr. Wander does not seek to admit such evidence, but rather offers the lenders' conduct as evidence of what he himself knew, believed, and intended—the *mens rea* the government must prove—and of what actually mattered to the parties' bargains, which bears on materiality. Courts in this Circuit routinely admit counterparty-conduct evidence for exactly these purposes. *See Litvak I*, 808 F.3d at 189–90; *Guo*, 2024 WL 1939221, at *8; Tr. of Conf. at 77:1-17, *United States v. Hwang*, 22 Cr. 240 (AKH) (S.D.N.Y. Apr. 22, 2024), ECF No. 181.

certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."); *see also Kousisis*, 605 U.S. at 143 (Thomas, J., concurring) (reasoning that if "fraud is so prevalent that the Government would have to assume a significant number of its contractors violate contract provisions requiring [] compliance, that fact could cast further doubt on those provisions' materiality" under the wire fraud statute, 18 U.S.C. § 1343).

For these reasons, the Court should permit Mr. Wander to offer evidence about lenders' course of dealing.

## III. The Court Should Permit Mr. Wander To Introduce Evidence Probative of the A-CAP-Related Allegations and A-CAP's Credibility.

As Mr. Wander has previously raised with the Court, the government has produced evidence that "Lender-4" (A-CAP) lent money to 777 affiliates for reasons unrelated to any representation made by Mr. Wander. [redacted] That evidence is probative of whether Mr. Wander's representations to A-CAP were material, which as described above is admissible.

Additionally, A-CAP has faced multiple regulatory actions in connection with its loans to Mr. Wander and his companies. In 2025, the Utah Insurance Commissioner petitioned for rehabilitation of A-CAP affiliated insurers in connection with, among other things, their exposure to loans to Mr. Wander's business. *See In re Sentinel Sec. Life Ins. Co.*, No. 250902339 (Utah 3d Dist. Ct. filed Mar. 21, 2025) (petition dismissed May 23, 2025). On September 15, 2026, the South Carolina Department of Insurance filed a petition for

rehabilitation, in which it similarly sought to sanction A-CAP in connection with its loans to Mr. Wander's businesses. Petition for Order Commencing Rehabilitation Proceedings ¶ 170, *Wise v. Atlantic Coast Life Ins. Co.*, No. 2026-CP-40-06602 (S.C. Ct. Com. Pl. filed Sept. 15, 2026) (describing the "substantial investment links to 777-affiliated companies and assets"). The regulatory actions are not limited to claims of technical violations of applicable insurance regulations: the South Carolina Department of Insurance also asserted that A-CAP submitted false and misleading statements about its exposure to 777 and its affiliates. *See* Petition for Order Commencing Rehabilitation Proceedings ¶ 201 (777 Partners' first-day declaration filed in the United States Bankruptcy Court for the Northern District of Texas disclosing loans owed to A-CAP "directly contradicts A-CAP's February 20, 2026, statement to the Department that the JARM Capital and [777-600] Bridge Loan have been extinguished, and all legacy 777 risk removed.'" (internal quotation marks omitted)); [redacted]

These misrepresentations bear directly on the intent element of Count Five. The Superseding Indictment charges Mr. Wander with defrauding A-CAP by submitting allegedly false bank statements overstating the amount of cash in his account. Superseding Indictment ¶¶ 27–30. At trial, Mr. Wander should be free to introduce probative evidence that the allegedly false bank statements were not the basis of A-CAP's decision to lend and did not matter to A-CAP, because A-CAP knew that the loan proceeds would be used for purposes other than those reflected in the loan agreements, which A-CAP later misrepresented to regulators in

violation of state insurance laws. Such evidence is inconsistent with any scheme by Mr. Wander to defraud A-CAP, and is probative of the conclusion that Mr. Wander had a good-faith reason to believe that A-CAP was indifferent to his representations. A-CAP's misrepresentations to regulators corroborate that account and are therefore probative of Mr. Wander's lack of intent to defraud A-CAP. In addition, should the government call an A-CAP witness to testify who personally participated in submitting the allegedly false statements to Utah and South Carolina regulators, Mr. Wander should be permitted to inquire into that witness's conduct as probative of a character for untruthfulness. Fed. R. Evid. 608(b).

## IV. The Court Should Preclude Exhibits 10A and 10B of the Government's Expert Report, Which Have Minimal Probative Value and Present a Substantial Risk of Unfair Prejudice.

The Court should preclude Exhibits 10A and 10B of the government's expert report, which consist of two bar charts purporting to show aviation-related payments and sports team-related payments made by 777 Partners from May 2021 to March 2023. Estes Decl., Ex. 6. These charts are presented as "summar[ies]" of analysis by government expert Christian Lundblad in support of his anticipated testimony that "777 Partners made payments relating to the aviation industry and sports teams." *Id.* ¶ 62.

These charts are inadmissible *in toto*. They have no probative value for any element of the charged offenses, and are unduly prejudicial. While the charts show 777's spending on businesses the government may seek to cast as lavish or ill-advised, Professor Lundblad does not trace any of the aviation- or sports team-related payments to monies from the credit facilities from the alleged victims. In other words, he cannot testify that the funds were improperly diverted from purposes approved by the victim lenders, since there is no indication the funds came from those lenders. All the charts do is invite the jury to infer Mr. Wander's guilt from the fact that 777 Partners spent money on aircraft and sports franchises. But it is not criminal to buy

aircraft or sports teams. And the mere fact that 777 Partners did so, absent evidence that the source of these funds was lender funds, is not relevant and is highly prejudicial. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) (excluding evidence of a defendant's "lavish" spending when "it is entirely speculative whether" the funding for that spending "came from the alleged scheme or from [defendant's] sizable pre-existing fortune.").

Exhibits 10A and 10B are also inadmissible through Professor Lundblad for the independent reason that they are not expert analysis at all. Summing bank-record payments by category and displaying the totals in bar charts involves no specialized methodology, and expert testimony is admissible only if it rests on reliable methods helpfully applied to a disputed issue—it may not simply repackage a factual summary with an expert's imprimatur. *See* Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (expert evidence must "fit" a disputed issue); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 553 (S.D.N.Y. 2004) (barring an expert from testifying about "lay matter," because "experts are not the appropriate vehicles for" introduction of such evidence). If these compilations were admissible, the summaries are Rule 1006 evidence to be presented, if at all, through a fact witness, not an expert whose title lends unearned weight.

## V. The Court Should Preclude Two Categories of Uncharged "Other Acts" Evidence Described in the Government's September 11, 2026, Notice.

By letter dated September 11, 2026, the government provided notice of the categories of uncharged conduct it intends to offer "as direct evidence or, in the alternative," under Rule 404(b), which include (i) alleged "lavish spending" and expense-report disputes at Pennant Park, where Mr. Wander worked until in or around 2015, and (ii) alleged personal spending and expense-report disputes at 777 Partners during the charged period. Estes Decl., Ex. 7. None of

this evidence is direct evidence of the charged offenses or admissible under Rule 404(b), and in any event should be excluded as unduly prejudicial under Rule 403.

Other-act evidence is admissible only if offered for a proper non-propensity purpose, relevant to an issue genuinely in dispute, and more probative than prejudicial under Rule 403. *See Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). Rule 404(b) is not a "carte blanche" to admit prejudicial extrinsic act evidence whose logic runs through the defendant's character. *United States v. McCallum*, 584 F.3d 471, 475–77 (2d Cir. 2009) (citation omitted). Evidence should be excluded if it is "not sufficiently similar" to the charged conduct or if "the chain of inferences necessary to connect the evidence with the ultimate fact to be proved is unduly long." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (alterations accepted and citation omitted).

Evidence that Mr. Wander engaged in "lavish spending" and tried to charge non-business expenses, during his employment at a company more than six years before the charged conduct began, is prohibited propensity evidence. The government characterizes this material as evidence of the "defendant's intent and motive to commit the charged crimes" "to maintain the appearance of [an] extravagant lifestyle." Estes Decl., Ex. 7. As the Second Circuit has held, however, such evidence should not be admitted where, as here, it is not sufficiently similar to the conduct at issue. *Curley*, 639 F.3d at 57; *accord United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("If the other-act evidence does not provide a reasonable basis for inferring knowledge or intent, its offer for that purpose should be rejected on grounds of relevance."); *United States v. Delvecchio*, 816 F.2d 859, 864 (2d Cir. 1987) (concluding that evidence of the defendant's spending habits should have been excluded because they "took place several months before [the defendant's] participation in the conspiracy was alleged to have begun"). According

to the government's own indictment, this is not a case about efforts to maintain appearances about wealth; it is a case about false statements and fraud. There is no indication that any of the proffered evidence about Mr. Wander's prior employment, years before the charged conduct even began, involved either. *See Hatfield*, 685 F. Supp. 2d at 325 ("Whether Mr. Brooks engaged in insider trading-type conduct in 1989 says nothing about Mr. Brooks' knowledge or absence of mistake in 2004."). And even if there were any valid basis to admit this evidence under Rule 404, it is unduly prejudicial as a mere appeal to class resentment of wealth, long condemned in this Circuit. *See United States v. Stahl*, 616 F.2d 30, 32–33 (2d Cir. 1980).

The government similarly asserts that alleged evidence of the defendant's "lavish spending" at 777 Partners and his efforts to charge nonbusiness expenses to the company is direct or 404(b) evidence. But the charged offenses are misrepresentations to lenders and investors. And the government has provided no evidence that any expense report was false. How Mr. Wander spent money at the company he founded is not indicative of fraud. *See Hatfield*, 685 F. Supp. 2d at 326 (In determining whether the methods the defendant used to acquire money were legal, "it is irrelevant if [the defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans."); *see also King v. Wang*, 14 Civ. 7694 (LJL), 2021 WL 5232454, at *16 (S.D.N.Y. Nov. 9, 2021) ("For wealth evidence to be relevant . . . it must be 'unexplained.'"). There is no basis to conclude that his spending or reimbursement practices are "direct evidence" of anything. As for the government's asserted purposes, the "conspiratorial relationship" between Mr. Wander and the CFO can be proven (if at all) through the charged conduct itself, and the availability of that less prejudicial route drains the expense evidence of probative value. *Cf. Old Chief v. United States*, 519 U.S. 172, 182–85 (1997). The government's 404(b) argument fares no better: it is the same lifestyle-propensity

evidence addressed above, garnished with even more prejudicial assertions about "entertainment at social clubs in Miami."

## CONCLUSION

For the foregoing reasons, Mr. Wander respectfully requests that the Court grant his motions *in limine* to (1) preclude the government from asking cooperating witnesses leading questions and eliciting legal conclusions; (2) permit Mr. Wander to introduce evidence of the relevant conduct of lenders and investors; (3) permit Mr. Wander to introduce evidence that there was no scheme to defraud A-CAP; (4) preclude Exhibits 10A and 10B of the government's expert report; and (5) preclude two categories of uncharged other-acts evidence described in the government's September 11, 2026, notice.

Dated: September 25, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
DJames@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*