UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*v*.

JOSHUA WANDER,

*Defendant*.

**No. S1 25 Cr. 473 (JPO)**

**DEFENDANT JOSHUA WANDER'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....1

ARGUMENT ....1

I. Mr. Wander Is Entitled to Argue that the Conduct in This Case Was at Most a Civil Breach, Not Criminal Fraud. ....2

II. The Government's Motion Concerning "Victim-Blaming" Should Be Limited to Arguments of Negligence or Lack of Diligence. ....3

III. The Government's Motion to Preclude Evidence and Argument Concerning the Offering Materials' Disclosures Should Be Denied. ....3

IV. The Court Should Not Preclude Evidence of Mr. Wander's Contemporaneous Beliefs About 777's Financial Condition, Collateral, and Prospects. ....5

A. The Court Should Admit Evidence that Indicates Mr. Wander Contemporaneously Believed 777 Could Meet Its Obligations to Lenders and Pay Its Projected Dividends to Investors. ....6

B. Mr. Wander Is Entitled to Rebut the Government's "Concealment" Evidence, Including with Evidence that Intervening Events Caused 777's Collapse. ....10

V. The Government's Motion to Preclude Evidence of the Presence and Involvement of Counsel Should Be Denied. ....12

A. The Evidence Is Relevant to Intent and Does Not Implicate Any Advice of Counsel. ....12

B. *Bankman-Fried* Calls for Case-Specific Evaluation at Trial, Not Categorical Preclusion Before It. ....13

VI. The Government's Categorical Hearsay Motion Should Be Denied, and Admissibility Determined Statement by Statement. ....14

A. Statements Made After the Alleged Scheme Was Exposed Are Not "During" or "In Furtherance" of It. ....15

B. Retrospective Narrative and Editorial Commentary Are Not "In Furtherance." ....16

C. The Government Has Not Laid a Foundation for Rule 801(d)(2)(D). ....16

VII. The Government's Motion to Introduce Evidence about Mr. Wander's Alleged Drug Use and Spending Habits Should Be Denied. ..... 17

A. The Government Must Lay the Proper Foundation and Establish Relevance Related to His Prior Narcotics Matter. ..... 17

B. The Government Should Not be Allowed to Elicit Evidence that He Used Narcotics During the Charged Period. ..... 18

C. Mr. Wander's Spending Habits Are Irrelevant and Impermissible Propensity Evidence. ..... 18

VIII. Mr. Wander Should Be Permitted to Cross-Examine the Government's Witness About Specific Instances of Conduct Probative of Untruthfulness. ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................3

*Bourjaily v. United States*,
483 U.S. 171 (1987)....................14

*Cabrera v. Jakabovitz*,
24 F.3d 372 (2d Cir. 1994)....................16

*Ciminelli v. United States*,
598 U.S. 306 (2023)....................9, 15

*Crane v. Kentucky*,
476 U.S. 683 (1986)....................1, 10

*Grunewald v. United States*,
353 U.S. 391 (1957)....................15

*ING Cap. LLC v. 777 Partners*,
No. 2025-1552-CA-01 (Fla. 11th Cir. Ct.) ....................2

*Kousisis v. United States*,
605 U.S. 114 (2025)....................8, 10

*Leadenhall Capital Partners LLP v. Wander*,
No. 24 Civ. 3453 (S.D.N.Y.) ....................2

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986)....................7

*Old Chief v. United States*,
519 U.S. 172 (1997)....................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)....................6

*Pappas v. Middle Earth Condo. Ass'n*,
963 F.2d 534 (2d Cir. 1992)....................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................4

*Tome v. United States*,
513 U.S. 150 (1995)....................16

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
822 F.3d 650 (2d Cir. 2016)....................2, 6, 15

*United States v. Bankman-Fried*,
No. 22 Cr. 673 (LAK), ECF No. 305 (S.D.N.Y. Oct. 1, 2023) ....13

*United States v. Bankman-Fried*,
179 F.4th 104 (2d Cir. 2026) ....8, 10, 13

*United States v. Curcio*,
No. 24 Cr. 312 (RA), 2026 WL 2168353 (S.D.N.Y. July 27, 2026) ....8

*United States v. DiPaolo*,
804 F.2d 225 (2d Cir. 1986)....18

*United States v. Franzone*,
No. 21 Cr. 446 (VSB), 2025 WL 1094496 (S.D.N.Y. Apr. 11, 2025) ....4

*United States v. Geaney*,
417 F.2d 1116 (2d Cir. 1969)....14

*United States v. Gole*,
21 F. Supp. 2d 161 (E.D.N.Y. 1997), *aff'd*, 158 F.3d 166 (2d Cir. 1998)....7

*United States v. Greenberg*,
835 F.3d 295 (2d Cir. 2016)....8

*United States v. Guo*,
No. 23 Cr. 118 (AT), 2024 WL 1939221 (S.D.N.Y. May 2, 2024)....3

*United States v. Jabar*,
19 F.4th 66 (2d Cir. 2021) ....8

*United States v. Lieberman*,
637 F.2d 95 (2d Cir. 1980)....16

*United States v. Males*,
459 F.3d 154 (2d Cir. 2006)....8

*United States v. Rivera*,
22 F.3d 430 (2d Cir. 1994)....16

*United States v. Roldan-Zapata*,
916 F.2d 795 (2d Cir. 1990)....18

*United States v. Runner*,
143 F.4th 146 (2d Cir. 2025) ....8

*United States v. Schulte*,
No. 17 Cr. 548 (JMF), 2022 WL 1639282 (S.D.N.Y. May 24, 2022)....18

*United States v. Scully*,
877 F.3d 464 (2d Cir. 2017)....12

*United States v. Sperling*,
726 F.2d 69 (2d Cir. 1984)....19

*United States v. Tracy*,
12 F.3d 1186 (2d Cir. 1993)....14

*United States v. Vilar*,
729 F.3d 62 (2d Cir. 2013)....3

*United States v. Weaver*,
860 F.3d 90 (2d Cir. 2017)....4

*United States v. White*,
887 F.2d 267 (D.C. Cir. 1989)....12

**Rules**

Fed. R. Evid. 106....5

Fed. R. Evid. 608(b)....19

Fed. R. Evid. 609(d)(4)....19

Fed. R. Evid. 801(d)(2)....14

Fed. R. Evid. 801(d)(2)(E)....15

## PRELIMINARY STATEMENT

In its motions *in limine*, the government tries to preclude Mr. Wander from offering evidence and argument to defend against the charges against him. The government's charges all turn on Mr. Wander's state of mind, and the government now seeks to preclude relevant, probative evidence bearing on his intent. Mr. Wander has a constitutional right to put on a defense, offer evidence that undermines the government's allegations, and argue against the government's charges. The Court should reject its attempt to stop him from doing so. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense" (citation omitted)). The Court should also reject the government's affirmative requests, which are overly broad and premature. The Court should thus deny the government's motions, or limit them to the arguments Mr. Wander has agreed not to make.

## ARGUMENT

Mr. Wander will not make arguments or offer evidence contrary to the Court's instructions, and so does not oppose the government's motion to the extent the government seeks to preclude argument that he was selectively prosecuted or that the charged conduct was industry practice, ECF No. 69 at 4–7 (Point I.A); that his lenders and investors were negligent or insufficiently diligent, *id.* at 7–9 (Point I.B); or that his personal circumstances or potential punishment warrant leniency, *id.* at 19–20 (Point I.F).[1] He opposes the remaining requests—

[1] The government also asks the Court to preclude the defense from using the photograph of Mr. Wander's son, which the government will offer to prove Count Six, "to improperly garner sympathy." ECF No. 69 at 19 n.2. Mr. Wander will not ask the jury to acquit out of sympathy, but the meaning of that photograph and other communications that may have involved his family is a contested question that goes to the government's own witness tampering charge, and he must be free to address their context.

Points I.A and I.B to the extent they reach evidence and argument bearing on the elements, and Points I.C, I.D, I.E, II, III, and IV in their entirety—for the reasons that follow.

## I. Mr. Wander Is Entitled to Argue that the Conduct in This Case Was at Most a Civil Breach, Not Criminal Fraud.

Mr. Wander will not raise any argument about selective prosecution inconsistent with the Court's instructions. *See* ECF No. 69 at 4–7 (Point I.A). But the government tries to leverage the principle that a defendant cannot argue selective prosecution to the jury to urge the Court to bar him from eliciting any suggestion that "civil and regulatory remedies are available to the victims." *Id.* at 7. The Court should reject that invitation. The law is entirely clear that Mr. Wander can make reference to civil and regulatory actions, in two respects.

*First*, whether the charged conduct was criminal fraud or a civil breach of contract is an element of the offense. A contractual representation is fraudulent only if made with the contemporaneous intent to defraud; a later breach, however willful, is not fraud. *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016). Mr. Wander's proposed charge, filed today, includes such an instruction. While the availability of civil remedies is not itself a defense to wire fraud, Mr. Wander must be free to submit evidence and argue that the conduct here was at worst a civil breach, not criminal fraud.

*Second*, ongoing civil litigation by the government's witnesses bears on their potential bias. Lender-1 and Lender-3 have sued Mr. Wander and 777 in *Leadenhall Capital Partners LLP v. Wander*, No. 24 Civ. 3453 (S.D.N.Y.) and *ING Cap. LLC v. 777 Partners*, No. 2025-1552-CA-01 (Fla. 11th Cir. Ct.). Mr. Wander is entitled to inquire and make arguments about the decisions to file those lawsuits, both as relevant to their beliefs about Mr. Wander's intent and as providing a potential form of witness bias against Mr. Wander.

## II. The Government's Motion Concerning "Victim-Blaming" Should Be Limited to Arguments of Negligence or Lack of Diligence.

The government asks the Court to preclude evidence or argument that 777's lenders and investors were "negligent, gullible or insufficiently diligent," and to bar cross-examination implying that their diligence was inadequate. ECF No. 69 at 7–9 (Point I.B). Mr. Wander will not raise any argument inconsistent with the Court's instructions on materiality. But as Mr. Wander explained in his motion *in limine,* ECF No. 71 at 4–8, evidence of what lenders and investors actually knew, consented to, and did, is admissible.

## III. The Government's Motion to Preclude Evidence and Argument Concerning the Offering Materials' Disclosures Should Be Denied.

The government asks the Court to preclude Mr. Wander from "making arguments or cross-examining witnesses about" the disclosures, risk factors, and cautionary language in 777's preferred equity offering materials, and to determine those disclosures "have no relevant purpose at trial." ECF No. 69 at 9–11 (Point I.C). Mr. Wander will not raise arguments inconsistent with the Court's jury instructions on materiality and reliance. But the disclosures in the investor documents are relevant and admissible for three independent reasons, each tied to an element the government must prove.

*First*, the disclosures are admissible because they bear on materiality. A misstatement or omission is material only if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (citations omitted); *see United States v. Vilar*, 729 F.3d 62, 88–89 (2d Cir. 2013) (applying the materiality standard in a criminal securities prosecution). This "total mix" is not a subset of the offering documents pre-chosen by the government to serve its narrative; it is everything an investor received. *United States v. Guo*, No. 23 Cr. 118 (AT), 2024 WL 1939221, at *8 (S.D.N.Y.

May 2, 2024) ("[T]ransactional disclaimers are part of the 'total mix' of information for the jury to consider."). Here, the "pitch deck" the government cites to in its Superseding Indictment opened with a forward-looking-statements legend identifying specific risk categories, expressly labeled the 2020 financial metrics "preliminary and unaudited and subject to change," and was accompanied by a Subscription Agreement attaching a schedule of risk factors. Estes Decl., Exs. A, B. A jury asked whether a reasonable investor would have viewed the alleged omissions as significantly altering the total mix cannot answer that question without seeing what the mix contained. Indeed, the sole case the government relies on to try to preclude the disclaimers, *United States v. Weaver*, ECF No. 69 at 10, specifically stated that "the contractual disclaimers were relevant to the jury's determination of Weaver's guilt." 860 F.3d 90, 97 (2d Cir. 2017); *see also United States v. Franzone*, No. 21 Cr. 446 (VSB), 2025 WL 1094496, at *5 (S.D.N.Y. Apr. 11, 2025) (denying motion to preclude disclaimers based on *Weaver*). *Weaver* also involved contractual disclaimers of *reliance*, which the court held could not license lies told to induce a victim to sign. 860 F.3d at 95–96. The cautionary language here is different. It is part of what the offering materials told investors about the projections themselves, and so part of the total mix by definition; nothing about the total mix of information would be "confusing to jurors." ECF No. 69 at 11.

*Second*, the disclaimers are admissible because they are probative of Mr. Wander's intent. That Mr. Wander and 777 included express risk disclosures, forward-looking-statement warnings, and unaudited-financials caveats in the very materials he is charged with using to defraud is circumstantial evidence that he did not intend to deceive. A person scheming to mislead investors about a company's financial condition does not ordinarily warn them that the figures are preliminary estimates subject to change. *Cf. Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322–24 (2007) (noting that *scienter* must be assessed in light of the competing, nonculpable inferences the facts support). The weight of that inference is for the jury.

*Third*, the disclaimers are necessary under the rule of completeness. The government repeatedly cites the offering materials that contain the disclaimers in the Superseding Indictment, and presumably will seek to admit the materials to establish the securities fraud charges. Superseding Indictment ¶ 24 (discussing pitch deck), ¶ 26 (describing Subscription Agreement). The government cannot offer the supposedly false projections and representations in those documents while excising the qualifications that appear in the same documents. Fed. R. Evid. 106 (when a party introduces part of a statement, "an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time"). Nor can the government bar cross-examination of an investor witness who testifies that he invested "based on" 777's projections about the warnings that accompanied them; that is ordinary confrontation, not a "gullible victim" defense.

## IV. The Court Should Not Preclude Evidence of Mr. Wander's Contemporaneous Beliefs About 777's Financial Condition, Collateral, and Prospects.

The government's overbroad motion asks the Court to preclude "evidence or argument that [Mr. Wander] believed that his victims would be made whole, or that factors outside of his control caused 777's collapse." ECF No. 69 at 11–14 (Point I.D). Mr. Wander will not raise arguments inconsistent with the Court's jury instructions on wire or securities fraud. But he must be allowed to put forth relevant and probative evidence that undermines the government's charges, and the Court should reject the government's apparent attempt to police the bounds of such evidence.

The Superseding Indictment charges him with securities fraud and conspiracy to commit securities fraud, alleging that the "projected financials and [] dividends" in offering materials sent to investors were "infeasible." Superseding Indictment ¶ 25. The central premise of the securities fraud charges is that the projected financials for 777 writ large were not accurate because those projections did not take into account the collateral deficit on one of the credit facilities for a single subsidiary among the dozens of portfolio companies affiliated with 777. To rebut the government's assertion, Mr. Wander is entitled to put forth relevant evidence that shows that he believed the projections were in fact feasible, including evidence that he contemporaneously believed any collateral deficit would be resolved. Mr. Wander is also entitled to submit probative evidence negating any intent to defraud, including evidence showing that he had no objective to deprive any alleged victim of money or property based on his contemporaneous beliefs and his negotiations with his lenders. Finally, Mr. Wander is entitled to the admission of probative evidence to rebut evidence the government will offer as consciousness of guilt, including but not limited to evidence that indicates that the collapse of 777 was driven by factors outside his control.

A. The Court Should Admit Evidence that Indicates Mr. Wander Contemporaneously Believed 777 Could Meet Its Obligations to Lenders and Pay Its Projected Dividends to Investors.

Evidence that Mr. Wander believed that 777 could meet its obligations to its lenders, and pay the projected dividends to its investors, is admissible for two reasons.

*First*, in order to establish Mr. Wander's guilt, the government must prove that he knew that the representations 777 made to its lenders and investors were false at the time the representations were made. The Second Circuit has made "emphatically" clear "that a representation is fraudulent only if made with the contemporaneous intent to defraud."

*Countrywide*, 822 F.3d at 658 (discussing a 1931 New York Court of Appeals decision written by then-Judge Cardozo); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (noting that, under the securities laws, "a sincere statement of pure opinion is not an 'untrue statement of material fact'"). With respect to the securities charges, the government specifically accuses him of making projections and "promis[ing]" dividends that were not feasible. Superseding Indictment ¶ 25. But projections, forecasts, and statements of opinion are not actionable under the securities laws merely because the projected or expected results did not materialize fully.[2] They are actionable only where the speaker knew at the time that they were false. *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir. 1986). Mr. Wander is thus entitled to submit to the jury relevant evidence showing that he believed that 777 could in fact meet the projections and pay out the dividends referenced in the offering materials. Similarly, any evidence that Mr. Wander believed that statements he made to lenders were true at the time he made them, including in the agreements negotiated with those lenders, is admissible to negate the intent to defraud and, if credited, would require acquittal on the wire fraud counts.

The government's own authority draws this distinction. In *United States v. Gole*, the court explained that good faith "addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan." 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997), *aff'd*, 158 F.3d 166 (2d Cir. 1998); *see* ECF No. 69 at 12. Whether Mr. Wander believed at the time of his representations that anticipated asset purchases, financings, and transactions would close and cure any borrowing base deficiencies or pay off

[2] In fact, 777 did pay out dividends for a period of time, which further corroborates Mr. Wander's good-faith belief at the time of the offering that 777 would be able to do so. Estes Decl., Ex. C.

debts to his lenders is not a "plan will work out" defense; it bears on his own beliefs as to the truth or falsity of his statements, including about 777's projected income for purposes of the securities fraud charges. Indeed, the Second Circuit recognized as much in the *United States v. Bankman-Fried* decision this year: in affirming the limits the district court placed on the defense, the Circuit first emphasized that the defendant had remained "able to present his version of events to the jury when he testified to his good faith belief that Alameda's assets were greater than its liabilities." 179 F.4th 104, 115 (2d Cir. 2026).

*Second*, the government must prove that Mr. Wander "*contemplated* some actual harm or injury to [his] victims." *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016) (emphasis in original) (citation omitted); *see also United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (discussing contemplated harm requirement and cited in the government's motion, ECF No. 69 at 11). What Mr. Wander intended to deliver to his lenders and investors bears directly on whether the government can meet its burden. After *Kousisis v. United States*, 605 U.S. 114 (2025), the Second Circuit reaffirmed that fraudulent intent is measured by "a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, *or intended to deliver*." *United States v. Runner*, 143 F.4th 146, 158 (2d Cir. 2025) (emphasis added) (quoting *United States v. Jabar*, 19 F.4th 66, 77 (2d Cir. 2021)). Mr. Wander is therefore entitled to submit evidence that he did not contemplate any deprivation of money or property at the time of the alleged criminal conduct. That is not evidence that he "intended to eventually repay," *Bankman-Fried*, 179 F.4th at 114, but instead is evidence that bears directly on whether he "intentionally l[ied] to induce a victim into a transaction that will cost her money or property." *Kousisis*, 605 U.S. at 135; *accord Runner*, 143 F.4th at 161 ("[T]o establish fraudulent intent, the Government was also required to prove that Runner act[ed]

knowingly and with the specific intent to deceive for the purpose of causing some financial or property loss to another." (alteration in original) (internal quotation marks omitted)); *United States v. Curcio*, No. 24 Cr. 312 (RA), 2026 WL 2168353, at *18 n.20 (S.D.N.Y. July 27, 2026) (describing admission of evidence relevant to the defendant's "*subjective intent* in entering into the transactions at issue" (emphasis in original)). The question is not whether Mr. Wander hoped to make lenders whole after the fact, but what bargain he contemporaneously intended them to receive—and evidence of his contemporaneous beliefs about 777's assets, collateral, and pending transactions is highly probative.

The government's own account of the harm confirms why this evidence cannot be excluded. The government argues that even fully repaid lenders "would have suffered harm because they took on more risk than they believed, and likely would have demanded a higher interest rate had they known of the actual risks." ECF No. 69 at 14. That is a right-to-control theory under another name: on this hypothetical, had the lenders known what the government says was the truth, they would have used that information to make a discretionary economic decision about whether, and on what terms, to lend. That is not money or property protected by the wire fraud statute. *Ciminelli v. United States*, 598 U.S. 306, 316 (2023) (an interest in "potentially valuable economic information necessary to make discretionary economic decisions" is not property for purposes of the fraud statutes). The government cannot render Mr. Wander's evidence irrelevant by defining the harm in terms the statute does not recognize. Measured against the only cognizable harm—the deprivation of money or property—evidence of Mr. Wander's contemporaneous beliefs, including about whether the lenders' money was secured on the terms they bargained for, is squarely relevant.

B. Mr. Wander Is Entitled to Rebut the Government's "Concealment" Evidence, Including with Evidence that Intervening Events Caused 777's Collapse.

The government seeks to admit evidence that it asserts shows that Mr. Wander took steps to conceal his supposed prior defrauding of his lenders. *E.g.*, ECF No. 69 at 2 (describing steps he purportedly took "to conceal the full extent of the collateral deficiencies"); Superseding Indictment ¶ 18 (describing actions Mr. Wander allegedly took to hide a collateral deficiency from "Lender-1"). By the government's own logic, these alleged acts do not constitute wire fraud, which was complete the moment a lender's money changed hands—"a fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses," ECF No. 69 at 11 (citing *Kousisis*, 605 U.S. at 127 n.5), which is why, it says, Mr. Wander's later intentions are irrelevant. ECF No. 69 at 12–14; *see Bankman-Fried*, 179 F.4th at 114. Presumably then, the government would be offering evidence of that alleged concealment to show consciousness of guilt. Mr. Wander is entitled to present alternative, innocent explanations for that alleged conduct, including that he was in constant negotiations to address the credit facilities. *See Crane*, 476 U.S. at 690. The government cannot declare Mr. Wander's intentions after the alleged deprivation legally irrelevant while using his conduct after the alleged deprivation to prove his intent.

Mr. Wander's right to present evidence of events after the alleged deprivation likewise requires the Court to deny the government's motion *in limine* to preclude him from offering evidence that "factors outside his control" caused 777's collapse. Throughout this case, the government has alleged that Mr. Wander's conduct led to the "collapse" of 777 Partners and its affiliates in 2024, and substantial losses to its lenders. Superseding Indictment ¶ 23; *id.* (777 "formally declar[ed]" bankruptcy in October 2024); ECF No. 69 at 2 (Mr. Wander's "scheme" "sent 777 into a downward spiral," which in 2024 left lenders and investors "with hundreds of

millions in losses"). The government cannot have it both ways: if it puts 777's alleged collapse and its purported cause before the jury, Mr. Wander must be able to offer evidence of the actual reasons the company collapsed. The government's motion would leave the jury with only one account of why 777 failed—the government's own.

The most important competing explanation for 777's 2023 and 2024 problems is the media maelstrom that engulfed the company beginning in November 2023. The evidence will show that the company's failure followed not from the conduct charged, but from the wave of adverse press coverage that began that month and the rapid chain of counterparty reactions it set off. That sequence—not the charged conduct—explains when and why 777 failed, and it negates the inference that the collapse proves what Mr. Wander believed when he made the charged representations. The prior litigation concerning whether the government leaked grand jury information is irrelevant to that inference. *See* ECF Nos. 24, 30. Mr. Wander is entitled to put forth evidence that the news reporting occurred, and that much of the reporting was inaccurate. *See* ECF No. 28-1 ¶ 8 (declaration from AUSA describing factual inaccuracies in the November 30, 2023, Semafor article). The relevant facts are that the coverage occurred; that it included inaccuracies; that it had an effect on 777's lenders, its counterparties, and the market; and that 777 ultimately collapsed. And Mr. Wander should be wholly free to explain to the jury that he believed the ongoing negotiations the government singles out, like the bid to buy Everton, the Leadenhall negotiations, and the TAMI transaction, ECF No. 69 at 13, would have succeeded—evidence independently admissible on his good faith. *See supra* Point IV.A. Evidence concerning A-CAP's knowledge and conduct is separately admissible as to Count Five for the reasons stated in Mr. Wander's motions *in limine*. ECF No. 71 at 8–10. Nor would this evidence require the "mini-trials" or "ex post valuation exercises" the government predicts. ECF No. 69

at 14. Mr. Wander does not intend to prove what those transactions would have been worth; he intends to show what he believed when he pursued them, and what happened to 777 when the coverage began.

## V. The Government's Motion to Preclude Evidence of the Presence and Involvement of Counsel Should Be Denied.

The government asks the Court to bar, wholesale and in advance of trial, any evidence or argument concerning the presence or involvement of attorneys in the transactions at issue, on the theory that such evidence is tantamount to an advice-of-counsel defense that Mr. Wander has disclaimed. ECF No. 69 at 14–19 (Point I.E). The government's motion is premature and should be denied. Mr. Wander has told the government, in two letters, what he intends to offer: evidence of the retention and participation of counsel in ten identified categories of events, drawn largely from the government's own production. ECF No. 69, Exs. A, B (Aug. 7 and Sept. 21, 2026 letters). That evidence bears directly on intent, and does not depend on, disclose, or invite reliance on any privileged communication. And the process followed by Judge Kaplan in the *Bankman-Fried* case upon which the government relies shows exactly why the government's attempt to preclude such evidence before trial should be denied.

### A. <u>The Evidence Is Relevant to Intent and Does Not Implicate Any Advice of Counsel.</u>

The government must prove that Mr. Wander acted knowingly, willfully, and with the specific intent to defraud. Evidence bearing on what he believed about the propriety of 777's conduct is therefore relevant to an element of the offense, not to an affirmative defense. Even a formal advice-of-counsel defense "is not an affirmative defense"; it is evidence that, "if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an unlawful intent." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (internal quotation marks omitted). The narrower

evidence Mr. Wander proposes to offer is further still from a formal defense. His awareness that experienced lawyers were retained by, embedded in, and participating in the very transactions the government now calls fraudulent—negotiating the credit facilities, documenting the pledges, working through the audits, and corresponding with the lenders—is circumstantial evidence bearing on whether he acted with consciousness of wrongdoing. *See United States v. White*, 887 F.2d 267, 270–71 (D.C. Cir. 1989) ("Acknowledging that one's attorney was present" is not the same as asserting reliance on counsel's advice that the conduct was lawful). The Second Circuit's decision in *Bankman-Fried* was fact-specific, not a blanket preclusion of all evidence of presence of counsel for all cases and all times. *Bankman-Fried*, 179 F.4th at 120 ("We agree with the district court that the risk of using counsel to create a misplaced air of legality substantially outweighed the probative value of the testimony.").

B. *Bankman-Fried* Calls for Case-Specific Evaluation at Trial, Not Categorical Preclusion Before It.

The government contends that *Bankman-Fried* requires the categorical pretrial exclusion of presence of counsel evidence. ECF No. 69 at 18. It does not do so; it instead lays out a process for how a defendant should raise such evidence, which the Court should follow here. The district court there did not enter a categorical pretrial order precluding counsel-related evidence, and it did not require the defendant to make the disclosures the government demands here. Judge Kaplan repeatedly deferred ruling on the government's motion to preclude such evidence until two days before trial, then only precluded references to attorney presence in the opening statement and required "prior notice to the Court and the government" before any evidence, argument, or testimony on the subject—and denied the motion "without prejudice in all other respects." *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), ECF No. 305, at 9–10 (S.D.N.Y. Oct. 1, 2023). He explained that the best available course was to ensure the Court

would have sufficient notice "to make appropriate rulings on a case-by-case basis." *Id.* at 9. Mr. Wander will not make reference to attorney presence in his opening statement, and will provide prior notice at trial before admission of any such evidence. At that point, whether any particular item permissibly bears on Mr. Wander's state of mind can be decided on the record and in context. That is precisely the approach contemplated in *Bankman-Fried*.[3]

### VI. The Government's Categorical Hearsay Motion Should Be Denied, and Admissibility Determined Statement by Statement.

The government asks the Court to rule now that entire categories of out-of-court statements—compliance reports, financial reports, "revised" reports, and an open-ended set of texts and conversations—are admissible against Mr. Wander. ECF No. 69 at 20–29 (Point II). Rule 801(d)(2)(E) does not permit that shortcut. Before admitting a coconspirator statement, the Court must find by a preponderance that a conspiracy existed that included the defendant and the declarant, and that *the particular statement* was made during and in furtherance of it. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969). Conditional admission subject to later connection, *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993), is a trial-management tool for specific proffered statements, not a basis for advisory rulings on unidentified ones. The Court should direct the government to identify each out-of-court statement it intends to offer under Rule 801(d)(2), and resolve admissibility on that record. The statements themselves cannot carry that burden alone: a statement "must be considered but does not by itself establish" the existence of the conspiracy or the declarant's participation in it. Fed. R. Evid. 801(d)(2). Mr. Wander reserves his objections to

[3] If and when Mr. Wander offers such notice, the Court can then consider whether the appropriate vehicle for determining admissibility is a Rule 104 hearing. There is no need to make that determination at this point. ECF No. 69 at 19 n.1.

the admission of the government's evidence until it is identified and offered. Three recurring defects in the government's categories warrant particular attention.

A. <u>Statements Made After the Alleged Scheme Was Exposed Are Not "During" or "In Furtherance" of It.</u>

The government seeks a Court ruling pre-admitting documents sent to investors and lenders "during the conspiracy." ECF No. 69 at 23. The government has not met its burden to show some of the documents referred to were in fact made during the alleged conspiracy. For instance, "revised" compliance reports that were sent to Leadenhall in late 2023 and early 2024 and the November 2023 text exchange between [redacted] post-date the point at which, on the government's own account, Mr. Wander and Leadenhall had discussed the alleged double-pledging, in March and April 2023. ECF No. 69 at 2, 25, 28; Superseding Indictment ¶¶ 19–23. Federal Rule of Evidence 801(d)(2)(E) allows for the admission of coconspirator statements made "during and in furtherance of the conspiracy." To establish admissibility, the government must show that each statement was made while the alleged conspiracy was ongoing, and its motion makes no such showing. The statements that post-date Leadenhall's discovery and discussion with Mr. Wander of the alleged double-pledging are at most alleged acts of concealment after the central objective of any alleged conspiracy has been attained, and not necessarily part of the prior alleged conspiracy. *Grunewald v. United States*, 353 U.S. 391, 401–06 (1957). And to the extent the government claims the post-exposure statements were lulling designed to "maintain" the borrowed funds, ECF No. 69 at 25–26, that theory is foreclosed by *Ciminelli*, since deceptive statements intended to delay a lender's exercise of its contractual remedies do not constitute wire fraud. 598 U.S. at 316; *see also Countrywide*, 822 F.3d at 658.

B. Retrospective Narrative and Editorial Commentary Are Not "In Furtherance."

The November 2023 text messages the government cites, ECF No. 69 at 28, are inadmissible for another reason: they are retrospective narrative, not "in furtherance" of the alleged conspiracy. Statements that merely recount or comment on past events, rather than "promote or facilitate" a conspiratorial objective, do not suffice under Rule 801(d)(2)(E). *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994); *United States v. Lieberman*, 637 F.2d 95, 102–03 (2d Cir. 1980). The analyst messages trying to reconstruct "what [they] actually borrowed" years earlier, ECF No. 69 at 28, are not advancing any shared objective, but only editorializing about history, rather than keeping alleged coconspirators abreast of current developments.[4]

C. The Government Has Not Laid a Foundation for Rule 801(d)(2)(D).

The government alternatively invokes Rule 801(d)(2)(D), which allows for admission of a statement "made by the party's agent or employee on a matter within the scope of that relationship." The declarants were employees of 777 Partners and its affiliates—entities that are not parties here. To use their statements against Mr. Wander personally, the government must establish, declarant by declarant, an agency relationship with Mr. Wander himself: a manifestation that the agent would act for him, acceptance, and "the understanding of the parties that the principal is to be in control of the undertaking." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994). It must then show that each statement concerned a matter within the scope of that relationship. *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537–38 (2d Cir. 1992). The

[4] The Court has no reason to rule at this point on the government's fallback argument that the texts will become admissible as prior consistent statements, ECF No. 69 at 28 n.4, given that the defense has not attacked the declarants' credibility. This argument is also wrong because a prior consistent statement offered to rebut a charge of recent fabrication or improper motive must predate the motive, and by November 2023 the analysts were in damage control mode with every motive to shape a self-serving account. *Tome v. United States*, 513 U.S. 150, 156–58 (1995).

government's motion does not attempt that showing. A title in the organizational chart does not satisfy it: on the government's own description, the analysts reported to Mr. Alfalla, the CFO, and prepared the compliance reports at his direction. Estes Decl., Ex. D. Whether Mr. Wander directed and controlled any particular declarant's work on any particular subject is a foundational question the government must answer with evidence, not a presumption.[5]

## VII. The Government's Motion to Introduce Evidence about Mr. Wander's Alleged Drug Use and Spending Habits Should Be Denied.

The government seeks to admit evidence of Mr. Wander's 2004 narcotics matter, ECF No. 69 at 32–33. Mr. Wander objects to the extent the government does not lay the proper foundation or establish relevance. The government also seeks to admit evidence of alleged recreational drug use and personal spending as direct evidence or under Rule 404(b). ECF No. 69 at 33–36 (Point III). These requests should be denied.

### A. <u>The Government Must Lay the Proper Foundation and Establish Relevance Related to His Prior Narcotics Matter</u>.

The government proffers that Steve Pasko, not Mr. Wander, "signed the compliance reports" because of Mr. Wander's prior plea related to narcotics. ECF No. 69 at 32. This conclusion is, as of now, ungrounded, and Mr. Wander retains the right to object at trial to the government's attempted admission of this evidence without the proper foundation and showing of relevance.

[5] Given that the government offers no legal analysis in support of its conclusion that some of its evidence may be business records, ECF No. 69 at 27 n.3, the Court need not rule on that basis at this point.

B. The Government Should Not Be Allowed to Elicit Evidence that He Used Narcotics During the Charged Period.

Mr. Wander offers to stipulate that he had close and longstanding relationships with [redacted] during the period of the alleged conspiracy, thus reducing the probative value of evidence of alleged drug use to establish that point. *See* ECF No. 69 at 34 (seeking to admit the evidence of his alleged drug use with the witnesses to show a "relationship of trust between the defendant and his coconspirators"). This evidence is too prejudicial, and his offer to stipulate would moot the need to submit such inflammatory evidence. *E.g.*, *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *Old Chief v. United States*, 519 U.S. 172, 182–85 (1997). In the alternative, if the Court allows introduction of his alleged drug use, Mr. Wander will seek to introduce similar evidence of drug use by the government's cooperating witnesses. *See, e.g.*, *United States v. DiPaolo*, 804 F.2d 225, 229–30 (2d Cir. 1986) (narcotics use relevant to ability to perceive or remember events).

C. Mr. Wander's Spending Habits Are Irrelevant and Impermissible Propensity Evidence.

The government's motion to introduce evidence of Mr. Wander's "elaborate spending" should be denied. The government has not tied any specific purchases to funds drawn from the credit facilities, and general spending habits do not supply that connection. *See* ECF No. 69 at 35. The government's request to introduce such evidence as Rule 404(b) material should be denied for the reasons stated in Mr. Wander's motion *in limine*. *See* ECF No. 71 at 12–14; ECF No. 69 at 35 (conceding that some of the spending it seeks to prove was "not paid directly out of victims['] funds").

Should the Court permit the government to introduce this evidence as "proof of Wander's intent and motive to commit the charged crimes," ECF No. 69 at 35, Mr. Wander respectfully requests that he be permitted to introduce competing evidence of his motive to engage in the

charged conduct. *See United States v. Schulte*, No. 17 Cr. 548 (JMF), 2022 WL 1639282, at *9 (S.D.N.Y. May 24, 2022) (ruling that "although Defendant's motive and intent are not elements of the offense with which he is charged, the Government may open the door to evidence of the sort that Defendant seeks to offer").

## VIII. Mr. Wander Should Be Permitted to Cross-Examine the Government's Witness About Specific Instances of Conduct Probative of Untruthfulness.

The government asks the Court to bar cross-examination of [redacted] ECF No. 69 at 36–39 (Point IV), about his involvement in counterfeiting currency, which it calls a "teenage indiscretion" with "little to no bearing" on his credibility. To the extent the government attempts to misleadingly paint [redacted] as a sympathetic or innocent dupe supposedly corrupted by Mr. Wander, the motion should be denied so that Mr. Wander can present [redacted] background to the jury.

Rule 608(b) permits inquiry on cross-examination into specific instances of a witness's conduct "if they are probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Counterfeiting is not merely probative of untruthfulness; deception is its essence. Its entire object is to pass off something false as genuine. Conduct of that kind falls in the core of what Rule 608(b) reaches. *See, e.g.*, *United States v. Sperling*, 726 F.2d 69, 75 (2d Cir. 1984) ("It was also proper for the government to cross-examine Sperling regarding his false credit card applications to show a general lack of credibility. This is acceptable cross-examination under Fed.R.Evid. 608(b)(1)."). The government cites nothing for its contrary view other than its repeated incantation that there is "no relevance" between this conduct and the charged offense, ECF No. 69 at 39—a remarkable statement in a case where the Superseding Indictment alleges that Analyst-1—[redacted]—"digitally alter[ed] screenshots of WANDER's bank account." Superseding Indictment ¶ 29. Nor does the government's "teenage" label change the analysis.

Rule 608(b) contains no time limit, and the witness's age at the time goes, at most, to the weight the jury gives the answer. Even Rule 609(d), which governs juvenile adjudications, permits their use against a witness other than the defendant where "admitting the evidence is necessary to fairly determine guilt or innocence." Fed. R. Evid. 609(d)(4).

## CONCLUSION

For the foregoing reasons, Mr. Wander respectfully requests that the Court deny the government's motions in limine to the extent set forth above.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
DJames@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*