GIBSON DUNN

Jordan Estes
Partner
T: +1 212.351.3906
jestes@gibsondunn.com

October 2, 2026

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re: *United States v. Wander*, S1 25 Cr. 473 (JPO)**

Dear Judge Oetken:

We write on behalf of Defendant Joshua Wander in support of his Proposed Instructions Nos. 22 through 26, 33, and 34. Each of these instructions follows settled law, and each addresses a defense theory that the government's anticipated proof squarely places at issue. A defendant is entitled to instructions on his theory of defense so long as the theory has some foundation in the evidence, *United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990), and these instructions do no more than ensure that the jury decides this case under the governing standards, rather than on labels, hindsight, or breaches of contract dressed up as fraud.

**Instruction No. 22: Scheme to Defraud; Money or Property Must Be the Object**

Mr. Wander's Proposed Instruction No. 22 makes clear three limits on the federal fraud laws recently reiterated by the Second Circuit and the Supreme Court. *First*, deception alone is not fraud: "misrepresentations amounting only to a deceit must be coupled with a contemplated harm to the victim." *United States v. Runner*, 143 F.4th 146, 154 (2d Cir. 2025) (citations omitted); Jury Charge at 22, *United States v. Malvasio*, 23 Cr. 396 (JMF) (S.D.N.Y. June 23, 2026), ECF No. 254 ("the Government must prove beyond a reasonable doubt that the defendant contemplated some actual harm or injury to a victim with respect to the victim's money or property."). *Second*, obtaining money or property must be "an object of the fraud" and not "an incidental byproduct of the scheme." *Kelly v. United States*, 590 U.S. 391, 402 (2020). *Third*, the statute criminalizes only the contemplated obtaining of "traditional property interests"—not the intangible interests in accurate information, effective monitoring, or the exercise of contractual rights and remedies. *Ciminelli v. United States*, 598 U.S. 306, 312–16 (2023).

Describing these limitations clearly to the jury is critical, because the line between traditional property interests and intangible interests has proven difficult to hold—so much so that the Solicitor General has recognized that language in this Circuit's prior decisions swept too broadly. *See* Brief for the United States, *Ciminelli v. United States*, 21-1170 (recognizing as "incorrect" language in Second Circuit decisions, proffered by this U.S. Attorney's Office, that "suggest that depriving a victim of economically valuable information, without more" satisfies the federal fraud statutes). The jury must be told that deprivation of intangible interests is not deprivation of money or property, and that only a scheme whose object was to obtain money or

GIBSON DUNN



property satisfies the statute. Without these instructions, the jury could convict on precisely the "right to control"-style theory that *Ciminelli* forecloses.

**Instruction No. 23: Breach of Contract Is Not Fraud**

This instruction states black-letter law of this Circuit: even a willful, intentional breach of a contractual promise, without contemporaneous fraudulent intent when the contract was entered into, is "only breach of contract"—not mail or wire fraud. *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658–63 (2d Cir. 2016); *accord Durland v. United States*, 161 U.S. 306, 313–14 (1896); *United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994); *United States v. Rinsch*, 816 F. Supp. 3d 488 (S.D.N.Y. 2026).

This instruction is critical here because the Superseding Indictment alleges a scheme to "obtain *and maintain*" borrowed funds. Superseding Indictment ¶¶ 35, 37 (emphasis added). To the extent the government's theory is that Mr. Wander made false statements to conceal prior contractual breaches so that he could retain funds the lenders had previously provided him, that is not wire fraud. *See Rinsch*, 816 F. Supp. 3d at 488 (rejecting the government's theory that a defendant has committed criminal fraud "if he subsequently lied to the victim in order to retain the money he had legitimately obtained"). And to the extent the government contends that statements made after alleged collateral shortfalls came to light were lulling designed to "maintain" the borrowed funds, ECF No. 69 at 25-26, that theory is foreclosed by *Ciminelli*, since deceptive statements intended to delay a lender's exercise of its contractual remedies do not constitute wire fraud. 598 U.S. at 316; *see also Countrywide*, 822 F.3d at 658. Providing such a clear charge is appropriate to ensure that the jury's passions are not inflamed against Mr. Wander for alleged misstatements that do not constitute wire fraud because they only covered up existing breaches of contract. That is consistent with Judge Rakoff's charge in *Rinsch*, Court's Instructions of Law to the Jury, *United States v. Rinsch*, 25 Cr. 85 (JSR), ECF No. 54; and a recent charge from Judge Furman. Jury Charge at 19, *United States v. Malvasio*, 23 Cr. 396 (JMF) (S.D.N.Y. June 23, 2026), ECF No. 254 ("Failure to comply with a contractual obligation is fraudulent only when the promisor never intended to honor the contract.").

**Instruction No. 24: Materiality**

The materiality instruction tracks the standards the Supreme Court and the Second Circuit have articulated. Materiality is "demanding"; it "substantially narrows the universe of actionable misrepresentations" and is "the principled basis for distinguishing everyday misstatements from actionable fraud." *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016)). In *Kousisis*, the United States itself proposed that a misrepresentation is material only if it goes to the "very essence of the bargain," Brief for the United States at 43–45, *Kousisis*, No. 23-909, and the Court recited the government's assurance that this demanding standard is what confines the fraudulent-inducement theory the Court adopted. 605 U.S. at 131–32.

The instruction's remaining components are equally settled: information is material only if it has "some independent value or must bear on the ultimate value of the transaction," *United*

*States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994); contractual labels are "relevant to but not dispositive of" materiality and "minor or insubstantial" matters are not material, *Escobar*, 579 U.S. at 190, 194; materiality is assessed objectively against "the parameters of the thinking of reasonable investors in the particular market at issue," *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018); and a counterparty's continued dealings after learning the true facts are "very strong evidence" of immateriality, *Escobar*, 579 U.S. at 195. That last principle is directly implicated by the government's own allegations, which describe months of continued negotiation and lending after lenders learned of the collateral shortfalls. Superseding Indictment ¶¶ 19–22.

**Instruction No. 25: Specific Intent to Defraud**

Instruction No. 25 is consistent with recent charges in light of *Kousisis*. In *Runner*, the district court instructed that "[f]raud requires more than deceit," that "[i]ntent to defraud means to act knowingly and with the specific intent to deceive for the purpose of causing some financial or property loss to another," and that "it is not enough for the government to show only that the defendant intended to deceive the victim." 143 F.4th at 160–61. After *Kousisis*, the Second Circuit held that these instructions "sufficiently informed the jury about the intent-to-harm requirement," *id.* at 160. Judges Furman, Abrams, and Broderick have issued similar instructions in recent cases post-dating *Kousisis*. Jury Charge at 22, *United States v. Malvasio*, 23 Cr. 396 (JMF) (S.D.N.Y. June 23, 2026), ECF No. 254; Transcript of Jury Charge at 1997, *United States v. Curcio*, 24 Cr. 312 (RA) (S.D.N.Y. June 11, 2026), ECF No. 138; *United States v. Cohen*, 23 Cr. 134 (VSB) (Mar. 2, 2026), ECF No. 487-3.

**Instruction No. 26: Contemporaneous Fraudulent Intent**

A promise supports a fraud conviction only if the government proves that, at the time it was made, the promisor did not intend to perform. *Durland*, 161 U.S. at 313–14. The same is true of predictions and expressions of expectation honestly held. Critically, the jury "may not infer" contemporaneous fraudulent intent at the time a representation was made "simply from the fact" of later non-performance. *Countrywide*, 822 F.3d at 662–63; *D'Amato*, 39 F.3d at 1261 n.8. Based on the discovery and its exhibits, Mr. Wander anticipates that the government's proof will feature statements from him about how borrowed funds would be used, commitments to cure collateral shortfalls, and forecasts that anticipated transactions would generate proceeds. Each is a statement about the future. The jury needs a framework for evaluating them as the law requires—by asking what Mr. Wander intended and believed when each statement was made—rather than by reasoning backward from the fact that deals did not close and shortfalls were not cured.

**Instruction No. 33: Count Six, Witness Tampering**

For the reasons set forth in Mr. Wander's pending motion to dismiss Count Six, ECF No. 66 at 8–15, which we incorporate and summarize here, the tampering instruction must convey two principles. *First*, because "persuasion" is "by itself innocuous," "[o]nly persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuad[e].'" *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703–06 (2005); *see United States v. Veliz*, 800 F.3d 63, 71 n.6 (2d

GIBSON DUNN



Cir. 2015) (Section 1512 "extends only to persuaders conscious of their wrongdoing"). An intent to influence testimony is not consciousness of wrongdoing: a defendant awaiting trial has an obvious interest in the testimony against him. *Second*, corrupt persuasion requires wrongful means—bribery, coercion, a request for false testimony, the breach of a legal duty, or a command to withhold testimony from someone with authority over the witness. *United States v. Farrell*, 126 F.3d 484, 487–88 (3d Cir. 1997); *United States v. Doss*, 630 F.3d 1181, 1189–90 (9th Cir. 2011); *United States v. Gotti*, 459 F.3d 296, 343 (2d Cir. 2006). As described in his motion, Mr. Wander acknowledges that *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996), requires only an "improper purpose," and *Thompson* binds this Court. But even under *Thompson* as glossed by *Arthur Andersen* and *Veliz*, the jury must be told that consciousness of wrongdoing is required, that speaking with a witness, giving one's own account, professing innocence, and appealing to sympathy are not corrupt persuasion, and that a defendant who asks nothing of a witness over whom he has no control has corruptly persuaded no one. *Cf. Gotti*, 459 F.3d at 343 (corrupt persuasion where defendant "command[ed]" a subordinate within an organized-crime hierarchy).[1]

**Instruction No. 34: Count Six: Venue**

---

1 As described in his motion, ECF No. 66 at 9, black-letter Second Circuit law bars the government from submitting to the jury the charge that Mr. Wander engaged in "misleading conduct," because a knowing participant in the underlying events cannot be misled by a false account of them, and the Superseding Indictment alleges that "Analyst-2" participated in the events Mr. Wander is alleged to have described, *United States v. King*, 762 F.2d 232, 237 (2d Cir. 1985); Superseding Indictment ¶¶ 16, 29, 32.

If Count Six reaches the jury, venue will be a contested issue of fact on which Mr. Wander is entitled to an instruction. As Mr. Wander's motion to dismiss explains, ECF No. 66 at 15–20, the Supreme Court held this Term that venue for an obstruction offense lies where the "essential conduct elements" occur—where the prohibited act takes place—not where the proceeding the conduct was intended to affect is pending. *Abouammo v. United States*, 146 S. Ct. 1571, 1576–79 (2026); *see United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). Section 1512(b)(1) is complete the moment the prohibited act is performed with the requisite intent—the witness need not be persuaded, no testimony need be affected, and "an official proceeding need not be pending or about to be instituted at the time of the offense," 18 U.S.C. § 1512(f)(1)—so the locus of the crime is the locus of the conduct. The requested instruction states exactly that, and requires the jury to find it more likely than not that Mr. Wander or Bennett was present in this District during a charged communication.[2] To the extent the government relies on 18 U.S.C. § 1512(i), that provision does not purport to define where the offense is *committed*, and *Abouammo* expressly reserved whether such venue-designating provisions are consistent with the Constitution. 146 S. Ct. at 1577 n.3.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: <u>/s/ *Jordan Estes*</u>
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Counsel for Defendant Joshua Wander*

cc: All counsel of record (by ECF)

---

[redacted]